## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KLX ENERGY SERVICES LLC

          Plaintiff,

v.

MAGNESIUM MACHINE, LLC

          Defendant.

Case No. CIV-20-1129-F

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff KLX Energy Services LLC ("KLX" or "Plaintiff" or the "Company") hereby submits this Original Complaint against Magnesium Machine, LLC ("Mag Machine" or "Defendant") and states as follows:

## SUMMARY OF ACTION

1.    This is an action for breach of contract and misappropriation of trade secrets and confidential business information.

2.    Plaintiff KLX is an oilfield service provider that sells specialized tools to its E&P customers.  Defendant Mag Machine is Plaintiff's manufacturing vendor for a line of specialized products known as dissolvable frac plugs.

3.    In 2018, the parties entered a distribution agreement pursuant to which KLX obtained the exclusive right to sell a dissolvable frac plug designed by Mag Machine.

4.    When the original plug failed to meet its customer's needs, KLX's in-house engineers introduced a number of material changes to the plug design, which were incorporated into Mag Machine's manufacturing process.  Those design changes are

KLX's intellectual property, and were the result of KLX's own in-house testing and analysis, following its discussions with its customers.

5.      In recent months, Plaintiff learned that Mag Machine has been secretly selling plugs to KLX's own customers (and potentially others) at a substantial discount, driving business away from KLX.  But Mag Machine is not selling the original plug that it designed; instead it is selling the modified plug that incorporates KLX's numerous design enhancements.

6.      Mag Machine's sale of the KLX-designed plugs to KLX's own customers not only violates its contractual obligations under the distribution agreement, but also amounts to a misappropriation of KLX's hard-won trade secrets.

7.      To protect its rights and preserve the status quo, KLX seeks preliminary and permanent injunctions ordering Mag Machine to refrain from using KLX's confidential information or trade secrets, as well as other relief.

## **PARTIES**

8.      Plaintiff KLX Energy Services LLC is a Delaware limited liability company with its principal place of business at 3040 Post Oak Blvd, 15th Floor, Houston, TX 77056.

9.      Defendant Magnesium Machine, LLC is an Oklahoma limited liability company with its principal place of business in Oklahoma.  Mag Machine can be served at 5305 Robert Lee Rd., Duncan, OK 73533 or wherever it may be found.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  Plaintiff is a citizen of Texas, and Defendant is a citizen of Oklahoma.

11.     This Court also has subject matter jurisdiction over Plaintiff's federal trade secret claims pursuant to 18 U.S.C. § 1836 *et seq*. and 28 U.S.C. § 1331; this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Defendant because it has its principal place of business in this judicial district.

13.     In addition, all or a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this judicial district.  Therefore, venue lies in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

## FACTUAL ALLEGATIONS

### I.     KLX and Magnesium Machine Execute the Distribution Agreement

14.     Plaintiff KLX is an oilfield service company based in Houston, Texas.  A large component of KLX's business is providing specialized tools and equipment to its customers engaged in oil and gas exploration and production ("E&P").

15.     KLX's business success depends on the performance of its products.  The Company spends extensive time, labor, skill, and money evaluating and making technical improvements to its products to meet the unique needs of its E&P customers.

16.     One of the specialized products KLX sells is dissolvable frac plugs.  These plugs are used by drillers during fracturing operations to temporarily separate pressurized

zones within the wellbore.  The plugs are made of dissolving metal and rubber, which adds value to the E&P customer by eliminating the need for conventional plug removal.

17.     KLX's dissolvable frac plugs are manufactured by the Defendant, Mag Machine, pursuant to a "Distributor Appointment Agreement" the parties executed on July 12, 2018.  A true and correct copy of that agreement is attached as **Exhibit 1** (the "Distribution Agreement").[1]

18.     At the time the parties entered the Distribution Agreement, Mag Machine had already designed its own dissolvable frac plug, which it referred to as the "Adair" frac plug.  The Distribution Agreement grants KLX the exclusive right to sell the Adair frac plug under the KLX brand name in the United States and Canada.  The plug that was originally designed by Mag Machine is specifically identified in the Distribution Agreement, and a rendering of its design is attached to the contract.

19.     The Distribution Agreement prohibits Mag Machine from divulging or otherwise using KLX's confidential and proprietary information without consent.

20.     In Article 13 of the Distribution Agreement, entitled "Confidentiality," Mag Machine promised it would not divulge or retain any such information during the term of the agreement and for a period of five years thereafter.  Specifically, Mag Machine promised that:

---

[1] In November 2018, KLX consented to Mag Machine's assignment of the Distributor Agreement to its wholly-owned subsidiary of the same name, on the express understanding that, "[p]er Article 18(c) of the Agreement . . . no such assignment shall relieve the assigning party of any of its obligations under the Agreement."  *See* **Exhibit 2**.

During the course of [Mag Machine] providing Products to [KLX] for [its] promotion and sale of such Products . . . the Parties hereby recognize that each may be exposed to unpublished items of technical or nontechnical information including, but not limited to, materials, equipment, **designs, specifications, know-how, product uses, processes, blueprints, formulae, costs, financial data, marketing plans and direct selling systems, customer lists and technical and commercial information** relating to customers or business projections used by either Party in its business, and any other documents or information that either Party considers to be trade secrets or confidential information (collectively, "Proprietary Information"), whether or not the subject of any patent or patent application, constitute valuable trade secrets or confidential information and are the exclusive property of the Party disclosing such information. Consequently, during the Term of this Agreement . . . and for a period of five (5) years thereafter, neither Party shall disclose to any unauthorized person or use in any unauthorized manner the Proprietary Information, and each Party specifically further agrees:

(i) **not to, directly or indirectly, disclose or make available to anyone not employed by or affiliated with such Party, or use outside of such Party's organization, any Proprietary Information for any reason or purpose whatsoever** unless such persons: (1) have been duly informed of the obligations of confidentiality associated with the Proprietary Information; (2) expressly agree, in writing, to comply with the obligations of confidentiality associated with such Proprietary Information, such obligations being as least as restrictive as the obligations set forth in this Agreement; and (3) have an express need to know such information in order to accomplish the Purpose.

*Id*. § 13(a) (emphases added).

## II.   KLX Implements Numerous Design Improvements & Shares Confidential Customer Information with Mag Machine

21.   In the months following the execution of the Distribution Agreement, KLX made numerous design modifications to the plug originally designed by Mag Machine.

22.     Because dissolvable frac plugs are relatively new to the oil and gas market, KLX made various changes to optimize the product and to address performance issues reported by its customers following the product's rollout.  As described further below, these iterational design changes were developed by KLX engineers following in-house testing and analysis at KLX's engineering facilities.

23.     The current version of the dissolvable frac plug sold under the KLX brand name (the "KLX Adair Plugs") incorporates these KLX design modifications.  These improvements were not previously known to Mag Machine and would not have been implemented but for KLX's instructions to Mag Machine.

A.     Seal Ring Enhancements

24.     Beginning in May 2018, KLX introduced the KLX Dissolvable Frac Plug on a trial basis in substantially the same form as originally designed by Mag Machine.  KLX sold a limited number of those plugs from May 2018 through September 2018 before commencing the full commercial release of the product line in October 2018.

25.     Soon after the commercial release, several KLX customers began reporting pressure anomalies that were potentially attributable to failures in the plugs.  In response to these reports, in February 2019, KLX conducted its own plug testing and troubleshooting at the KLX engineering facilities in Powell, Wyoming.

26.     During this testing process, KLX discovered a flaw in the original design and material composition of the seal ring designed by Mag Machine.  Specifically, KLX engineers observed that the existing seal ring had the tendency to separate during plug-setting sequencing, which then prevented the plugs from maintaining pressure isolation.

6

27.     To solve this problem, KLX engineers implemented several design improvements.  First, KLX recommended that Mag Machine use a new "high elongation material" for the seal rings, then worked with Mag Machine and its supplier to develop material with higher elongation properties that greatly improved the effectiveness of the expansion seal.

28.     KLX also implemented a "Seal Sacrificial Ring Design" to mitigate the increased risk of tearing caused by the use of the more elastic material.  Specifically, KLX modified the plug design to include a new expansion ring between the seal ring and the slip body to act as a bearing and to help absorb any damage to the seal.  KLX engineers described these design changes to Mag Machine over the telephone and in email correspondence.  Mag Machine then implemented these design changes.

B.     Development of the Rapid Alloy Material

29.     In June 2019, KLX made another material design change to the plugs by commercializing a new "rapid" dissolving alloy that would allow the plug to dissolve more quickly in freshwater environments.

30.     Mag Machine's original design only incorporated "standard" alloy, which requires the presence of salinity or chlorides for dissolution.  In its discussions with its customers, KLX identified a market need for a dissolvable plug that performed equally well in freshwater applications.  At KLX's instruction, Mag Machine identified and presented a viable option for a rapid dissolvable alloy.  Mag Machine conducted its own quality testing and informed KLX that the product performed over a range of casing weights.  KLX began selling the new "rapid alloy" plugs to its customers in June 2019.

7

31.     Soon thereafter, KLX customers began reporting failures of the rapid alloy plugs.  For example, in September 2019, two KLX customers reported catastrophic failures of the plugs and terminated their relationship with KLX.

32.     In response to these reports from its customers, KLX began conducting in-house testing and troubleshooting of the rapid alloy plugs at its engineering facilities.

33.     As a result of this testing, KLX discovered the rapid alloy plugs only performed when set in a specific casing weight and were not in fact not suitable for a "range of casing weights" as previously certified by Mag Machine.  KLX engineers recorded their findings in a written investigation report in October 2019.

34.     To solve this problem, KLX engineers again modified the design of the rapid alloy plugs to include a new "locking feature" that permits the plug to perform across a range of casing weights.  At KLX's direction, Mag Machine implemented this new locking design feature into the product.

C.     Additional Design Modifications by KLX

35.     In addition to the design modifications described above, KLX made additional changes to the plug to improve its performance.

36.     For example, KLX engineers made numerous modifications to the slip (the portion of the plug designed to anchor it to the surrounding casing) to address a performance issue arising from premature fracturing of the slips.  More specifically, KLX improved the design by increasing the number of segments composing the slip to help distribute the load in a better radial fashion, thus reducing excess radial stress.

Additionally, KLX modified the placement of the buttons on the slip to help improve penetration and friction with the casing.

37.    KLX engineers also decreased the size of the "guide shoe" on the plug, for the purpose of decreasing dissolution times on the portions of the plug that are not critical to its function.  The originally designed plug had a larger guide shoe that was functionally unnecessary, and which caused slower dissolution rates.   KLX engineers further modified the guide shoe by machining a series of bypass holes to further decrease mass and expedite the dissolution process.

### D.    KLX Shares Confidential Customer Information with Mag Machine

38.    To ensure the KLX Adair Plugs perform properly for its E&P customers, KLX routinely must test the plugs' dissolution rates in the fluids at its various customers' wells, the composition of which differs based on geographic and other factors.  Mag Machine performs dissolution testing on the KLX Adair Plugs at its facility in Oklahoma.

39.    To facilitate the testing process, KLX has routinely provided Mag Machine with information and fluid samples from its various KLX customers that have purchased its plugs or expressed interest in purchasing plugs.  This confidential information provided to Mag Machine identifies every potential or current KLX customer that KLX has performed dissolution tests for, along with specific well information and plug test results associated with each customer.

## III.    Mag Machine Begins Selling KLX-Designed Plugs to KLX Customers

40.    On July 15, 2020, at what has been to date the low point of oilfield activity within the COVID 19 pandemic, Mag Machine sent KLX a letter asserting that KLX had

failed to comply with certain minimum purchase obligations under the Distribution Agreement for the second quarter of 2020. Nonetheless, the letter stated that Mag Machine's "desire is to continue working with and selling the dissolvable plug to KLX. We currently are not marketing this product to other customers as described in the agreement."

42. Mag Machine reemphasized the same message in its transmittal email, stating "Please be assured we are still keeping the Adair dissolving plug for KLX. We are not marketing this plug to other customers. We value our relationship with KLX and want to continue to grow it."

42. In written communications and telephone calls from July through September 2020, Mag Machine continued to confirm that it would maintain exclusivity as outlined in the contract and would not sell the KLX Adair Plug to anyone but KLX.

43. In October 2020, one of KLX's existing frac plug customers stopped purchasing plugs from KLX and instead began purchasing plugs from a third-party entity named "Jet Energy Services." KLX's customer reported that the plugs it purchased from Jet Energy Services were identical to the KLX Adair Plug and contained all the above-referenced KLX design modifications.

44. When asked by KLX, Mag Machine acknowledged selling plugs to Jet Energy Services, but it claimed that the plugs sold were different from the KLX Adair Plugs.

45. KLX subsequently learned that the plugs at issue were shipped to KLX's customer in a box reflecting a manufacturer's name of "Cornerstone Tools." Oklahoma

public records show that Cornerstone Tools LLC was formed in July 2020 and has the same physical address and registered agent as Mag Machine.

46.     Upon information and belief, Mag Machine owns and/or controls, or is under common direct or indirect ownership or control with Cornerstone Tools, and it is using Cornerstone Tools to directly or indirectly sell the KLX Adair plugs to KLX customers.

47.     Based on the fact that (1) at least one KLX customer has begun purchasing its plugs from an entity associated with Mag Machines, and (2) those plugs contained KLX's confidential and material design enhancements, it is now evident that Mag Machine has been secretly using KLX's confidential information and design improvements in a manner that has already harmed and/or will continue to cause imminent harm to KLX.

## COUNT ONE:  BREACH OF CONTRACT

48.     Plaintiff hereby incorporates the allegations contained in all preceding paragraphs as if fully set forth herein.

49.     On July 12, 2018, KLX and Mag Machine entered the Distribution Agreement, which is a valid, enforceable contract.

50.     In the Distribution Agreement, Mag Machine acknowledged that, in manufacturing products for KLX, it "may be exposed to unpublished items of technical or nontechnical information including, but not limited to, materials, equipment, designs, specifications, know-how, product uses, processes, blueprints, formulae, costs, financial data, marketing plans and direct selling systems, customer lists and technical and commercial information relating to customers or business projections used by [KLX] in its

business," as well as other trade secrets or confidential information (collectively, "KLX Proprietary Information").

51.     Mag Machine promised that, during the term of the agreement, and for a period of five years thereafter, it would not disclose to any unauthorized person or use in any unauthorized manner the Proprietary Information."  Ex. 1 § 13(a).  Mag Machine further promised that it would not directly or indirectly, "disclose or make available to anyone . . . or use outside of [KLX's] organization, any Proprietary Information for any reason or purpose whatsoever" without first obtaining KLX's written consent.  *Id.*

52.     KLX provided Mag Machine with access to KLX Proprietary Information, including but not limited to unpublished design specifications, testing data, customer lists, and technical information pertaining to its customers' use of the KLX Adair Plugs.  The KLX Adair Plugs themselves incorporate and are derived from KLX Proprietary Information.

53.     Mag Machine materially breached this contractual obligation when it sold the KLX Adair Plugs to third parties, including to KLX's own customers, without KLX's consent.

54.     Mag Machine has continued to materially breach this obligation by utilizing KLX's Proprietary Information to manufacture and sell the KLX Adair Plugs to third parties without KLX's consent.

55.     As a direct and proximate result of Mag Machine' breaches of the Distribution Agreement, KLX has suffered and will continue to suffer damages, and has been forced to incur attorneys' fees and costs.

56.     KLX seeks to recover its damages and to enforce the covenants set forth in the Distribution Agreement, and to enjoin Mag Machines from committing further violations.

57.     All conditions precedent to the institution of this action have occurred or have been waived.

## COUNT TWO:  TORTIOUS INTERFERENCE<br>WITH PROSPECTIVE ECONOMIC ADVANTAGE

58.     Plaintiff hereby incorporates the allegations contained in all preceding paragraphs as if fully set forth herein.

59.     Mag Machine had knowledge of KLX's relationships with its customers because, among other reasons, KLX provided Mag Machine customer lists in connection with Mag Machine's testing and manufacture of the KLX Adair Plugs.

60.     Mag Machine engaged in the knowing and tortious interference between KLX and its customer relationships by, among other things, soliciting, inducing, recruiting, facilitating, and encouraging the sale of the KLX Adair Plugs to KLX's customers, thereby causing KLX's customers to cease doing business with KLX.

61.     Upon information and belief, Mag Machine either facilitated, encouraged, participated in, or ratified by its action or inaction the misuse of KLX Proprietary Information.  Mag Machine benefitted from its retention and continued use of KLX Proprietary Information by selling KLX-designed products to third parties to the detriment of KLX.

62.     Such interference was malicious in that it was done with the specific intent to cause substantial injury to KLX and involved an extreme degree of risk to KLX, of which Mag Machine was aware and consciously ignored.

63.     Such interference was also done using improper conduct or means, including because Mag Machine's use of KLX's Proprietary Information for the purpose of selling KLX-designed products to KLX customers was a violation of Mag Machine's obligations under the Distribution Agreement.

64.     As a proximate result of Mag Machine's tortious interference, KLX has suffered damages to its business for which it now seeks recovery.  Plaintiff further seeks exemplary damages, court costs, and pre- and post-judgment interest.  Furthermore, KLX seeks injunctive relief ordering enjoining Mag Machine from tortiously interfering with KLX's business relations with its customers and requiring Mag Machine to cease selling the KLX Adair Plugs or any other plugs that incorporate design modifications based on KLX's Proprietary Information.

## COUNT THREE:  MISAPPROPRIATION OF TRADE SECRETS UNDER DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, *et seq.*

65.     Plaintiff hereby incorporates the allegations contained in all preceding paragraphs as if fully set forth herein.

66.     Mag Machine has violated the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, by misappropriating technical, financial, marketing and strategic information related to KLX's business, including engineering reports, customer lists, testing data, designs, product plans, performance indicators, and other data provided by

KLX in connection with the development and manufacture of the KLX Adair Plugs (referred to within this section as the "KLX Trade Secrets").

67.     The KLX Trade Secrets relate to products used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

68.     The KLX Trade Secrets are not generally known to the public or generally known in the drilling industry, and their value is derived from the fact that they are kept secret.

69.     Some of the KLX Trade Secrets are a compilation of information that standing alone might not be a trade secret, but in the aggregate, constitute a protectable trade secret.

70.     KLX takes reasonable efforts to maintain the secrecy of the KLX Trade Secrets.  These efforts include, but are not limited to: (a) by requiring its vendors, including Mag Machine, to sign agreements in which they promise not to retain, disclose, or otherwise use KLX Trade Secrets without KLX's express consent; (b) physical security measures such as door locks and electronic access mechanisms; (c) password protection to access KLX's network systems containing the KLX Trade Secrets; and (d) requiring key KLX employees to sign agreements in which they promise to hold in strict confidence, and not disclose, use, or retain any KLX trade secrets outside of their employment with KLX.

71.     KLX has kept the KLX Trade Secrets confidential and has not disclosed them outside of KLX except under non-disclosure agreements with third parties that would safeguard the secrecy of the information.

72.     KLX derives economic value, actual and potential, from the KLX Trade Secrets not being generally known to persons who could obtain economic value from their use.

73.     The KLX Trade Secrets would be economically valuable in the hands of KLX's competitors, who could use the KLX Trade Secrets to improve their products or services to compete with KLX.  The KLX Trade Secrets could give a competitor valuable information about the design of KLX's products; they could provide a shortcut to enable a competitor to manufacture competing products more effectively and efficiently; they would provide information to a competitor about KLX's strategic plans so as to adjust the competitor's own strategic planning for the purpose of frustrating KLX's goals; and they could provide valuable information about development or operational steps that were not successful so as to avoid those steps in the competitor's own development or operations. The KLX Trade Secrets would also provide a competitor with KLX's various pricing information, the identity of its customers, vendors, and suppliers, and historical performance data of KLX's products, among other information.

74.     Mag Machine was under multiple duties to keep the KLX Trade Secrets confidential and to not disclose or use this information without KLX's consent, including under the Distribution Agreement wherein it agreed to keep KLX's information confidential.

75.     Despite these obligations and promises, upon information and belief, on one or more occasions, Mag Machine disclosed and/or used the KLX Trade Secrets without

KLX's consent.  In so doing, Mag Machine acquired the KLX Trade Secrets by improper means.

76.    Mag Machine has continued to misappropriate KLX Trade Secrets by maintaining possession of such information, directly or indirectly transferring it to third parties, and by utilizing KLX Trade Secrets to manufacture competing products and to sell those products to KLX customers.

77.    Upon information and belief, Mag Machine has used and continues to use the misappropriated KLX Trade Secrets for various unlawful purposes without consent, including to manufacture competing products and soliciting, directly or indirectly, KLX customers.

78.    As a direct and proximate result of Mag Machine's conduct, KLX has suffered damages in an amount to be determined at trial.

79.    Mag Machine willfully and maliciously misappropriated the KLX Trade Secrets with the deliberate attempt to injure KLX's business and improve its own economic standing, thereby entitling KLX to an award of exemplary damages and/or attorneys' fees.

80.    Mag Machine's wrongful conduct in misappropriating the KLX Trade Secrets has caused and will cause KLX great and irreparable harm, for which it has no adequate remedy at law.

81.    Mag Machine's intentional misuse and unauthorized retention of KLX Trade Secrets demonstrates that it will continue to use and disclose KLX Trade Secrets unless enjoined.

82.     Based on the foregoing, KLX prays that preliminary and permanent injunctions be issued ordering that Mag Machine and its representatives, agents, designees, and any third parties acting in concert with it be restrained from:

> a.  Selling the KLX Adair Plugs or any other products that incorporate design modifications based on KLX's Proprietary Information; and
>
> b.  Obtaining, accessing, using, possessing, retaining, transmitting, copying, or disclosing any of KLX's confidential, proprietary, or trade secret information.

### COUNT FOUR:  MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION

83.     Plaintiff hereby incorporates the allegations contained in all preceding paragraphs as if fully set forth herein.

84.     The data and information encompassed by the KLX Trade Secrets also constitute confidential business information under Oklahoma common law.

85.     In the manner above alleged, Mag Machine misappropriated this confidential business information for the purpose of wrongfully competing with Plaintiff.

86.     As a direct and proximate result of Mag Machine's misappropriation of KLX's confidential business information, KLX has suffered damages in an amount to be determined at trial.

87.     Mag Machine willfully and maliciously misappropriated KLX's confidential business information with the deliberate attempt to injure KLX's business and improve its own economic standing, thereby entitling KLX to an award of punitive damages.

## COUNT FIVE:  UNJUST ENRICHMENT

88.     Plaintiff hereby incorporates the allegations contained in all preceding paragraphs as if fully set forth herein.

89.     At all times relevant to this litigation, Mag Machine owed Plaintiffs a legal duty to not unfairly or unduly take advantage of Plaintiff or commit wrongful acts in order to unjustly enrich itself at Plaintiff's expense.

90.     Mag Machine violated this duty by unjustly enriching itself by using KLX Proprietary information, including its designs and customer lists, to sell products to KLX customers to the detriment of KLX.

91.     Mag Machine has unjustly obtained an economic benefit as a direct and proximate result of its misconduct described above.

92.     KLX seeks a constructive trust as to any and all profits, compensation, or financial gain of any kind that Mag Machine has received and continues to receive as a result of its breaches.

## JURY DEMAND

93.     Plaintiff hereby demands a jury trial under Federal Rule of Civil Procedure 38(b).

## CONCLUSION AND PRAYER

For the foregoing reasons, KLX respectfully requests that judgment be entered in its favor and against Defendant, in addition to the following relief:

1.     Preliminary and permanent injunctions enjoining Defendant from the following:

    a.  Selling the KLX Adair Plugs or any other products that incorporate design modifications based on KLX's Proprietary Information; and

    b.  Obtaining, accessing, using, possessing, retaining, transmitting, copying, or disclosing any of KLX's confidential, proprietary, or trade secret information.

2.    Compensatory damages, actual damages, incidental and consequential damages, lost profits, unjust enrichment, restitution, and/or reasonable royalties in an amount to be shown at trial, and a finding that Defendant is liable for each of the foregoing;

3.    Exemplary damages of twice the amount awarded as general damages for the statutory causes of action based on misappropriation of trade secrets;

4.    Exemplary damages as otherwise allowed by law;

5.    KLX's attorneys' fees and costs as allowed under the DTSA or any other applicable statutory or common law provision;

6.    Pre- and post-judgment interest and costs of suit incurred herein; and

7.    Any other and further relief that the Court may deem just and proper.

Respectfully Submitted,

*/s/ Reagan E. Bradford*
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
(405) 698-2770
(405) 234-5506 fax
reagan@bradwil.com
ryan@bradwil.com

*–and–*

David P. Whittlesey*
Texas Bar No. 00791920
*pro hac vice forthcoming
SHEARMAN & STERLING LLP
111 Congress Ave., Suite 1700
Austin, TX 78701
(512) 647-1900
david.whittlesey@shearman.com

**ATTORNEYS FOR PLAINTIFF
KLX ENERGY SERVICES LLC**