# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

KLX ENERGY SERVICES LLC,

       Plaintiff,

v.

       NO. CIV-20-1129-F

MAGNESIUM MACHINE, LLC,

       Defendant.

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

COMES NOW Magnesium Machine, LLC ("Defendant" or "Magnesium Machine"), by and through its attorneys of record, and hereby submits its Answer to Plaintiff's Original Complaint [Doc. 1]. Defendant denies the allegations contained in Plaintiff's Original Complaint unless expressly admitted hereafter as follows:

## SUMMARY OF ACTION

1.      Paragraph 1 contains no allegations and, therefore, does not require a response.

2.      As to the description of KLX's business, admitted. Defendant denies it is "Plaintiff's manufacturing vendor," as KLX does not possess or control Defendant. Defendant admits it manufactures dissolvable frac plugs. Defendant is also a design, testing, and research company.

3.      Defendant admits it entered into a distribution agreement with KLX. Defendant denies the assertion that KLX has the exclusive right to sell the dissolvable frac plug and defers to the express language of the distribution agreement as it speaks for itself.

4.      Defendant admits it made changes to the dissolvable frac plug. KLX never

supplied alloy input. Defendant denies the "design changes are KLX's intellectual property." In fact, this is the first time KLX has ever asserted this which runs contrary to all pertinent agreements between KLX and Defendant.

5.      Defendant admits that after KLX was unable to purchase the agreed upon minimum amount of frac plugs (2500 per quarter), Defendant sold the frac plugs directly to another service company, who was never a customer of KLX. To date, Defendant has sold less than 350 frac plugs to other entities. Defendant denies any changes to its frac plug are owned or possessed by KLX.

6.      Defendant denies the assertions of paragraph 6 and demands strict proof thereof.

7.      Defendant denies it is using KLX's confidential information or trade secrets. Instead, KLX is using Defendant's confidential information and trade secrets. Defendant further denies KLX's request for a preliminary and permanent injunction, and further requests a preliminary and permanent injunction ordering KLX to refrain from, *inter alia*, engaging in deceptive trade practices within the industry, as well as other relief.

## PARTIES

8.      Upon information and belief, Defendant admits the assertion in paragraph 8.

9.      Defendant admits the assertion in paragraph 9.

## JURISDICTION AND VENUE

10.     Defendant admits the assertion in paragraph 10.

11.     Defendant denies Plaintiff has a federal trade secret claim. Defendant admits this Court would have subject matter jurisdiction if Plaintiff had a viable claim.

12.     Defendant admits the assertion in paragraph 12.

13.     Defendant admits the assertion in paragraph 13.

## FACTUAL ALLEGATIONS

### I. KLX and Magnesium Machine Execute the Distribution Agreement

14.     The statements of paragraph 14 do not assert an allegation against Defendant and, therefore, no response is required.  If a response is deemed required, denied.

15.      The statements of paragraph 15 do not assert an allegation against Defendant and, therefore, no response is required.  If a response is deemed required, denied.

16.     The statements of paragraph 16 do not assert an allegation against Defendant and, therefore, no response is required.  If a response is deemed required, Defendant admits to the general description and purpose of dissolvable frac plugs.

17.     Defendant admits it entered into a Distribution Agreement with KLX.

18.      Defendant denies KLX has the exclusive right to sell the Adair frac plug and defers to the express language of the Distribution Agreement, as it speaks for itself, and the communications about the same between KLX and Defendant.

19.     Defendant denies it divulged or otherwise used KLX's confidential or proprietary information.  Defendant defers to the express language of the Distribution Agreement, as it speaks for itself, and the communications about the same between KLX and Defendant.

20.     Defendant denies it divulged or otherwise used KLX's confidential or proprietary information.  Defendant defers to the express language of the Distribution Agreement, as it speaks for itself, and the communications about the same between KLX

and Defendant.

## II. KLX Implements Numerous Design Improvements & Shares Confidential Customer Information with Mag Machine

21.     Defendant denies KLX made design modifications to the frac plug.

22.     Defendant denies the assertions of paragraph 22 and demands strict proof thereof.  Defendant designed and manufactured any improvements to the Adair Plug.

23.     Defendant denies the assertions of paragraph 23 and demands strict proof thereof.

A.     <u>Seal Ring Enhancements</u>

24.     Defendant believes the time line asserted is accurate and that KLX purchased some plugs on a trial basis.  Defendant has insufficient knowledge to admit or deny the remaining assertions of paragraph 24 and, therefore, denies the same.

25.     Defendant believes KLX did conduct some testing.  Defendant has insufficient knowledge to admit or deny the remaining assertions of paragraph 25 and, therefore, denies the same.

26.     Defendant admits testing showed the seal ring was not functioning in line with the desired specifics.  Defendant denies all other assertions of paragraph 26.

27.     Defendant denies the assertions of paragraph 27.  KLX does not have working knowledge of Defendant's supplier and KLX did not have the knowledge or capabilities required to improve the seal.

28.     Defendant denies the allegations of paragraph 28 and demands strict proof thereof.

B.  Development of the Rapid Alloy Material

29.  Defendant denies the assertions of paragraph 29.  Defendant offered KLX the option to change to a rapid alloy, which Defendant obtained from its supplier.  The rapid alloy was not sought by or created by KLX.

30.  Defendant denies the assertions of paragraph 30.  The need for a rapid/low chloride alloy was known across the industry.  Defendant worked directly with its supplier, without KLX's involvement, to develop the beneficial material.

31.  Defendant has insufficient knowledge to admit or deny the assertions of paragraph 31 and, therefore, denies the same.

32.  Defendant has insufficient knowledge to admit or deny the assertions of paragraph 32 and, therefore, denies the same.  KLX told Defendant it was conducting testing but Defendant is unaware of the parameters, method, or validity of the findings.

33.  Defendant has insufficient knowledge to admit or deny the assertions of paragraph 33 and, therefore, denies the same.  KLX told Defendant it was conducting testing but Defendant is unaware of the parameters, method, or validity of the findings.

34.  Defendant denies the assertions of paragraph 34.  KLX suggested a ratchet that was impractical and not well thought-out.  Defendant invented an alternative design, after weeks of troubleshooting and excessive effort.  Defendant's creation was used in the plug.

C.  Additional Design Modification by KLX

35.  Defendant denies the assertions of paragraph 35 and demands strict proof thereof.

5

36. Defendant denies the assertions of paragraph 36 and demands strict proof thereof.

37. Defendant denies the assertions of paragraph 37 and demands strict proof thereof.

D. <u>KLX Shares Confidential Customer Information with Mag Machine</u>

38. Defendant admits the assertions of paragraph 38.

39. Defendant admits KLX provided it fluid samples. Defendant admits the samples often identified the customer. Defendant denies the remaining assertions of paragraph 39.

### III. Mag Machine Begins Selling KLX-Designed Plugs to KLX Customers

40. Defendant admits the assertions in paragraph 40, as KLX had failed to meet its minimum requirements under the Distribution Agreement.

41. Defendant admits the assertions in paragraph 41.

42. Defendant denies the assertions in paragraph 42.

43. Defendant has insufficient knowledge or information to admit or deny the assertions of paragraph 43 and, therefore, denies the same.

44. Defendant denies the assertions as set forth in paragraph 44. Defendant asked a service entity to sell a certain type of plug, but the customer wanted the Adair Plug. Because KLX had not been ordering the required amount of product and had no exclusivity, Defendant needed to sell the frac plugs to other entities to remain a going concern. Defendant told KLX about the transaction in a good faith effort to be transparent with KLX and preserve the business relationship.

45.     Defendant has insufficient knowledge or information to admit or deny what KLX learned about a package label and, therefore, denies the same.  Defendant admits Cornerstone Tools has the same physical address as Defendant.

46.     Defendant denies it owns or controls Cornerstone Tools.  Defendant denies it is "using" Cornerstone Tools to sell Adair Plugs.  Defendant denies it has sold Adair Plugs directly to KLX customers.

47.     Defendant denies it is selling plugs that contain KLX's confidential and material design enhancements. Defendant denies KLX has been or will continue to be harmed.

## COUNT ONE: BREACH OF CONTRACT

48.     Paragraph 48 does not require a response.

49.     Defendant admits the assertion of paragraph 49.

50.     Defendant admits the assertion of paragraph 50 insofar as it accurately reflects the express language of the Distribution Agreement as it speaks for itself. Defendant denies all other assertion therein.

51.     Defendant admits the assertion of paragraph 51 insofar as it accurately reflects the express language of the Distribution Agreement as it speaks for itself. Defendant denies all other assertions therein.

52.     Defendant denies the assertions as set forth in paragraph 52.  Defendant denies the Adair Plugs incorporate or are derived from KLX Proprietary Information. Defendant admits that during its business relationship with KLX, some information was shared.

53. Defendant denies the allegations of paragraph 53.

54. Defendant denies the allegations of paragraph 54.

55. Defendant denies the allegations of paragraph 55.

56. Defendant denies the allegations of paragraph 56.

57. Conditions precedent are a legal requirement under Texas civil procedure and are not applicable to this controversy. Thus, no response is required but, if so, such allegations are denied.

## COUNT TWO: TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC ADVANTAGE

58. Paragraph 58 does not require a response.

59. Defendant admits it knows some of KLX's customer information. Defendant denies it ever used the information for its own benefit.

60. Defendant denies the allegations of paragraph 60.

61. Defendant denies the allegations of paragraph 61.

62. Defendant denies the allegations of paragraph 62.

63. Defendant denies the allegations of paragraph 63.

64. Defendant denies Plaintiff's prayer for damages and relief. Defendant specifically denies Plaintiff's request to recover punitive damages.

## COUNT THREE: MISAPPROPRIATION OF TRADE SECRETS
## UNDER DEFEND TRADE SECRETS ACT 18 U.S.C. § 1836, *et seq.*

65. Paragraph 65 does not require a response.

66. Defendant denies the allegations of paragraph 66.

67. Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff.

Defendant further denies the allegations of paragraph 67.

68.     Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. Defendant further denies the allegations of paragraph 68.

69.     Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. Defendant further denies the allegations of paragraph 69.

70.     Defendant has insufficient knowledge or information to admit or deny what efforts KLX takes related to its "KLX Trade Secrets" and, therefore, denies the assertions of paragraph 70.

71.     Defendant has insufficient knowledge or information to admit or deny what efforts KLX takes related to its "KLX Trade Secrets" and, therefore, denies the assertions of paragraph 71.

72.     Defendant has insufficient knowledge or information to admit or deny the assertions of paragraph 72 and, therefore, denies the same.

73.     Defendant has insufficient knowledge or information to admit or deny the assertions of paragraph 73 and, therefore, denies the same.

74.     Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. Defendant further denies the allegations of paragraph 74.

75.     Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. Defendant further denies the allegations of paragraph 75.

76.     Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. Defendant further denies the allegations of paragraph 76.

77.     Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff.

Defendant further denies the allegations of paragraph 77.

78. Defendant denies the allegations of paragraph 78.

79. Defendant denies the allegations of paragraph 79 and specifically denies Plaintiff's request to recover punitive damages.

80. Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. Defendant further denies the allegations of paragraph 80.

81. Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. Defendant further denies the allegations of paragraph 81.

82. Defendant denies these facts and/or Plaintiff's assertions necessitate an injunction.

## COUNT FOUR: MISAPPROPRIATION OF CONFIDENTIAL BUSINESS INFORMATION

83. Paragraph 83 does not require a response.

84. Defendant denies the existence of KLX Trade Secrets as defined by Plaintiff. The assertions of paragraph 84 calls for a legal conclusion and, therefore, no response is required. To the extent a response is deemed required, denied.

85. Defendant denies the allegations of paragraph 85.

86. Defendant denies the allegations of paragraph 86.

87. Defendant denies the allegations of paragraph 87 and specifically denies Plaintiff's request to recover punitive damages.

## COUNT FIVE: UNJUST ENRICHMENT

88. Paragraph 88 does not require a response.

89. The assertions of paragraph 89 call for a legal conclusion and, therefore, no response is required. To the extent a response is deemed required, denied.

90. Defendant denies the allegations of paragraph 90.

91. Defendant denies the allegations of paragraph 91.

92. Defendant denies these facts and/or Plaintiff's assertions necessitate a constructive trust.

## JURY DEMAND

93. Paragraph 93 does not require a response.

## CONCLUSION AND PRAYER

94. Defendant denies KLX's request for judgment, including each subpart 1-7.

## AFFIRMATIVE DEFENSES

For further response to the Complaint, Defendant asserts the following Affirmative Defenses:

1. Plaintiff has failed to state a claim upon which relief can be granted.

2. Plaintiff's own actions or omissions are the cause of its alleged damages.

3. Failure to mitigate its damages.

4. Plaintiff's claims are barred by the doctrine of unclean hands.

5. Defendant reserves its right to plead additional Affirmative Defenses as its investigation into KLX's allegations remains ongoing.

WHEREFORE, Defendant prays this Court dismiss the claims against it, for its reasonable attorney's fees and costs, and any other and further relief as this Court may deem just and proper.

## MAGNESIUM MACHINE'S COUNTERCLAIMS
## FACTS COMMON TO ALL CLAIMS

1.  Magnesium Machine and KLX entered into the Distributor Appointment Agreement on or about July 12, 2018 (the "Agreement").

2.  Under the terms of the Agreement, KLX committed to a quarterly minimum order of Adair Plugs.  This material term was delineated in the Agreement, Article 2, Section (b), and further detailed in Exhibit B of the Agreement.

3.  Under the terms of the Agreement, if KLX failed to order the quarterly minimum within 15 days of the end of each quarter, Magnesium Machine would send written notice, allowing time for KLX to submit an order to reach the minimum quantity. This material term was delineated in the Agreement, Article 2, Section (b), and further detailed in Exhibit B of the Agreement.

4.  Under the terms of the Agreement, if KLX still failed to order the quarterly minimum, the Agreement became non-exclusive.  This material term was delineated in the Agreement, Article 2, Section (b), and further detailed in Exhibit B of the Agreement.

5.  In the second quarter of 2020, KLX failed to place orders for the required quarterly minimum.

6.  On or about July 15, 2020, Magnesium Machine sent written notice to KLX requesting it submit an order in compliance with the minimum order requirement (the "Notice").  In its Notice, Magnesium Machine specifically reminded KLX that not complying with the quarterly minimum order would remove the exclusivity obligation from the agreement and informed KLX the Notice was a notice of non-exclusivity.

7.     Even after receiving the Notice, which explicitly informed KLX of the steps it needed to take to remain the exclusive distributor of the Adair Plug, KLX did not submit an additional order to meet its minimum obligation under the Agreement.

8.     Additionally, and of importance, KLX has failed to pay for the Adair Plugs it did order.

9.     To date, KLX owes Magnesium Machine $416,900.00 (USD) for the Adair Plugs it purchased but has not paid for, in addition to interest and late fees.

10.     Magnesium Machine designed and created the Adair Plug. All modifications or improvements to the Adair Plug were considered, tested, decided upon, and implemented by Magnesium Machine.

11.     In the Agreement, KLX recognized and agreed it had the right to use Magnesium Machine's trademarks during the term of the Agreement.

12.     In the Agreement, KLX recognized and agreed it did not have any right or license to Magnesium Machine's present or future patents.

13.     KLX, through its public filing of the Complaint, alleges it contributed to the modification or improvement of the Adair Plug.

14.     While KLX may have provided feedback to Magnesium Machine, any and all modifications or improvements to the Adair Plug were considered, tested, decided upon, and implemented by Magnesium Machine.

15.     KLX is erroneously claiming ownership of the modified and improved Adair Plug, but Magnesium Machine has the exclusive right to the Adair Plug.

16.     KLX is falsely advising customers it contributed to the modifications or

improvements of the Adair Plug. This misinformation is causing confusion in the niche market and negatively impacting Magnesium Machine.

17.     KLX is knowingly providing inaccurate information about the Adair Plug with the intent to injure Magnesium Machine within and across the industry.

### COUNTERCLAIM NO. 1
### (Breach of Contract – Non Compliance with Quarterly Minimum Order)

18.     Magnesium Machine reasserts the facts and allegations of paragraphs 1-17, as if fully set forth herein.

19.     KLX and Magnesium Machine entered into the Agreement effective on or about July 12, 2018.

20.     Under the terms of the Agreement, KLX committed to a quarterly minimum order of Adair Plugs.

21.     Under the terms of the Agreement, KLX was to submit the following minimum orders but did not comply with the requirement:

| Time frame | Contractual minimum order |
|---|---|
| Within 10 days of execution of the Agreement | 1,000 units |
| Between July 1, 2018 and September 30, 2018 | 1,500 units |
| Between October 1, 2018 and December 31, 2018 | 1,500 units |
| Each quarter beginning January 1, 2019 | 2,500 units |

22.     However, KLX only ordered 912 Adair Plugs in the second quarter of 2020.

23.     On or about July 15, 2020, Magnesium Machine sent written Notice to KLX requesting it submit an order in compliance with the minimum order requirement.

24. Even after the receiving the Notice, KLX chose not to submit an order totaling the minimum units required under the Agreement.

25. KLX breached the material terms of the Agreement when it failed to submit the required quarterly minimum order.

26. Magnesium Machine was damaged in excess of $75,000.00, in addition to interest, late fees, and attorneys' fees and costs.

## COUNTERCLAIM NO. 2
### (Breach of Contract – KLX has not paid for the units)

27. Magnesium Machine reasserts the facts and allegations of paragraphs 1-26, as if fully set forth herein.

28. Under the terms of the Agreement, KLX agreed to pay Magnesium Machine $1,590.00 per unit.

29. The initial order required 50% down within 20 days of the initial order, with the balance of the purchase price due upon receipt of the Products and Invoice.

30. The payments for any subsequent orders were due upon receipt of the Products and Invoice.

31. Under the terms of the Agreement, Magnesium Machine would adjust the cost of the Product for changes in the price of magnesium and inflation.

32. KLX placed the following orders but has not paid for the units as follows:

| Invoice Date | Invoice Amount | Cumulative Amount Owed |
|---|---|---|
| August 28, 2020 | $77.000.00 | $77.000.00 |
| September 4, 2020 | $19,200.00 | $96,400.00 |
| September 25, 2020 | $154,400.00 | $250,800.00 |
| October 1, 2020 | $154,400.00 | $405,200.00 |
| October 26, 2020 | $11,700.00 | **$416,900.00** |

33.     To date, KLX owes Magnesium Machine $416,900.00 for Products Magnesium Machine provided to KLX, exclusive of interest, late fees, and attorneys' fees and costs.

## COUNTERCLAIM NO. 3
### (Declaratory Judgment – Agreement is Non-Exclusive)

34.     Magnesium Machine reasserts the facts and allegations of paragraphs 1-33, as if fully set forth herein.

35.     Under the terms of the Agreement, if KLX failed to order the quarterly minimum, the Agreement became non-exclusive.

36.     Magnesium Machine provided written Notice to KLX that it had not complied with the required quarterly minimum order but KLX chose not to submit an order, solidifying its noncompliance with the Agreement.

37.     Upon KLX's failure to comply with the quarterly minimum order requirement, the Agreement became non-exclusive and Magnesium Machine could market and sell the Adair Plug to other distributors.

38.     Magnesium Machine requests this Court review the Agreement, the acts of the parties, and declare the Agreement became non-exclusive upon KLX's failure to cure its breach of a material term by not complying with the quarterly minimum order, even after receiving written Notice from Magnesium Machine.

## COUNTERCLAIM NO. 4
### (Declaratory Judgment – the Adair Plug "belongs to" Magnesium Machine)

39.     Magnesium Machine reasserts the facts and allegations of paragraphs 1-37,

as if fully set forth herein.

40.    Magnesium Machine designed and created the Adair Plug. All modifications or improvements to the Adair Plug were considered, tested, decided upon, and implemented by Magnesium Machine.

41.    In the Agreement, KLX recognized and agreed it had the right to use Magnesium Machine's trademarks during the terms of the Agreement.

42.    In the Agreement, KLX recognized and agreed it did not have any right or license to Magnesium Machine's present or future patents.

43.    Magnesium Machine respectfully requests this Court to review the Agreement, the acts of the parties, and declare the Adair Plug, all modifications and all improvements "belong to" Magnesium Machine.

## COUNTERCLAIM NO. 5
### (Tortious Interference with Business of Magnesium Machine)

44.    Magnesium Machine reasserts the facts and allegations of paragraphs 1-43, as if fully set forth herein.

45.    Magnesium Machine is well known in its niche industry as a trustworthy and competent entity.

46.    Magnesium Machine has developed and continued business relationships with multiple entities, all based primarily on its quality of employees, innovation, and products.

47.    Without justification, KLX has intentionally and with malice interfered with those relationships by frivolously defaming Magnesium Machine.

17

48.     Upset that its own inaction caused it to lose the exclusive right to distribute the Adair Plug, KLX began a targeted campaign to smear Magnesium Machine and destroy its market holdings.

49.     The sole intent of KLX's actions is to disrupt Magnesium Machine's business and negatively affect its market share and profits, both present and in the future.

50.     As a result of KLX's actions, Magnesium Machine has been embarrassed, forced to defend itself against baseless claims, forced to have uncomfortable conversations with its business partners, and has been generally negatively impacted.  These damages will continue until KLX admits its claims are baseless and stops purposely interfering with Magnesium Machine's business relationships.

51.     As a direct result of KLX's tortious interference, Magnesium Machine has been damaged in excess of $75,000.00.

### COUNTERCLAIM NO. 6
### (Deceptive Trade Practices – Statutory)

52.     Magnesium Machine reasserts the facts and allegations of paragraphs 1-51, as if fully set forth herein.

53.     KLX has taken part in deceptive trade practices. 78 O.S. § 53.

54.     KLX is attempting to claim the Adair Plugs as their own product.

55.     KLX has knowingly made false representations about the designer, creator, manufacturer, and source for the Adair Plug, any modifications, and any improvements.

56.     KLX has knowingly made false representations about its contributions to any modification or improvement of the Adair Plug.

18

57. KLX has made false or misleading statements about its role in the design, creation, modification, and/or improvement of the Adair Plug.

58. KLX's actions were meant to harm, or were reasonably expected to harm, Magnesium Machine.

59. KLX's actions were meant to injure Magnesium Machine's reputation and negatively affect its market share and profit, as well as relationships within and across the industry.

60. KLX's actions were willful, with full knowledge that its actions would result in injuring Magnesium Machine's business relationships, reputation, and/or sales.

61. As a result of KLX's deceptive trade practices, Magnesium Machine has incurred actual damages in excess of $75,000.00, in addition to attorneys' fees and costs.

## COUNTERCLAIM NO. 7
### (Deceptive Trade Practices – Common Law)

62. Magnesium Machine reasserts the facts and allegations of paragraphs 1-61, as if fully set forth herein.

63. KLX has made false assertions that any modifications or improvements of the Adair Plugs "belong to" it.

64. KLX's assertions were willful, a calculated effort to injure Magnesium Machine.

65. KLX's actions had the clear intent of negatively impacting Magnesium Machine, its reputation, business relationships, and sales.

66. KLX's actions are not typical or standard competition; KLX is offering false

information intended to harm Magnesium Machine.

67. As a result of KLX's deceptive trade practices, Magnesium Machine has incurred actual damages in excess of $75,000.00, in addition to attorneys' fees and costs.

## COUNTERCLAIM NO. 8
### (Request for Injunctive Relief)

68. Magnesium Machine reasserts the facts and allegations of paragraphs 1-67, as if fully set forth herein.

69. The creation, design, modifications, and improvements of the Adair Plug belong to Magnesium Machine.

70. Upon information and belief, Magnesium Machine believes KLX may have Adair Plugs in its possession, which it intends to market and sell as its own product.

71. Magnesium Machine respectfully requests this Court order an injunction prohibiting KLX from distributing the Adair Plug as the "KLX Adair Plug."

## JURY DEMAND

72. Magnesium Machine hereby demands a jury trial for its Counterclaims pled herein.

## PRAYER FOR RELIEF

Based on the foregoing, Defendant/Counter-Plaintiff Magnesium Machine, LLC respectfully requests that judgment be entered in its favor and against Plaintiff/Counter-Defendant KLX Energy Services, LLC, in addition to the following relief:

A. Preliminary Injunction and Permanent Injunction enjoining and prohibiting KLX from (i) distributing the Adair Plug as the "KLX Adair Plug" and (ii) making

representations that it designed, created, manufactured, and sourced the Adair Plug;

B. Award contractual damages in excess of $416,900.00 as a direct result of KLX's breaches of contract;

C. Declare the Agreement became non-exclusive upon KLX's failure to cure its breach of a material term by not complying with the quarterly minimum order, even after receiving written Notice from Magnesium Machine;

D. Declare the Adair Plug, all modifications and all improvements "belong to" Magnesium Machine;

E. Award actual, incidental and consequential damages, lost profits, unjust enrichment and reasonable royalties in excess of $75,000.00 as a result of KLX's tortious interference with Magnesium Machine's business and operations related thereto;

F. Award actual, incidental and consequential damages, lost profits, unjust enrichment and reasonable royalties in excess of $75,000.00 as a result of KLX's deceptive trade practices;

G. Award Magnesium Machine its reasonable attorneys' fees and costs related to its statutory and common law claims against KLX;

H. Award pre-judgment and post-judgment interest and costs of suit incurred herein; and

I. Any other and further relief the Court may deem just and proper.

Dated: December 1, 2020                    Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**

*/s/ Daniel V. Carsey*
Daniel V. Carsey, OBA No. 21490
Jacqueline M. McCormick, OBA No. 31640

100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Telephone: (405) 553-2313
Facsimile: (405) 553-2855
dcarsey@hallestill.com
jmccormick@hallestill.com

**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF,
MAGNESIUM MACHINE, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Reagan E. Bradford
Ryan K. Wilson
Bradford & Wilson PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
reagan@bradwil.com
ryan@bradwil.com

-and-

David P. Whittlesey
Texas Bar No. 00791920
*pro hac vice forthcoming
Shearman & Sterling LLP
111 Congress Ave., Ste. 1700
Austin, TX 78701
david.whittlesey@shearman.com

***Attorneys for Plaintiff, KLX Energy Services LLC***

*/s/ Daniel V. Carsey*