IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

KLX ENERGY SERVICES LLC

        Plaintiff,

        v.

MAGNESIUM MACHINE, LLC

        Defendant.

Case No. 5:20-cv-01129-F

**KLX ENERGY SERVICES LLC'S MOTION TO DISMISS**
**DEFENDANT'S COUNTERCLAIMS**

Under the Oklahoma Citizens Participation Act (12 O.S. § 1430, et seq.) and Federal Rule of Civil Procedure 12(b)(6), Plaintiff and Counterclaim-Defendant KLX Energy Services LLC ("KLX") respectfully moves to dismiss Counterclaim Nos. 5, 6, and 7 filed by Defendant-Counterclaimant Magnesium Machine, LLC ("Mag Machine").

**SUMMARY**

KLX initiated this action complaining that its vendor, Mag Machine, breached the parties' contract and misappropriated KLX's trade secrets by selling KLX-designed frac plugs to KLX's own customers. In response, Mag Machine asserts three tort-based counterclaims ostensibly on the theory that KLX's allegations *in this action* have injured its business reputation. To the extent Mag Machine's claims are based on allegations in KLX's Complaint, they are non-actionable and subject to dismissal on numerous grounds. The counterclaim for tortious interference fails for additional reasons.

## PROCEDURAL & FACTUAL BACKGROUND

KLX is an oilfield service provider that sells specialized tools, including dissolvable frac plugs. Doc. 1 ("Compl.") at 1, ¶ 2. Mag Machine manufactures dissolvable frac plugs. *Id.* In 2018, the parties entered a distribution agreement under which KLX obtained the exclusive right to sell a dissolvable frac plug manufactured by Mag Machine. *Id.* ¶ 17. KLX's Complaint alleges that Mag Machine designed the initial prototype of the frac plug, which quickly proved to be faulty. *Id.* ¶ 25. Accordingly, KLX's in-house engineers introduced numerous design enhancements, which Mag Machine then incorporated into its manufacturing process. *Id.* ¶¶ 24-37. KLX asserts that those improvements—the result of KLX's own in-house testing and analysis following its discussions with its customers—constitute proprietary and confidential information. KLX further asserts that, in recent months, Mag Machine has begun secretly selling the KLX-designed plugs to KLX's customers (and potentially others) at a substantial discount, driving business away from KLX. *Id.* ¶ 40-47. KLX filed its Original Complaint on November 6, 2020, asserting claims against Mag Machine for breach of contract, tortious interference, misappropriation of trade secrets, and unjust enrichment.

On December 1, 2020, Mag Machine filed its Answer, Affirmative Defenses and Counterclaims. Doc. 11 ("Countercl."). Mag Machine states, *inter alia*, that KLX's allegations about its design contributions are "false[]" (*id.* ¶ 16), "erroneous" (*id.* ¶ 15), and "inaccurate" (*id.* ¶ 17), and generally states that KLX published these statements in "its public filing of the Complaint . . . . with the intent to injure Magnesium Machine within and across the industry." *Id.* ¶¶ 13–18. On that basis, Mag Machine asserts eight counterclaims and

seeks damages, declaratory, and injunctive relief.[1] KLX now moves to dismiss three of those counterclaims: tortious interference (No. 5), violations of Oklahoma Deceptive Trade Practices Act ("ODTPA") (No. 6), and deceptive trade practices – common law (No. 7).

**ARGUMENT & AUTHORITIES**

**I.      The Court Should Dismiss the Counterclaims under the Oklahoma Citizens Participation Act**

Oklahoma passed the Oklahoma Citizens Participation Act ("OCPA") in 2014 to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government." 12 O.S. § 1430(B). The statute aims to "counteract lawsuits commonly known as SLAPP suits[,] or strategic lawsuits against public participation[,] which are aimed at deterring public participation in decision-making forums." *Anagnost v. Tomecek*, 390 P.3d 707, 710 (Okla. 2017). To achieve this purpose, the OCPA provides a means for dismissal, at an early stage, of a legal action if that action is based on, relates to, or is in response to one of several specified rights. *See* 12 O.S. § 1432(A).

The OCPA employs a three-step burden-shifting procedure. First, the movant must show by a preponderance of the evidence that "the legal action is based on, relates to, or is in response to, the party's exercise" of its "right of free speech," "right to petition" or "right of association." 12 O.S. § 1434(B). If the movant meets its initial burden, the Court *must* dismiss the action unless the claimant establishes by "clear and specific evidence a prima

---

[1] In addition to the three counterclaims that are the subject of this Motion, Mag Machine also asserts counterclaims for breach of contract (Nos. 1 & 2), declaratory relief (Nos. 3 & 4), and injunctive relief (No. 8).

facie case for each essential element of the claim in question." *Id*. § 1434(C). Even if the

claimant satisfies its burden, however, the Court must still dismiss the action if the movant

establishes by a preponderance of the evidence each essential element of a valid defense to

the claimant's claim. *Id.* § 1434(D). Finally, if the Court orders dismissal of the legal ac-

tion, it "shall" award the movant its court costs, reasonable attorney fees, other expenses,

and sanctions. *Id.* § 1438.

The OCPA bars Counterclaim Nos. 5, 6, and 7 for the following reasons.[2]

A.    *The OCPA Applies to Mag Machine's Counterclaims*

The statute applies here because Counterclaims 5, 6, and 7 constitute a legal action[3]

that is based on, relates to, and is in response to KLX's exercise of its right to petition.

Under the statute, the "exercise of the right to petition" is defined to include "a communi-

cation in or pertaining to . . . a judicial proceeding." 12 O.S. § 1431(4)(a)(1). The right to

petition also includes "any other communication that falls within the protection of the right

---

[2] This Court has previously applied the OCPA to dismiss state-law claims over which it has diversity jurisdiction. *Craig PC Sales & Service, LLC v. CDW Government, LLC*, No. CIV-17-003-F, 2018 WL 4861522, at \*10-17 (W.D. Okla. April 30, 2018) (Friot, J.). The Tenth Circuit has yet to determine whether the OCPA applies in federal court, and expressly declined to decide the question earlier this year when reversing an OCPA dismissal on other grounds. *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238-39 (10th Cir. 2020). The court did note, however, that "[i]f there is a difference [between the OCPA and Federal Rules] . . . an analysis under the Federal Rules Enabling Act, 28 U.S.C. § 2072, would be necessary to determine whether the Federal Rules could be applied." *Id.*

[3] A "legal action" is specifically defined to include "a lawsuit, cause of action, petition, complaint, cross-claim, *counterclaim* or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 1431(6) (emphasis added).

to petition government under the Constitution of the United States or the Oklahoma Constitution." *Id*. § 1431(4)(e). On its face, this definition encompasses the allegations contained in KLX's Original Complaint.

Mag Machine bases its counterclaims for tortious interference and deceptive trade practices on the allegedly false statements KLX made "through its public filing of the Complaint." Countercl. ¶¶ 13–16. The tortious interference claim is based on the premise that KLX "frivolously defam[ed]" Mag Machine by publicly claiming that it contributed to the design and modifications of the frac plug. *Id*. ¶ 47. Similarly, both deceptive trade practices counterclaims are based on Mag Machine's contention that KLX "is attempting to claim the Adair Plug as their own product" and has made "false representations about its contributions to any modification or improvement of the Adair Plug." *Id.* ¶¶ 54-57, 63. Mag Machine makes clear that its purported injuries will continue "until KLX admits its claims are baseless." *Id.* ¶ 50. Because these counterclaims are unquestionably based on KLX's factual and legal claims asserted in this lawsuit, the OCPA squarely applies.

B. *Mag Machine Cannot Meet Its Burden under the OCPA*

Because the OCPA applies, Counterclaim Nos. 5, 6, and 7 must be dismissed unless Mag Machine shows by "clear and specific evidence a prima facie case for each essential element of the claim in question." 12 O.S. § 1434(C). For the reasons described below, Mag Machine has not even adequately *alleged* any viable cause of action with respect to these counterclaims—much less has it provided clear and specific evidence to establish a prima facie case. Respectfully, the Court should dismiss these counterclaims with prejudice and award KLX its attorneys' fees incurred in making this motion.

## II.     The Court Should Dismiss the Counterclaims under Rule 12(b)(6)

Beyond application of the OCPA to Counterclaim Nos. 5, 6, and 7, these claims should also be dismissed for failure to state a claim under federal pleading standards. Under Rule 12(b)(6), "[a] court 'must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-12-544-M, 2013 WL 6150781, at *3 (W.D. Okla. Nov. 22, 2013) (quoting *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

### A.     *The Counterclaims Should Be Dismissed on Immunity Grounds*

As described above, Counterclaim Nos. 5, 6, and 7 are based on the allegedly false statements KLX made "through its public filing of the Complaint." Countercl. ¶ 13. Mag Machine ties each of the claims to KLX's public assertions that it contributed to the design and modification of the frac plug. *Id.* ¶¶ 47, 54–57, 63.

But the statements made by KLX in its Complaint cannot form the basis of any claims because they are quintessential examples of "comments or writings made during the course of or preliminary to judicial or quasi-judicial proceedings," and thus are protected by Oklahoma's broad litigation privilege. *See Samson Inv. Co. v. Chevaillier*, 988 P.2d

327, 329 (Okla. 1999) (summarizing the litigation privilege as "accord[ing] attorneys, par-

ties, jurors and witnesses immunity" from liability in connection with such statements);

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1166–68 (10th

Cir. 2003) (same); *see also* 12 O.S. § 1443.1 ("A privileged publication or communication

is one made . . . [i]n any legislative or judicial proceeding"). As such, these statements

cannot give rise to any viable claim.

KLX is also immune from suit on these counterclaims as a matter of U.S. Constitu-

tional principles, as the First Amendment's right to petition provides immunity "protecting

those who seek redress through the courts from liability for petitioning activities." *CSMN*

*Invests., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1282 (10th Cir. 2020).[4, 5] Because

Counterclaim Nos. 5, 6, and 7 are based on KLX's protected petitioning activities, KLX is

immune from liability and those counts are subject to dismissal under Rule 12(b)(6). *See*

---

[4] "The contours of this immunity developed in a line of antitrust cases, giving rise to the moniker, *Noerr-Pennington* immunity," but "[i]n this circuit, this immunity extends be-yond antitrust situations." *CSMN Invests.*, 956 F.3d at 1282–83 (explaining that, outside of the antitrust context, the doctrine is referred to as Petition Clause immunity); *see also Okla. Agents All. v. Torres*, No. CIV-17-1343-F, 2018 WL 8754115, at *5 (W.D. Okla. May 4, 2018) (Friot, J.) ("At its core, the *Noerr-Pennington* doctrine immunizes a party from claims that its filing of a lawsuit constitutes a violation of anti-trust laws, although the doctrine is not limited to federal antitrust actions.").

[5] As the Tenth Circuit recently clarified, the scope of this immunity extends to litigation conduct other than "sham" petitioning—that is, petitioning "so baseless that no reasona-ble litigant could realistically expect to secure favorable relief." *CSMN Invests.*, 956 F.3d at 1287 (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993)).

*id.* at 1290 (affirming district court's 12(b)(6) dismissal of claims on Petition Clause immunity grounds).

      B.      *The Tortious Interference Claim Fails for Additional Reasons*

Finally, even if not barred on immunity grounds, Counterclaim No. 5 fails for the independent reason that Mag Machine fails to plausibly plead the requisite elements of the claim. Oklahoma law recognizes two distinct claims for tortious interference: interference with contractual relations and interference with prospective business advantage. "[T]hese torts are not synonymous." *Fulton v. People Lease Corp.*, 241 P.3d 255, 263 (Okla. Civ. App. 2010). As the names suggest, the former requires the existence of a valid contract whereas the latter requires a valid business expectancy not yet reduced to contract. *Id.* Here, Mag Machine presumably means to assert both forms of this claim, as it makes general references to existing contractual relations, *see* Countercl. ¶ 16 ("KLX is falsely advising customers it contributed to the modifications or improvements of the Adair Plug"), as well as prospective business, *id.* ¶ 17 ("KLX is knowingly providing inaccurate information about the Adair Plug with the intent to injure Magnesium Machine within and across the industry"). Either way, the allegations are insufficient under Oklahoma law.

To state a claim for tortious interference with either a contractual relationship or business expectancy, a plaintiff must show: "(1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) an intentional interference including or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been dis-

rupted." *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1286–87 (10th Cir. 2012). Moreover, the interference must be malicious and wrongful, such that it is neither justified, privileged, nor excusable. *Wilspec Tech. v. Dunan Holding Grp.*, 204 P.3d 69, 70–71 (Okla. 2009).

A complaint must contain facts plausibly supporting each of these elements, or it is subject to dismissal. *See Hetronic Int'l, Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1350 (W.D. Okla. 2015) (dismissal warranted where counterclaim defendant did not allege it "had a 'reasonable assurance' of obtaining the prospective business relations," nor "identify which prospective customer relationships were interfered with or how [plaintiffs'] actions [] caused the interference"); *N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-12-544-M, 2013 WL 6150781, at *11 (W.D. Okla. Nov. 22, 2013) (dismissing tortious interference claim in part because "Plaintiffs provide[d] no specific factual allegations regarding . . . which customers' relationships with plaintiffs were interfered with . . . what specific damage was caused, and how the alleged interference caused the alleged damages").

*First,* the claim fails at the outset because Mag Machine nowhere identifies *any* specific contractual relations or prospective business that were purportedly interfered with—much less that KLX was aware of those relationships and intended to interfere with them. While Mag Machine states in conclusory fashion that it "has developed and continued business relationships with multiple entities," it does not actually name or describe any of them. Countercl. ¶ 46. This defect, by itself, justifies dismissal. *See, e.g., Stillwell v. Brakhage*, No. CIV-17-262-R, 2017 WL 11296879, at *2 (W.D. Okla. July 14, 2017) (granting motion to dismiss when plaintiff "[did] not identify who these 'third parties' are

with whom he had business relationships, what type of business relationship or expectation he had with them, and what type of damage he has suffered"); *Gooden v. Omni Air Transport L.L.C.*, No. 06-CV-618-GKF-FHM, 2008 WL 686882, \*4 (N.D. Okla. March 10, 2008) (dismissing tortious interference claim where the plaintiff failed to identify the contract that was allegedly interfered with).

*Second*, Mag Machine has not plausibly pleaded that KLX caused it to suffer any actual loss, as required. The counterclaim states that, "[a]s a result of KLX's actions, Magnesium Machine has been embarrassed, forced to defend itself against baseless claims, forced to have uncomfortable conversations with its business partners, and has been generally negatively impacted." Countercl. ¶ 50. But these allegations are insufficient, and Mag Machine does not identify any business relationships or expectancies that were actually breached or terminated as a result of KLX's actions. *See, e.g.*, *Alaska Airlines v. Maughan*, No. Civ. 10-0946-HE, 2011 WL 1882282 (W.D. Okla. May 17, 2011) (dismissing claim and agreeing that "plaintiff's allegations that its reputation has been harmed . . . [is] insufficient to establish the actual loss required by Oklahoma law to establish the damages element of a tortious interference claim.").

*Third*, even if Mag Machine had pleaded any of these elements, the claim would nonetheless fail because, as explained, KLX's statements are protected under Oklahoma's litigation privilege. This further dooms the claim because Mag Machine must show that KLX's actions were somehow malicious or wrongful. *Search King Inc. v. Google Tech., Inc.*, No. CIV-02-1457-M, 2003 WL 21464568, at \*4 (W.D. Okla. May 27, 2003) ("under Oklahoma law, protected speech . . . cannot give rise to a claim for tortious interference

with contractual relations because it cannot be considered wrongful, even if the speech is motivated by hatred or ill will."). Respectfully, the Court should dismiss Plaintiffs' tortious interference claim.

## CONCLUSION AND PRAYER

For the foregoing reasons, KLX respectfully requests that the Court dismiss Mag Machine's Counterclaim Nos. 5, 6, and 7 with prejudice under the Oklahoma Citizens Participation Act and Rule 12(b)(6), and award KLX its attorneys' fees and costs incurred with bringing this motion.

Date:  December 21, 2020

Respectfully Submitted,

/s/ David P. Whittlesey
David P. Whittlesey*
Texas Bar No. 00791920
*admitted pro hac vice
SHEARMAN & STERLING LLP
111 Congress Ave., Suite 1700
Austin, TX 78701
(512) 647-1900
david.whittlesey@shearman.com

–and–

Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
(405) 698-2770
(405) 234-5506 fax
reagan@bradwil.com
ryan@bradwil.com

**ATTORNEYS FOR PLAINTIFF & COUN-TERCLAIM DEFENDANT KLX ENERGY SERVICES LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

s/David P. Whittlesey
David P. Whittlesey