**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

**KLX ENERGY SERVICES LLC,**

       **Plaintiff,**

**v.**                                                                 **NO. CIV-20-1129-F**

**MAGNESIUM MACHINE, LLC,**

       **Defendant.**

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS ITS COUNTERCLAIMS
AND BRIEF IN SUPPORT**

Dated: January 11, 2021                    Respectfully submitted,

                                        **HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**


                                        */s/ Daniel V. Carsey*
                                        Daniel V. Carsey, OBA No. 21490
                                        Jacqueline M. McCormick, OBA No. 31640

                                        100 North Broadway, Suite 2900
                                        Oklahoma City, OK  73102-8865
                                        Telephone: (405) 553-2313
                                        Facsimile: (405) 553-2855
                                        dcarsey@hallestill.com
                                        jmccormick@hallestill.com

                                        **ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF,
MAGNESIUM MACHINE, LLC**

# TABLE OF CONTENTS

BRIEF RESPONSE ........................................................................................................... 1

ARGUMENT AND AUTHORITIES .................................................................................. 1

I. The OCPA is Wrought with Problems and Should Not Be Applied By Federal Courts. ................................................................................................... 1

II. The OCPA is Not Applicable to the Facts of this Case. .................................. 4

III. Assuming *Arguendo* the OCPA Applies, The Exception for Commercial Speech Precludes Dismissal. ............................................................................ 6

IV. Assuming *Arguendo* the Commercial Speech Exception is Inapplicable, Magnesium can still meet the Prima Facie Burden of Its Claims. ................... 9

    A. Prima Facie Case of Tortious Interference. ............................................. 9

    B. Prima Facie case of Violations of the ODTPA ..................................... 12

    C. Prima Facie Case of Deceptive Trade Practices, Common Law. .......... 13

V. Additional Requests to the Court Related to the OCPA. .............................. 16

VI. Response to Request for dismissal under Rule 12(b)(6). .............................. 16

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Anagnost v. Tomecek*,
   2017 OK 7 .......................................................................................................... 5

*ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*,
   *407* F. Supp. 3d 1186, 1195 (W.D. Okla. 2019) ......................................... 12, 13

*Brooks Bros. v. Brooks Clothing of California*,
   60 F. Supp. 442, 447 (S.D. Cal. 1945) ............................................................. 16

*Castleman v. Internet Money Ltd.*,
   546 S.W.3d 684, 686 (Tex. 2018) ............................................................... 10, 11

*Coca-Cola Co. v. Cahill*,
   350 F. Supp. 1231, 1233 (W.D. Okla. 1972),
   aff'd, 480 F.2d 153 (10th Cir. 1973) ................................................................ 17

*Debt Exch., Inc. v. Blount*,
   No. CIV 07-788-C, 2008 WL 548827, at *2 (W.D. Okla. Feb. 26, 2008) 16, 19,
   20

*Educ. Dev. Corp. v. Econ. Co.*,
   No. 73 C 256, 1976 WL 21193 ......................................................................... 17

*Evans v. McDonald's Corp.*,
   936 F.2d 1087, 1091 (10th Cir.1991) ............................................................... 19

*Fountain View Manor, Inc. v. Sheward*,
   2019 OK CIV APP 77 .......................................................................................... 7

*JEG Powersports, LLC v. M & N Dealership VI, LLC*,
   No. CIV-16-0242-HE, 2017 WL 5690946, at *2 (W.D. Okla. May 9, 2017) .. 17

*Krimbill v. Talarico*,
   2018 OK CIV APP 37 ................................................................................. passim

*Lakeshore Cmty. Hosp., Inc. v. Perry*,
   212 Mich. App. 396, 401, 538 N.W.2d 24, 27 (1995) ................................ 12, 13

*Morgan v. City of Rawlins,*
   792 F.2d 975, 978 (10th Cir.1986) ................................................................... 19

*Oklahoma Dist. Council v. New Hope Assembly of God*,
   597 P.2d 1211, 1215 (Okla. 1979) ................................................................... 17

*Reynolds & Reynolds Co.*,
   114 F.2d at 281 ................................................................................................. 17

*Royer v. Stoody Co.*,
   192 F. Supp. 949, 952 (W.D. Okla. 1961) ................................................... 16, 17

*Sw. Orthopaedic Specialists, P.L.L.C. v. Allison*,

    2018 OK CIV APP 69 ..................................................................................... 5, 8

*Wilspec Techs., Inc. v. DunAn Holding Grp., Co.*,

    2009 OK 12 ....................................................................................................... 12

## Statutes

12 O.S. § 1430(B) .......................................................................................................... 5

12 O.S. § 1431(4) ...................................................................................................... 8, 9

12 O.S. § 1431(7) ...................................................................................................... 8, 9

12 O.S. § 1434(B) ......................................................................................................... 8

12 O.S. § 1439 .............................................................................................................. 9

78 O.S. § 53 ................................................................................................................. 15

Fed.R.Civ.P. 8 ............................................................................................................. 19

**KLX ENERGY SERVICES LLC,**

      **Plaintiff,**

**v.**                            **NO. CIV-20-1129-F**

**MAGNESIUM MACHINE, LLC,**

      **Defendant.**

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION TO DISMISS ITS COUNTERCLAIMS
## AND BRIEF IN SUPPORT

COMES NOW Magnesium Machine, LLC ("Defendant" or "Magnesium"), by and through its attorneys of record, and hereby submits its Response to Plaintiff's Motion to Dismiss Defendant's Counterclaims [Doc. 16] ("Motion").

## BRIEF RESPONSE

Plaintiff (or "KLX") has moved to dismiss Defendant's Counterclaim Nos. 5, 6 and 7 primarily based on the Oklahoma Citizen Participation Act ("OCPA") and Rule 12(b)(6). For the reasons fully set forth below, the Motion should be summarily denied.

## ARGUMENT AND AUTHORITIES

### I.
### The OCPA is Wrought with Problems and
### Should Not Be Applied By Federal Courts.

The OCPA is a legislative creation which is wrought with problems. "The purpose of the Oklahoma Citizens Participation Act is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the

rights of a person to file meritorious lawsuits for demonstrable injury." 12 O.S. § 1430(B). "These types of acts are enacted to counteract lawsuits commonly known as SLAPP suits or strategic lawsuits against public participation which are aimed at deterring public participation in decision-making forums." *Anagnost v. Tomecek*, 2017 OK 7, ¶ 8, 390 P.3d 707, 710.

The OCPA was enacted in 2014 and has since been problematic, much like the Texas version of the act, which was enacted prior to the OCPA. The OCPA is "substantially identical" to the Texas Citizens Participation Act ("TCPA"). *See Sw. Orthopaedic Specialists, P.L.L.C. v. Allison*, 2018 OK CIV APP 69, ¶¶ 12-14, 439 P.3d 430, 435. As recently as 2018, Oklahoma Court of Civil Appeals in *Sw. Orthopaedic Specialists, P.L.L.C. v. Allison* noted, "the OCPA is a new statute and that its Texas counterpart has required an extraordinary number of appellate decisions to define the exact requirements and processes for defending against a dismissal motion under the act." *Id.* at 437. Agreeing with the confusion created by the seemingly contradictory language of the act, the *Allison* Court explained, "[i]t is difficult for any counsel to currently prepare for an OCPA proceeding because it presents an entirely new procedure for which there is little precedential guidance." *Id*. at 437–38. The Court of Civil Appeals concluded:

> Indeed, this process is ongoing. Texas courts have published some 33 appellate opinions regarding the TCPA in the first six months of 2018. This activity is occurring some seven years after the TCPA was first enacted. In total, Texas courts have published over 200 decisions involving the TCPA. It is evident that the full reach and procedure of the Texas Act is not yet fully settled. Oklahoma's Act is fundamentally identical, and may require the same degree of scrutiny before its operation is routinely understood.

*Id.* at 438, fn. 6.

A review of Oklahoma case law did not reveal an OCPA case with claims similar to Magnesium's assertions against KLX, or a similar fact pattern. Instead, it seems courts are still sorting through the language of the act, its application in state and federal cases, its conflict with other established statutes and precedent, and the procedure prescribed by the OCPA. The Oklahoma Court of Civil Appeals in *Krimbill v. Talarico*, stated:

> Oklahoma jurisprudence previously has not countenanced sanctions for acts that are neither frivolous nor without reasonable basis. **If genuine questions of material fact or law exist as to the right of recovery, and it is necessary to** *weigh the evidence* **in order to decide the case on the merits, it appears highly improbable that the case was meritless from the outset.** A cognizable legal theory and a disagreement of material fact, supported by evidence on both sides, pursuant to the common law standard presupposes that the suit is not meritless, and that it should not be subjected to immediate summary dismissal or a sanction. The OCPA specifically prohibits the abrogation of these common law principles.

*Krimbill v. Talarico*, 2018 OK CIV APP 37, ¶ 31, 417 P.3d 1240, 1249 (Emphasis in original). Applying this problematic act to these facts would only serve to further confuse its intent. Moreover, the very spirit of the OCPA would be disrupted, as dismissal of Magnesium's claims prior to discovery and a chance to litigate the issues would actually have a chilling effect on litigation in general; dismissal of Magnesium's claims does not accomplish the OCPA's intended purpose.

Furthermore, as KLX points out in its Motion, the "Tenth Circuit has yet to determine whether the OCPA applies in federal court." *See*, Motion, p. 4, fn. 2. As such, basing a dismissal of three of Magnesium's counterclaims on a problematic legislative

creation which may not even apply in federal court appears to be unsupported by applicable authority.[1]

II.
### II.
### The OCPA is Not Applicable to the Facts of this Case.

KLX claims the protections of the OCPA because it states, erroneously, that Magnesium's claims are solely based on the false statements and assertions contained in the Complaint. *See* Motion, p. 4, A. However, the Complaint is only the mechanism by which KLX has formalized its untruthful fodder about Magnesium. As more thoroughly addressed below, Magnesium's prima facie case is not based solely on KLX's filing. Thus, KLX's basis for claiming protections of its rights is unsubstantiated. On this ground alone, KLX's Motion should be denied.

The OCPA is discussed at length in *Krimbill v. Talarico*, which explains the intent was to "curb lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." 417 P.3d at 1245 (Okla. Civ. App. 2018). The OCPA applies to persons who engage in litigation primarily for the purpose of silencing a "public figure" on a "matter of public concern." *Fountain View Manor, Inc. v. Sheward*, 2019 OK CIV APP 77, ¶12, 455 P.3d 9, 14. Magnesium is

---

[1] It can be argued the OCPA is an unconstitutional special law which violates the Oklahoma Constitution. The Oklahoma Constitution, Article 5 Section 59 provides: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." The OCPA singles out an entire class of plaintiffs who seek redress for certain injury. In doing so, it creates a heightened duty on an injured plaintiff to assemble an entire *prima facia* case almost immediately after filing a Petition, whereas all other plaintiffs in this State are generally allowed a period of extended discovery to develop the facts.

neither a public figure, nor can the creation or production of the Adair frac plugs at issue be considered a matter of public concern.

To prevail on a Motion to Dismiss under the OCPA, KLX must establish by a preponderance of the evidence that the right at issue is protected by the OCPA. "The initial burden is on the defendant seeking dismissal to show that the plaintiff's claim is based on, relates to, or is in response to the [defendant's] exercise of the right of free speech, the right to petition, or the right of association." 12 O.S. § 1434(B); *Krimbill*, 2018 OK CIV APP at ¶¶ 9-10, 417 P.3d at 1245–46 (Citations omitted). The speech must be "related to the right of free speech or the right to petition as defined by the OCPA, particularly §1431(4)(c), *i.e.*, a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial or other governmental body or in another governmental or official proceeding." *Allison*, 2018 OK CIV APP at ¶¶ 15-19, 439 P.3d at 435–36 (internal citations omitted). The "exercise of the right to Petition" is defined under the OCPA as "a communication in or pertaining to a judicial proceeding." 12 O.S. § 1431(4).

Moreover, the communication must be a matter of public concern. Under the OCPA a "matter of public concern means an issue related to health or safety, environmental, economics or community well-being, the government, a public official or public figure or a good, product or service in the marketplace." 12 O.S. § 1431(7). Texas courts interpreting the same requirement have found "applicability requires only that the defendant's statements are in connection with issue[s] related to health, safety, environmental, economic, and other identified matters of public concern chosen by the Legislature."

*Allison*, 2018 OK CIV APP at ¶¶ 12-14, 439 P.3d at 435. KLX has not explained, and therefore Magnesium cannot determine, how its comments about Magnesium are somehow a matter of public concern.

KLX does not have a protected right to interfere with Magnesium's business and take part in deceptive trade practices. The OCPA was never meant to afford such protections or stifle such claims. KLX's Motion to Dismiss should be denied, as the OCPA does not apply to the facts of this case.

### III.
### Assuming *Arguendo* the OCPA Applies,
### The Exception for Commercial Speech Precludes Dismissal.

The OCPA appears to be "the result of an increasing tendency by parties with substantial resources to file meritless lawsuits against legitimate critics, with the intent to silence those critics by burdening them with the time, stress, and cost of a legal action," not to prohibit small business owners from defending their livelihood against claims made by non-paying customers who tout false statements hoping to increase their own market share. *Krimbill*, 417 P.3d at 1245. Assuming *arguendo* the OCPA applies to these facts, because they involve "goods, product or services in the marketplace" which are a "matter of public concern," the Court must also find the claims are based on commercial speech and the established exemption must be examined. 12 O.S. §§ 1431(4) and 1431(7); 12 O.S. § 1439; See, *Krimbill*, 2018 OK CIV APP at ¶¶ 34-38, 417 P.3d at 1249–50. ("If speech is made in connection with a matter of public concern regarding a good, product or service

in the marketplace, as found by the trial court here, the speech must cross a second threshold before the Act applies.") The OCPA shall not apply to:

> A legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct the action is based upon arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer[.]

*Krimbill*, 2018 OK CIV APP at ¶¶ 34-38, 417 P.3d at 1249–50, citing 12 O.S. § 1439(2).

While Oklahoma case law on the exemption is somewhat lacking, previous courts examining the exemption have looked to Texas, which "has developed certain rules related to it." *Krimbill*, 2018 OK CIV APP at ¶¶ 34-38, 417 P.3d at 1249–50.

Formerly, under Texas law, the considerations for whether the exemption applies were as follows:

> **(1)** the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; **(2)** the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; **(3)** the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and **(4)** the intended audience for the statement or conduct [is an actual or potential buyer or customer].

*Krimbill*, 2018 OK CIV APP at ¶39, 417 P.3d at 1250.

However, Texas recently acknowledged "[t]he Texas courts of appeals are divided on the proper interpretation and application of this exemption. Most have held that the exemption applies only if the plaintiff's action is based on statements or conduct directed to the defendant's actual or potential buyers or customers, as opposed to the plaintiff's buyers or customers or to the public at large. Many have reached this conclusion by relying

on a California Supreme Court decision addressing a similar statute." *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 686 (Tex. 2018) (internal quotations omitted).  After an analysis, the Supreme Court of Texas stated, "[t]he TCPA's commercial-speech exemption is no model of clarity, but we conclude that it is not ambiguous, at least on the issue presented here." *Id.* at 688.  In *Castleman*, the Supreme Court of Texas ruled:

> [W]e construe the exemption to apply when (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Id.*

When KLX made the false statements, it was engaged in and/or representing itself to be in the business of selling the Adair frac plugs.  KLX's averments were made in its capacity as a seller of the Adair frac plug.  KLX's statements arose from and relate to commercial transactions involving the Adair frac plugs.  And lastly, the Adair frac plugs are not a matter of public concern; KLX's comments were and continue to be directed to its existing or potential customers (which are also Magnesium's existing or potential customers).

The *Krimbill* court seemed to agree that if "(1) the parties are involved in the same general area of business; and (2) the statements forming the basis of the suit were made at least partially for the purpose of promoting sales of the goods or services of the person making the statement" then the exemption applies. *Krimbill*, 2018 OK CIV APP at ¶¶ 43-

44, 417 P.3d at 1251. Thus, the requirements for the exemption which have been favorably cited by Oklahoma courts have been met and the commercial speech exemption applies, forbidding dismissal of Magnesium's claims. While it is doubtful the OCPA applies to these facts, if it does, the commercial speech exemption clearly forbids the use of the OCPA as a means of dismissal.

## IV.
## Assuming *Arguendo* the Commercial Speech Exception is Inapplicable, Magnesium can still meet the Prima Facie Burden of Its Claims.

### A. *Prima Facie Case of Tortious Interference.*

The elements of a claim for tortious interference with a contractual or business relationship are "(1) interference with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage." *Wilspec Techs., Inc. v. DunAn Holding Grp., Co.,* 2009 OK 12, ¶ 15, 204 P.3d 69, 74. "Tortious interference with business relations may be caused by defamatory statements." *Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich. App. 396, 401, 538 N.W.2d 24, 27 (1995) (cited in *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1195 (W.D. Okla. 2019).

In addition to the allegations contained in its Counterclaim ¶¶ 44-51, to support its claim for tortious interference with a contractual or business relationship, Magnesium offers the following:

By KLX asserting the Adair plug "belongs" to it and Magnesium is contractually forbidden to market the plug to other companies, KLX wrongfully interferes with Magnesium's business right to sell its own product. Magnesium is aware that KLX, outside the pleadings, has represented to potential customers that the Adair plug is KLX's design and Magnesium should not be directly selling it to customers. In fact, Magnesium has been accused by a potential customer of trying to sell a "KLX knock off" while discussing the Adair frac plug it created. There can be no other motivation for KLX to interfere with Magnesium's business right, but for spite. KLX cannot uphold its obligation to purchase a minimum amount of frac plugs, and recognizing this, KLX maliciously claims the frac plug belongs to it so as to interfere in Magnesium's business. Magnesium is aware of assertions made by KLX which have caused potential customers to hesitate and then change their minds about purchasing the Adair plug directly from Magnesium. KLX offers no excuse for its interference, beyond its baseless allegations that the plug somehow became its "proprietary information." KLX's interference has affected Magnesium's potential sales agreements, one of which would have been for $6,500,000.00 in product.

The elements of a claim of tortious interference with prospective economic advantage are "(1) the existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted." *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1195 (W.D.

Okla. 2019) citing *Lakeshore Cmty. Hosp., Inc. v. Perry*, 212 Mich.App. 396, 538 N.W.2d 24, 27 (1995).

In addition to the allegations contained in its Counterclaim ¶¶ 44-51, to support its claim of tortious interference with prospective economic advantage, Magnesium offers the following[2]:

KLX apparently knows of other entities which are purchasing the frac plug at issue directly from Magnesium. Magnesium, as it has the right to do, has started working with another vendor to market and sell its product. Through this vendor, Magnesium is aware KLX has communicated its allegations as facts (that the Adair frac plug belongs to it), in essence soliciting, inducing, or encouraging those customers not to purchase the frac plug from Magnesium. KLX's assertions have had a chilling effect on Magnesium's potential business. These actions or communications from KLX to Magnesium's customers are meant to tarnish the relationship Magnesium has established, as well as negatively impact its financial wellbeing, and benefit KLX. KLX's efforts are improper, as Magnesium is free to sell its product to any buyer it so chooses. As a proximate result of KLX's tortious interference, Magnesium has suffered damages to its business and seeks monetary relief. The exact amount of damages cannot, at this early stage of the interference, be quantified.

---

[2] It should be noted that Count Two, ¶¶ 58-64, of KLX's Complaint (Doc 1) alleges tortious interference with prospective economic advantage against Magnesium, but lacks the specific detail KLX is now trying to force Magnesium to provide to the Court. This is yet another example of the problematic application of the OCPA to this case and its tendency to impede the well-established process of litigation.

All facts being presumed true, Magnesium has established a prima facie claim for tortious interference against KLX.

B.     *Prima Facie case of Violations of the ODTPA.*

Deceptive trade practices are claims against competing businesses to enjoin or remedy damages caused by actions intending to harm (or which reasonably would be expected to harm) competitors.  KLX does not counter Magnesium's claim but instead, merely states that "these counterclaims are unquestionably based on KLX's factual and legal claims…[so] the OCPA squarely applies*." See* Motion, p. 5, B.  When evaluating deceptive trade claims, there is an emphasis on creating a case-by-case remedy to unfair practices of others.  The Oklahoma Deceptive Trade Practices Act outlines fourteen activities that would be considered a deceptive trade practice. *See* 78 O.S. § 53. Among those applicable herein are:

> 1. Pass[ing] off goods or services as those of another;
> 2. Knowingly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods or services;
> 3. Knowingly mak[ing] a false representation as to affiliation, connection, association with, or certification by another;
> . . .
> 5. Knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith;
> . . .
> 8. Disparag[ing] the goods, services, or business of another by false or misleading representation of fact;… *Id.*

In its Counterclaim, ¶¶ 52-60, Magnesium delineates the basis for its claim. To further support its allegation that KLX violated, and continues to violate, the ODTPA, Magnesium offers the following:

Magnesium is aware KLX has communicated to other entities its false belief that the Adair frac plug "belongs" to it; it is attempting to claim it as its own. Magnesium is aware KLX has made false representations about the creation and improvements of the Adair frac plug. Magnesium is aware KLX has made false statements about its connection to and affiliation with the Adair frac plug and Magnesium. KLX likely knew its comments would negatively impact Magnesium's sales; it made the comments willfully.

It should be noted that typically the ODTPA mandates loose pleading standards and a plain language reading of the statute determines what damages are available. See generally, *Debt Exch., Inc. v. Blount*, No. CIV 07-788-C, 2008 WL 548827, at *2 (W.D. Okla. Feb. 26, 2008). Magnesium's claims will be more fully supported as discovery in this case continues, but it has met its burden of setting forth a prima facie case of KLX's violation of the ODTPA. The claim should not be dismissed.

### C. *Prima Facie Case of Deceptive Trade Practices, Common Law.*

At common law, claims for deceptive trade practices arise from a convoluted tapestry of common law trademark jurisprudence, fraud jurisprudence, and tortious interference jurisprudence. Deceptive trade practices is also referred to as unfair competition throughout case law.

One of the earlier Oklahoma cases to recognize this cause of action acknowledged

the breadth of unfair competition. *Royer v. Stoody Co.*, 192 F. Supp. 949, 952 (W.D. Okla. 1961) ("Unfair competition encompasses a number of evils with which business can be afflicted."). The court noted that this cause of action is "an offshoot of equity" and involves an analysis as to "whether the particular action of a person was what was the decent thing to do in trade." *Id.* (citing *Brooks Bros. v. Brooks Clothing of California*, 60 F. Supp. 442, 447 (S.D. Cal. 1945)). As such, unfair competition is intended to be flexible with a heavy preference toward a case-by-case inquiry into the universal question of "whether the public is likely to be deceived." *Id.*

"One without privilege so to do, has no right to issue and publish an untrue or deceptive statement of fact which has a disparaging effect upon the quality of another's property, under circumstances which would lead a reasonable person to foresee that it will have such effect. The making of such statement in such circumstances is tortious." *Royer v. Stoody Co.*, 192 F. Supp. 949, 952 (W.D. Okla. 1961)(internal citations omitted).

In trademark-type cases, courts typically seek to determine whether "one manufacturer or vendor is palming off his merchandise as that of another or that he is vending the products of another as his own." *Reynolds & Reynolds Co.*, 114 F.2d at 281; *see also Educ. Dev. Corp. v. Econ. Co.*, No. 73 C 256, 1976 WL 21193, at \*11 (N.D. Okla. Mar. 11, 1976). Additionally*, "*to establish a common law claim of unfair competition, a plaintiff must also show consumer confusion." *See Oklahoma Dist. Council v. New Hope Assembly of God*, 597 P.2d 1211, 1215 (Okla. 1979); *JEG Powersports, LLC v. M & N*

14

*Dealership VI, LLC*, No. CIV-16-0242-HE, 2017 WL 5690946, at \*2 (W.D. Okla. May 9, 2017).

When pleading unfair competition relating to the use of a trade name or taking credit for the production of a good, the claimant must show "probable deception" or "whether defendant's acts are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates." *Coca-Cola Co. v. Cahill*, 350 F. Supp. 1231, 1233 (W.D. Okla. 1972), aff'd, 480 F.2d 153 (10th Cir. 1973).

In addition to the allegations of the Counterclaim, ¶¶ 62-67, to more fully support its claim KLX conducted, and continues to conduct deceptive trade practices, Magnesium offers the following:

Magnesium is aware KLX has made comments to other entities about the Adair plug "belonging" to it. Magnesium intends to prove this is not only untrue, but completely baseless; a frivolous claim. See, Doc 11, Answer and Counterclaim. Magnesium has fielded questions from its current vendor and prospective customers who are confused by KLX's assertions and misinformation. KLX's untrue commentary has deceived potential customers and negatively impacted Magnesium's ability to continue marketing and selling the plug it created.

Magnesium has presented a prima facie claim against KLX for its deceptive trade practices. These claims should not be dismissed.

15

## Additional Requests to the Court Related to the OCPA.

Under the OCPA, if Magnesium establishes a prima facie case supporting its claims, KLX could then offer valid defenses. KLX has not asserted any defenses in its Motion to Dismiss. However, if KLX provides defenses in its Reply, Magnesium requests permission to respond to those defenses prior to the Court ruling and asserts it would be prejudiced if prohibited to respond. *See* LCvR 7.1(i). Furthermore,

> The Legislature stated in § 1440 of the Act that it did not intend to abrogate or lessen any other defense, remedy, immunity or privilege available under other constitutional, statutory, case or common law or rule provisions. Unless we interpret the Act as transforming any action at law that may be subject to the OCPA—and there are likely many affected actions—into a case that would allow the trial judge to decide disputed questions of material fact in a dismissal procedure, § 1434(D) must be more narrowly construed. Accordingly, for the following reasons, we find that disputed questions of material fact cannot be resolved in an OCPA dismissal proceeding.

*Krimbill*, 2018 OK CIV at ¶ 21, 417 P.3d at 1247 (Internal quotations omitted). Accordingly, Magnesium requests permission to respond to any such defenses accordingly.

## VI.
## Response to Request for dismissal under Rule 12(b)(6).

Once again, KLX over simplifies the assertions made by Magnesium, claiming it is only basing its allegations on assertions KLX made in the Complaint. Nonetheless, under applicable law, "a short and plain statement of the claim showing that the pleader is entitled to relief" is all that is needed. Fed.R.Civ.P. 8. In fact, "[i]t is well established that the purpose of fact pleading, as provided by Fed.R.Civ.P. 8(a)(2), is to give the defendant fair notice of the claims against him **without requiring the plaintiff to have every legal**

**theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery**." *Debt Exch., Inc. v. Blount*, No. CIV 07-788-C, 2008 WL 548827, at *2 (W.D. Okla. Feb. 26, 2008) citing *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1091 (10th Cir.1991) (internal quotations omitted) (Emphasis added). (This is yet another example of the incompatibility of the OCPA with the federal rules.) Further, "The Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986). "It also should be remembered that many federal courts have held that a complaint is sufficient against a motion to dismiss under Rule 12(b)(6), if it appears from the complaint that the plaintiff may be entitled to any form of relief…" *Debt Exch., Inc. v. Blount*, No. CIV 07-788-C, 2008 WL 548827, at *2 (W.D. Okla. Feb. 26, 2008).

KLX is claiming that because Magnesium did not painstakingly demonstrate each and every fact (some of which remain unknown but will be extricated during discovery) supporting its claims, the claims should be dismissed. This is not the law. To survive a 12(b)(6) Motion to Dismiss, Magnesium need only provide KLX with notice of its claims, which it has done. The supporting evidence for its claims are in its Counterclaims and again detailed above; Magnesium has more than met the applicable pleading standard. For these reasons, KLX's request for dismissal in accord with 12(b)(6) should be denied.

As to the tortious interference claim, KLX apparently believes Magnesium must state definitive proof of each and every element to meet the pleading requirement. This again is not true. While KLX correctly lists the elements of the claim, Magnesium is not

17

mandated to set out its entire case in the initial pleading. The allegations are set forth and then discovery begins. Magnesium has complied with the pleading standard.

Alternatively, if the Court finds Magnesium has not met the pleading requirements of claiming tortious interference, violations of the ODTPA, and deceptive trade practices under common law in its counterclaims, Magnesium requests additional time to amend its counterclaims accordingly.

## CONCLUSION

KLX's reliance on the OCPA is not proper. The OCPA is not applicable to this case, and if it is, there is a valid exception. Further, Magnesium can show a prima facie case supporting its claims. The abundance of challenges in construing the OCPA is well recognized. "The OCPA as written has certain inherent contradictions. It may be interpreted as radically changing the mode of procedure in many cases, and establishing an unprecedented system of mandatory bench trials on the merits before an answer is even filed." *Krimbill v. Talarico*, 2018 OK CIV APP at ¶ 75, 417 P.3d at 1257. Moreover, Magnesium has met its pleading burden in asserting plausible facts supporting the elements of each of its claims. However, if the Court doubts the veracity of Magnesium's responsive arguments, Magnesium requests time for specific discovery and/or time to amend its counterclaims.

WHEREFORE, Magnesium requests the Court to summarily deny KLX's Motion to Dismiss and further order KLX to respond to Defendant's Counterclaim Nos. 5, 6 and 7 accordingly.

Dated: January 11, 2021          Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**

*/s/ Daniel V. Carsey*

Daniel V. Carsey, OBA No. 21490
Jacqueline M. McCormick, OBA No. 31640

100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Telephone: (405) 553-2313
Facsimile: (405) 553-2855
dcarsey@hallestill.com
jmccormick@hallestill.com

**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF,
MAGNESIUM MACHINE, LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that on January 11, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Reagan E. Bradford
Ryan K. Wilson
Bradford & Wilson PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
reagan@bradwil.com
ryan@bradwil.com

-and-

David P. Whittlesey
Texas Bar No. 00791920
*Pro hac vice*
Shearman & Sterling LLP
111 Congress Ave., Ste. 1700
Austin, TX 78701
david.whittlesey@shearman.com

***Attorneys for Plaintiff, KLX Energy Services LLC***

*/s/ Daniel V. Carsey*

## DECLARATION

I, Loren Swor, declare under penalty of perjury that the foregoing is true and correct.

Dated: January 11, 2021.

Loren Swor, as Managing Member of
Magnesium Machine, LLC