IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KLX ENERGY SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-20-1129-F |
| | ) | |
| MAGNESIUM MACHINE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff KLX Energy Services, LLC, moves to dismiss counterclaims five, six and seven filed by defendant Magnesium Machine, LLC. Doc. no. 16. The motion is brought under Rule 12(b)(6), Fed. R. Civ. P., and under the Oklahoma Citizens Participation Act (the OCPA, 12 O.S. Supp. 2020 §§ 1430, *et seq*.), an anti-SLAPP statute.[1] Magnesium Machine responded, objecting to dismissal of the counterclaims. Doc. no. 18. KLX filed a reply brief. Doc. no. 19.

The challenged counterclaims allege that KLX has tortiously interfered with Magnesium Machine's business (counterclaim 5), and has committed deceptive trade practices in violation of 78 O.S. Supp. 2020 § 53 (counterclaim 6) and in violation of common law (counterclaim 7). KLX argues that the counterclaims should be dismissed because they rely on KLX's complaint as constituting interference with Magnesium Machine's business and deceptive trade practices. In other words, the challenged counterclaims allege that KLX's claims *in this action* constitute the referenced torts.

---

[1] Anti-Strategic Lawsuit Against Public Participation.

Pertinent Allegations

KLX's complaint alleges:

-- That Magnesium Machine breached its contract with KLX, and misappropriated KLX's trade secrets and confidential information (doc. no. 1, ¶ 1);

-- That KLX is an oilfield service provider which sells specialized tools to its customers (*id*. at ¶ 2);

-- That Magnesium Machine is KLX's manufacturing vendor for a line of specialized products which KLX sells known as dissolvable frac plugs (*id*. at ¶ 2);

-- That when the original plug designed by Magnesium Machine (referred to as the Adair frac plug, *id*. at ¶ 18) failed to meet the needs of KLX's customers, KLX made numerous design modifications to that plug; these design changes are KLX's intellectual property; they are the result of work done by KLX's engineers, as well as in-house testing and analysis (*id*. at ¶4);

-- That Magnesium Machine is secretly selling the modified plug that incorporates KLX's design enhancements to KLX's customers and potentially others, driving business away from KLX (*id*. at ¶ 5);

-- That Magnesium Machine is now, directly or indirectly through a related entity, selling KLX's plugs to KLX customers (*id.* at ¶ 46); and

-- That at least one KLX customer has begun purchasing its plugs from an entity associated with Magnesium Machine; those plugs contain KLX's confidential and material design enhancements, making it evident that Magnesium Machine has been secretly using KLX's confidential information and design improvements in a manner which has harmed and will continue to harm KLX. (*id*. at ¶ 47).

Magnesium Machine's counterclaims allege:

-- That "KLX, through its public filing of the Complaint, alleges it contributed to the modification or improvement of the Adair Plug" (doc. no. 11, counterclaim allegations at ¶ 13, facts common to all counterclaims);

-- That "KLX is erroneously claiming ownership of the modified and improved Adair Plug, but Magnesium Machine has the exclusive right to the Adair Plug" (*id*. at ¶ 15, facts common to all counterclaims);

-- That "KLX is falsely advising customers it contributed to the modifications or improvements of the Adair Plug; this misinformation is causing confusion in the niche market and negatively impacting Magnesium Machine" (*id*. at ¶ 16, facts common to all counterclaims);

-- That "KLX is knowingly providing inaccurate information about the Adair Plug with the intent to injure Magnesium Machine within and across the industry" (*id*. at ¶ 17, facts common to all counterclaims).

-- That "[w]ithout justification, KLX has intentionally and with malice interfered with those relationships [Magnesium Machine's business relationships with multiple entities] by frivolously defaming Magnesium Machine" (*id.* at ¶¶ 46-47);

-- That "As a result of KLX's actions, Magnesium Machine has been … forced to defend itself against baseless claims…" and "damages will continue until KLX admits its claims are baseless…." (*id*. at p. 18, ¶ 50);

-- That "KLX is attempting to claim the Adair Plugs as their own product" (*id*. at ¶ 54);

-- That "KLX has made false or misleading statements about its role in the design, creation, modification, and/or improvement of the Adair Plug" (*id*. at ¶ 57); and

-- That "KLX has made false assertions that any modifications or improvements of the Adair Plugs 'belong to' it" (*id*. at p. 19, ¶ 63).

Given the counterclaims' focus on what KLX has "claimed" or "asserted" or alleged "through the filing of its public complaint," the court finds that the challenged counterclaims are founded on KLX's allegations in its complaint but only

3

in part. Moreover, Magnesium Machine implicitly concedes the point, stating that "Magnesium's prima facie case is not based solely on KLX's filing." Doc. no. 18, p. 4 (emphasis added).

## Rule 12(b)(6), Fed. R. Civ. P

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. Id. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177.

In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. Id. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

A court has the discretion to identify cognizable claims and to dismiss any portion of a claim or counterclaim. Accordingly, the court next considers the viability of the challenged counterclaims to the extent that they rely on KLX's complaint as constituting tortious conduct.

KLX argues Petition Clause immunity protects KLX to the extent the counterclaims are based on KLX's pleadings in this action so that these parts of the counterclaims fail under Rule 12(b)(6).[2]

Petition Clause immunity is addressed in <u>CSMN Investments, LLC v. Cordillera Metropolitan District</u>, 956 F.3d 1276, 1282 (10th Cir. 2020).

> The First Amendment protects the right of the people to petition the Government for a redress of grievances. The Supreme Court has recognized this right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights, and explained that the right is implied by the very idea of a government, republican in form. Immunity flows from this right, protecting those who seek redress through the courts from liability for petitioning activities.

*Id*. at 1282 (quotations, citations and footnotes omitted).

> Petition Clause immunity applies whenever [the petitioning] is genuine, not simply when it triumphs. So in determining whether Petition Clause immunity applies, we review the merits of the petitioning and, in doing so, look for litigation so baseless that no reasonable litigant could realistically expect to secure favorable relief.

*Id.* at 1287 (quotations and citations omitted, brackets in original).

> [W]e do not find that Appellees engaged in a series of lawsuits that were intended to abuse judicial processes. And thus, Appellees' conduct does not qualify for the

---

[2] KLX also makes a 12(b)(6) argument based on the litigation privilege, citing <u>Cardtoons, L.C. v. Major League Baseball Players Assoc.</u>, 335 F.3d 1161, 1168 (10th Cir. 2003), and 12 O.S. §1443.1. There is no need to address that argument.

> California Motor[3] sham exception, and Petition Clause immunity applies.

*Id.* at 1288.

> Petition Clause immunity exists to promote access to the courts, allowing people to air their grievances to a neutral tribunal.

*Id.* at 1290.

Magnesium Machine does not address KLX's argument for Petition Clause immunity. The court knows of no reason why the doctrine should not apply here, and it finds that this argument has been confessed. To the extent that the challenged counterclaims rely on KLX's complaint as constituting tortious conduct (tortious interference or deceptive trade practices), the challenged counterclaims will be dismissed with prejudice under Rule 12(b)(6) based on KLX's Petition Clause immunity.

After eliminating the parts of the challenged counterclaims that are covered by the above ruling, the remaining parts are merely conclusory. In addition, counterclaim five, entitled "tortious interference with business," fails to give adequate notice as to whether it alleges a claim for tortious interference with contractual relations, tortious interference with prospective business advantage, or both. For these reasons, the remaining portions of the challenged counterclaims will be dismissed without prejudice under Rule 12(b)(6) if they are not successfully amended in accordance with the leave granted at the end of this order.

---

[3] California Motor Transport Co v. Trucking Unlimited, 404 U.S. 508 (1972).

## 2. OCPA

The court must still consider dismissal, under the OCPA, of the parts of the challenged counterclaims that rely on KLX's complaint as tortious activity.[4]

The initial question is whether the OCPA applies to state claims alleged in federal court.[5] That question has not been answered by the court of appeals. The undersigned has, in the past, reluctantly concluded the Act applies in federal court. *See*, Craig PC Sales & Service, LLC v. CDW Government, LLC, 2018 WL 4861522, *16, n.8. (April 30, 2018). After the order was entered in Craig, the court of appeals made clear that if there is a difference between the OCPA and the Federal Rules, an analysis under the Federal Rules Enabling Act is necessary to determine whether the Federal Rules of Civil Procedure may be applied rather than the OCPA. Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., 956 F.3d 1228, 1238 (10th Cir. 2020). This court's order in Craig went through the Federal Rules Enabling Act analysis at length, applying Justice Stevens' concurring opinion in Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393 (2010). This court concluded that considering the OCPA's fee-shifting and immunity from suit defense,[6] Rules 12 and 56, Fed. R. Civ. P., cannot be applied in a manner consistent with the Rules Enabling Act. Craig, 2018 WL 4861522, *15. As a result, the undersigned ruled that the OCPA applied to plaintiffs' claims alleged in federal court. *Id.* As no dispositive decisions have been issued since that time, the

---

[4] The Rule 12(b)(6) rulings do not moot the motion to the extent it is brought under the OCPA. *See*, Adelson v. Harris, 973 F. Supp.2d 467, 493 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ("Although the Court has determined that this action must be dismissed under Rule 12(b)(6), that determination does not necessarily render moot Defendants' motion under the Anti-SLAPP statute, because that statute provides for certain relief in the event of dismissal, including the recovery of attorney's fees.").

[5] This action is in federal court on diversity jurisdiction.

[6]*See*, Anagnost v. Tomecek, 390 P.3d 707, 712 (Okla. 2017).

undersigned will stick with its conclusion in Craig (again, reluctantly) and find that the OCPA applies to state claims litigated in federal court.

The next question is whether the OCPA applies on the facts of this case. Holding aside, for now, a discussion of one potentially applicable exclusion, the court finds that the Act applies. The OCPA provides a means for dismissal, at an early stage, of a "legal action" in certain circumstances. "Legal action," as defined in the Act, includes a counterclaim. 12 O.S. § 1431 (6). The OCPA provides for dismissal if the legal action (counterclaim) is "based on, relates to or is in response to a party's exercise of the…right to petition…."[7] 12 O.S. § 1432(A). The OCPA defines the "exercise of the right to petition" to include "a communication in…a judicial proceeding." 12 O.S. §1431(4)(a)(1). Accordingly, to the extent that the challenged counterclaims contend KLX's allegations in its complaint constitute tortious conduct, the counterclaims are "legal actions" which are based on KLX's right to petition, and the OCPA applies.

The exclusion in issue is 12 O.S. §1439(2), which provides as follows.

> The Oklahoma Citizens Participation Act shall not apply to:
>
> …
>
> 2. A legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct the action is based upon arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer[.]

---

[7] Section 1432 provides: "If a legal action is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association, that party may file a motion to dismiss the legal action." KLX invokes the OCPA based on KLX's complaint as an exercise of the right to petition. Doc. no. 16, p.4.

12 O.S. § 1439 (emphasis added).

Magnesium Machine argues that the exclusion applies so that none of its counterclaims should be dismissed, in whole or in part, under the OCPA.

KLX, as the movant under the OCPA, contends that the exclusion does not apply for several reasons discussed next.

First, KLX argues the exclusion only applies when the OCPA is invoked to protect the right of free speech, specifically, free speech on a matter of public concern such as speech related to a good, produce or service in the marketplace. *See*, 12 O.S. §1431(3), (7) (defining exercise of free speech to include a communication on "a matter of public concern" such as an issue related to "a good, product or service in the marketplace"). (KLX invokes the OCPA as a protection of its right of petition, not its right of free speech.)

The exclusion says nothing about operating only when the right in question is free speech. In addition, the cases KLX cites to support the proposed limitation—Krimbill v. Talarico, 417 P.3d 1240, 1250 (Okla. Civ. App. 2018), and Castleman v. Internet Money Ltd., 546 S.W. 3d 684 (Tex. 2018)[8]—are not dispositive. Krimbill (like many cases) refers to the exclusion as "commercial speech exemption," and indicates that the exclusion applies when speech is in connection with a matter of public concern regarding a good, product or service in the marketplace. 417 P.3d 1240, 1249-50. That statement, however, does not necessarily mean the exclusion cannot apply when the OCPA is invoked to protect the right to petition, an issue

---

[8] The Texas anti-SLAPP statute is very similar to the OCPA, and decisions of the Texas Supreme Court may therefore be considered for their persuasive value. Krimbill, 417 P.3d 1240, 1244-45. The Texas exclusion is almost identical to Oklahoma's. The only difference is that the Oklahoma exclusion includes the underlined words in the following phrase: "…if the statement or conduct the action is based upon arises out of the sale or lease of goods…." *See*, TEX. CIV. PRAC. & REM. CODE § 27.010(a)(2). (Krimbill reviews several Texas appeals court cases but does not address Castleman. Krimbill was decided on October 27, 2017, and mandate issued on May 9, 2018. Castleman was decided between those two dates, on April 27, 2018.)

9

Krimbill did not consider. Castleman also refers to the exclusion as the "commercial free speech exemption" and addresses the exclusion only in that context. To the extent that Castleman touches indirectly on KLX's argument that the exclusion cannot apply when the right in issue is the right to petition, Castleman suggests no such limitation. To the contrary, Castleman indicates that the reference in the text of the exclusion to "the statement or conduct" on which a challenged action is based, indicates the exclusion reaches "communications that constitute the defendant's [here, the counterclaim defendant's] exercise of the rights of association, free speech, and to petition." Castleman, 546 S.W. 3d at 690, n.4 (interior quotations omitted, emphasis added).

Second, KLX argues that, per Castleman, the exclusion applies only to "commercial speech which does no more than propose a commercial transaction." Castleman at 690 (quotations omitted). As noted in Castleman, "speech which does no more than propose a commercial transaction" is a concept discussed in Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748 (1976).[9] Virginia State Bd. of Pharmacy had nothing to do with the reach of an anti-SLAPP act.

For the reasons noted, it is a close call whether Oklahoma courts would adopt either of the arguments described above to hold that the exclusion does not apply on the facts of this case. This court need not answer that question because KLX makes a third argument, one tied more closely to the text of the exclusion, which this court finds more convincing. As explained below, this argument relates to the meaning of the final phrase in the exclusion.

---

[9] Castleman at 690, quoting Posadas de P.R Assocs. v. Tourism Co. of P.R., 478 U.S. 328, 340 (1986), quoting Virginia State Bd. of Pharmacy at 762.

To review, the exclusion provides that the OCPA does not apply to: "A legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct the action is based upon arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer[.]" 12 O.S. § 1439(2).

Thus, tracking the text of the exclusion, it operates:

--when "[a] legal action" (here, the challenged counterclaims to the extent they depend on KLX's allegations in its complaint);

--is "brought against a person primarily engaged in the business of selling or leasing goods or services" (here, the challenged counterclaims are brought against KLX, "an oilfield service provider that sells specialized tools," doc. no. 1, ¶ 2);

-- "if the statement or conduct the action is based upon" (here, the conduct the counterclaims are based upon is KLX's exercise of its right of petition via the filing of its complaint against Magnesium Machine);

--"arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction" (here, the conduct the counterclaims are based upon, KLX's complaint, arises out of the sale of its goods, specifically its re-engineered frac plugs, by Magnesium Machine, to KLX's customers or potential customers);

-- "in which the intended audience is an actual or potential buyer or customer." As stated above, it is this last phrase that is problematic for operation of the exclusion.

Despite the lack of a comma before the last phrase, this phrase cannot reasonably be construed as modifying "a commercial transaction" because a commercial transaction as such has no audience. For that matter, neither do sales or leases of goods, services, or insurance products and services. The only reasonable

11

construction of the phrase "in which the intended audience is an actual or potential buyer of customer" is that it modifies the exclusion's earlier reference to the defendant's (here, the counterclaim defendant's) "statement or conduct" on which the counterclaims are based.

The challenged counterclaims are based on KLX's conduct, specifically its right of petition, which KLX exercised when it filed its complaint. The intended audience of KLX's complaint is the court or Magnesium Machine or arguably the public-at-large. The intended audience of the complaint is not, in any meaningful sense, "an actual or potential buyer or customer" of KLX.[10]  Castleman reaches the same conclusion. 546 S.W. 3d 684, 690. This court finds that the exclusion does not apply on the facts of this case because the intended audience of KLX's conduct (the filing of its complaint) is not an actual or potential buyer or customer of KLX.

In short, the exclusion does not apply, and the OCPA does. KLX has carried its initial burden to show the Act applies. *See*, Krimbill, 417 P.3d 1240, 1249 ("Part V.  The Initial Burden to Show the Act Applies," including discussion of the exclusion).

At the second stage, Magnesium Machine is required to establish, by clear and specific evidence, a *prima facie* case for each essential element of the claim in question. 12 O.S. § 1434(C). At the third stage, "[n]otwithstanding the provisions of subsection (C), … the court shall dismiss a legal action [here, a portion of the

---

[10] The court is aware of one case that reached a different conclusion in a similar situation. In United Tactical Systems, LLC. v. Real Action Paintball, Inc., 143 F.Supp.3d 982 (N.D. Calif. 2015), a counterclaim-defendant moved for dismissal of certain counterclaims under California's anti-SLAPP act. The counterclaim alleged the plaintiff had been masquerading as "PepperBall Tech by representing itself either as PepperBall Tech or as the successor entity of PepperBall Tech, and by promoting its own products as those of Pepperball Tech when, in fact, they are not." *Id*. at 1021. The court held that "Even statements made in court may influence an actual or potential buyer or customer." On that basis, the court found that an exclusion to the California anti-SLAPP Act applied.

challenged counterclaims] … if the moving party [KLX] establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." 12 O.S. § 1434(D).  Thus, whatever the evidence may be that Magnesium Machine might offer to support the challenged counterclaims, the court must dismiss those counterclaims to the extent they rely on KLX's complaint if the moving party, KLX, establishes, by a preponderance of the evidence, a valid defense to the counterclaims.  KLX has done so based on the court's earlier ruling regarding Petition Clause immunity.  That immunity provides KLX with a valid defense, as a matter of law (rather than as a matter of evidence), to the parts of the challenged counterclaims that rely on KLX's complaint as constituting tortious interference or deceptive trade practices.  Consequently, no further evidentiary proceedings are necessary under the OCPA, and the court finds that to the extent counterclaims five, six and seven allege that KLX's complaint constitutes tortious interference or deceptive trade practices, KLX is entitled to dismissal of these parts of the challenged counterclaims under the OCPA.

Having found in favor of KLX under the OCPA, the court considers whether costs or fees should be awarded.  Section 1438 provides:

> If the court orders dismissal of a legal action under the Oklahoma Citizens Participation Act, the court shall award to the moving party:  1.  Court costs, reasonable attorney fees and other expenses incurred in defendant against the legal action as justice and equity may require….

It is not clear whether a partial dismissal of certain counterclaims should qualify as "dismissal of a legal action."  Assuming without deciding that it does, it also is not clear whether, under the circumstances of this case, the court retains discretion to deny fees and costs under the "as justice and equity may require" phrase.  Assuming without deciding the court does have such discretion, the court,

13

*if* it were required to evaluate fees and costs at this juncture, would deny an award because the OCPA motion was only successful in part (resulting in a partial dismissal of certain counterclaims, rather than in dismissal of any counterclaims in their entirety) and because the motion achieved nothing beyond what was achieved under Rule 12(b)(6). That said, it is not clear whether the court must always address a motion for costs and fees at an early stage or whether, in circumstances that do not involve the dismissal of a legal action in its entirety, the court may defer any award to a later stage.

None of these issues have been briefed, and the court has not researched them. Accordingly, the court declines to entertain a motion for fees and costs from KLX at this stage. KLX is advised that when this action is fully adjudicated or otherwise resolved, the court will consider such a motion, *de novo*, if necessary.

## Conclusion

The motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to the parts of counterclaims five, six and seven that rely on KLX's complaint as constituting tortious interference or deceptive trade practices. Because KLX enjoys Petition Clause immunity, these parts of the challenged counterclaims are **DISMISSED**, with prejudice, under Rule 12(b)(6) and alternatively under the OCPA.

The remaining portions of the challenged counterclaims (the challenged counterclaims to the extent they are based on statements or conduct by KLX other than KLX's allegations in the complaint) are subject to dismissal under Rule 12(b)(6) because they are merely conclusory. In addition, counterclaim five does not give adequate notice regarding what type of tortious interference is alleged. Accordingly, absent amendment, the remaining portions of the challenged counterclaims will be dismissed, without prejudice, under Rule 12(b)(6).

Magnesium Machine is **GIVEN** leave to amend the remaining portions of the challenged counterclaims in a manner which makes clear that these counterclaims no longer rely on KLX's complaint as constituting tortious conduct, in a manner which alleges these counterclaims with specificity, and in a manner which gives adequate notice of the nature of counterclaim five. Any such amendment is **DUE** within fourteen days of the date of this order. If the remaining portions of the counterclaims are not amended as permitted by this order, they will be dismissed, at that time, for the reasons stated in this order. (If that occurs, counterclaims five, six and seven will then have been dismissed in their entirety).

IT IS SO ORDERED this 22nd day of February, 2021.

_[signature]_
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-1129p003.docx