IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KLX ENERGY SERVICES LLC<br><br>Plaintiff,<br><br>v.<br><br>MAGNESIUM MACHINE, LLC<br><br>Defendant. | Case No. 5:20-cv-01129-F |

**KLX ENERGY SERVICES LLC'S MOTION TO DISMISS
DEFENDANT'S AMENDED COUNTERCLAIMS NO. 5, 6, 7 & 4**

Pursuant to Fed. R. Civ. P. Rule 12(b)(6), Plaintiff and Counterclaim-Defendant KLX Energy Services LLC respectfully moves to dismiss Counterclaims No. 5, 6, 7, and 4 in the Amended Counterclaims filed by Defendant-Counterclaimant Magnesium Machine, LLC (Doc. No. 21, herein the "Am. Countercl.").

**PROCEDURAL & FACTUAL BACKGROUND**

KLX will not belabor the Court with another recitation of the factual background beyond the following pertinent summary: in 2018, KLX and Mag Machine entered a distribution agreement giving KLX the exclusive right to sell under its own tradename a dissolvable frac plug manufactured by Mag Machine. Compl. ¶ 17, Exhibit A at Arts. 1, 7(a). KLX alleges that Mag Machine designed the initial prototype of the frac plug, but that the design was subsequently updated by KLX engineers. *Id*. ¶¶ 24-37. KLX filed this action when it discovered that Mag Machine was using KLX's confidential information to try and sell the KLX-modified plugs to KLX's own customers. *Id*. ¶¶ 40-47.

On December 1, 2020, Mag Machine filed its Answer, Affirmative Defenses and Counterclaims. Doc. No. 11. On February 22, 2021, the Court granted KLX's motion to dismiss the counterclaims for tortious interference and deceptive trade practices with prejudice to the extent they were premised on KLX's petitioning activities in this lawsuit.[1] Doc. No. 20. The Court also dismissed the remaining parts of those claims without prejudice under Rule 12(b)(6), leaving Mag Machine the opportunity to amend. *Id*. Mag Machine filed its Amended Counterclaims on March 8, 2021. Doc. No. 21.

In its amended pleading, Mag Machine abandons its tortious interference claim but maintains that KLX committed deceptive trade practices in violation of the Oklahoma Deceptive Trade Practices Act (counterclaim 6) and in violation of common law (counterclaim 7) by misrepresenting KLX's role in the frac plugs' design. It adds only a handful of new facts in support, including allegations that:[2]

- Prior to this lawsuit, KLX sold frac plugs to a customer called Seneca Resources. Am. Countercl. ¶ 46.

- In recent months, Mag Machine discussed selling frac plugs to Seneca. *Id*. ¶ 45. Seneca indicated to Mag Machine that it "liked the Adair Plug that KLX designed and only wanted to run the 'KLX' plug," which it believed was designed by KLX. *Id*. ¶¶ 47-48.

---

[1] The Court also concluded that KLX is entitled to dismissal of these parts of the challenged counterclaims under the Oklahoma Citizens Participation Act, 12 Okla. Stat. §§ 1430, *et seq*.). Doc. No. 20 at 14.

[2] In addition to the four amended counterclaims that are the subject of this Motion, Mag Machine also continues to assert counterclaims for breach of contract (Nos. 1 & 2) and declaratory relief on the issue of the distribution agreement's exclusivity (Nos. 3). KLX does not presently seek dismissal of those claims.

- Despite knowing that Mag Machine "designed and owned" the plugs (*id.* ¶ 49), KLX "claim[ed] the Adair Plug as its own product" (*id.* ¶ 52) and made misleading statements to Seneca regarding KLX's role in the product's design, for the purpose of injuring Mag Machine. *Id.* ¶¶ 53-58.

- As a result, "Seneca does not believe Magnesium Machine is the designer and owner of the Adair Plug," and Mag Machine "has not been able to restart any conversation with Seneca in order to develop a business relationship in selling the Adair Plug." *Id.* ¶¶ 50-51, 59.

Because these newly pled facts are insufficient to save Mag Machine's deceptive trade practices claims under Rule 12(b)(6), KLX moves to dismiss Amended Counterclaims No. 5 and No. 6 with prejudice. Additionally, given the invalidity of Mag Machine's only tort claims and for other reasons, KLX moves to dismiss Amended Counterclaims No. 7 (injunctive relief) and No. 4 (declaratory relief).

## LEGAL STANDARD

Under Rule 12(b)(6), "[a] court 'must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'" *N. Am. Ins. Agency, Inc. v. Bates*, No. CIV-12-544-M, 2013 WL 6150781, at *3 (W.D. Okla. Nov. 22, 2013) (quoting *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief." *Id.* at 679.

## ARGUMENT & AUTHORITIES

**I.     Amended Counterclaims No. 5 & 6 Fail to State Claims for Deceptive Trade Practices**

Oklahoma's "Deceptive Trade Practices Act" proscribes fourteen categories of deceptive conduct that, if performed in the course of a person's business, vocation, or occupation, constitute *prima facie* evidence of an intent to harm competitors. OKLA. STAT. tit. 78, § 53A(1)-(14). The statute provides a private right of action for injured competitors to seek injunctive relief and actual damages. *Id.* § 54A. Similarly, the common law tort of unfair competition "requires plaintiffs to prove that defendants engaged in deception for the purposes of misleading a consumer about the identity of the producer of goods or services."[3] *Chalfant v. Tubb*, 453 F. Supp. 2d 1308, 1319 (N.D. Okla. 2006).

  A. *Mag Machine Does Not Plausibly Allege Any Deceptive Acts*

"[D]eception is the key element of any claim under the Deceptive Trade Practices Act." *Chalfant*, 453 F. Supp. 2d at 1320. Therefore, a claimant must plausibly describe the "specific alleged wrongdoing" that forms a deceptive practice to withstand a motion to dismiss. *N. Am. Ins. Agency, Inc.*, 2013 WL 6150781 at *7. Here, Amended Counterclaims No. 5 and 6 both spring from the premise that KLX made false representations about its role in the frac plugs' design on its website and during conversations with its customer Seneca. Am. Countercl. ¶¶ 52-55. But despite Mag Machine's allegations, nothing on KLX's website purports to explain who designed the frac plugs (nor does Mag Machine

---

[3] Amended Counterclaim No. 6 is styled as "Deceptive Trade Practices – Common Law," which KLX construes as a common law claim for unfair competition.

point to any such language).⁴ And, with respect to Seneca, Mag Machine does not describe any specific statements by KLX, who made them, or when.⁵ Instead, its claims are supported solely by a handful of alleged statements by Seneca:

- "[A] representative from Seneca informed Magnesium Machine that KLX was providing the Adair Plug … to Seneca and was believed by Seneca to be designed by KLX." Am. Countercl. ¶ 47.

- "Seneca communicated with Magnesium Machine that Seneca liked the Adair Plug that KLX designed and only wanted to run the 'KLX' plug." *Id*. ¶ 48.

- "Seneca stated it had spent two years evaluating plugs and had committed to the 'KLX' plug design." *Id*.

From these innocuous third-party comments, it requires pure speculation to conclude—as Mag Machine claims—that KLX "knowingly made false representations" about its role in the frac plug's design. To the contrary, it is equally if not more reasonable to infer that KLX merely acted in conformity with the parties' distribution agreement, in which Mag Machine admittedly "authorize[d] [KLX] to rebrand the Products using its own

---

⁴ Based on a review of the KLX webpage URL hyperlinked in the Amended Counterclaims, the only language remotely relating to the origin or design of the frac plug is the following: "Our fleet of dissolvable frac plugs utilizes proprietary technology to deliver all the benefits of a traditional frac plug—but without the need for millout." The webpage says nothing about Mag Machine. *See* Am. Countercl. ¶ 52; *http://klxenergy-dev.azurewebsites.net/ProductsServices/DissolvablePlug* (last visited March 22, 2021).

⁵ Mag Machine's claims fail under Rule 8(a) pleading standards, but, because they are based on an alleged intentional misrepresentation, Rule 9(b)'s particularity requirements should apply. In federal court, ODTPA claims are "treated analogously to [] Lanham Act claims and governed by the same standard." *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 527 (10th Cir. 1987). And Oklahoma courts have applied Rule 9(b) to Lanham Act claims "insofar as the factual averments [as here,] allege intentional or knowing misrepresentations." *Integrated Business Technologies, LLC v. Netlink Solutions, LLC*, 2016 WL 4742306, at *4 (N.D. Okla. 2016) (quotation omitted).

present and future trademarks and trade names." *See* Compl. Exhibit A, at Art. 7(a).[6] Because there is no *plausible* inference that KLX engaged in any deceptive acts, the counterclaims fail.

      B.    *Mag Machine Does Not Identify Any ODTPA-Proscribed Conduct*

Mag Machine's statutory claim is deficient for the additional reason that it does not identify which of the ODTPA's fourteen deceptive practices that KLX allegedly engaged in. Even worse, Mag Machine makes no specific, non-conclusory factual allegations of *what* identifiable wrongdoing would fall into *which* category. Without either proper allegation, "Defendants are simply left to guess and/or assume the basis for plaintiffs' ODTPA claim," which is insufficient. *N. Am. Ins. Agency, Inc.*, 2013 WL 6150781, at *7; *see also Elliot Plaza Pharmacy, LLC v. Aetna U.S. Healthcare, Inc.*, 2009 WL 702837, at *5 (N.D. Okla. 2009) (dismissing ODTPA claim in part because "[i]t fails . . . to identify a single ODTPA provision allegedly violated").

As noted, Mag Machine bases its ODTPA claim on allegations that KLX made false or misleading statements about "the designer, creator, manufacturer, and source" for the frac plugs (Am. Countercl. ¶ 53); "its contributions to any modification or improvement" (*id*. ¶ 54); and "its role in the design, creation, modification, and/or improvement" of the product (*id*. ¶ 55). But even if these allegations were plausible—which they are not—none

---

[6] On a motion to dismiss for failure to state a claim, a district court may consider exhibits attached to the Complaint . . . without converting the motion to dismiss to one for summary judgment. *Pace v. Swerdlow*, 519 F.3d 1067, 1072-72 (10th Cir. 2008).

clearly tracks any categories of proscribed conduct described in the ODTPA. For example, Mag Machine cannot claim that KLX "passe[d] off goods or services as those of another" (OKLA. STAT. tit. 78, § 53(1)) or "knowingly made a false representation as to affiliation" (*id*. § 53(3)) because there is no allegation KLX made *any* representations regarding Mag Machine or otherwise coopted its protected trademarks or patents. Potentially more relevant is the ODTPA's prohibition on making false representations "as to the source, sponsorship, approval, or certification of goods or services." *Id*. § 53(2)). But that category also does not fit because it says nothing about representations relating to a product's design. *Cf. Petersen v. Fee Intern., Ltd*., 381 F.Supp. 1071, 1080 (Okl. 1974) (defendant "ma[de] false representation as to the source of the goods" in violation of ODTPA by marking products with patent number owned by plaintiff). Mag Machine has not cited, and KLX has not identified, any reported cases recognizing an ODTPA claim based on allegations that a defendant misstated its own role in designing a product.

    C.    *Mag Machine Does Not Plausibly Allege Competition with KLX*

It is well established that the ODTPA only protects competing business interests. *Conatzer v. American Mercury Insurance Company, Inc.*, 15 P.3d 1252, 1254 (Okla. Civ. App. 2000). Thus, a claimant must plausibly show that it was in competition with the defendant during the commission of the allegedly deceptive practices. *Thomas v. Metropolitan Life Ins. Co.*, 540 F. Supp. 2d 1212, 1228 (W.D. Okla. 2008) (dismissing ODTPA claim where there was no allegation the parties were in competition); *Business Loan Express, LLC*, 2008 WL 11338444, at *4 (W.D. Okla. July 30, 2008) (same).

Here, Mag Machine does not specify when KLX's alleged conversations with Seneca took place, but nowhere does Mag Machine state that it was actively competing for business with KLX at the time—much less that KLX was *aware* of any such competition. To the contrary, Mag Machine admits that, at least as of July 2020, it told KLX that it was "*not* marketing this plug to other customers." See Doc. No. 11 ¶¶ 40-41 (admitting allegations in Compl. ¶¶ 40-41) (emphasis added). And in its pleadings Mag Machine goes farther and "denies it has sold Adair Plugs directly to KLX customers." *Id*. ¶ 46. Likewise, the Amended Counterclaims allege that "[i]n recent months, Magnesium Machine had *discussed* selling Adair Plugs to Seneca Resources"—not that it ever did so. Am. Countercl. ¶ 45 (emphasis added). Simply put, Mag Machine does not and cannot plausibly allege that it and KLX were actual business competitors at the time of the allegedly deceptive acts, as required to state a claim.

      D.    *Mag Machine Does Not Plausibly Allege Any In-State Conduct*

Finally, KLX submits that these counterclaims should be dismissed for the independent reason that the ODTPA does not encompass activities occurring outside Oklahoma. Although the question appears to be undecided as to the ODTPA, Oklahoma courts have previously found that other statutory claims based on deceptive trade practices in the consumer context do not reach extraterritorial conduct, absent a clear legislative mandate. *Steinbeck v. Dollar Thrifty Automotive Group, Inc.*, 2008 WL 4279798, at *2-3 (N.D. Okla. 2008) (dismissing claim under Oklahoma Consumer Protection Act ("OCPA") because the statute "expresses no intent to reach conduct occurring outside of Oklahoma"); *accord Sallee v. Dollar Thrifty Auto. Grp., Inc.*, No. 14–CV–250–GKF–PJC, 2015 WL 1281518

(N.D. Okla. March 20, 2015) (dismissing OCPA claim at pleading stage because OCPA does not have extraterritorial effect); *see also Friedman v. Dollar Thrifty Auto. Grp.*, No. 12–cv–02432, 2013 WL 5448078, * 6 (D. Colo. Sept 27, 2013) (dismissing OCPA claim where plaintiff did not overcome the presumption against extraterritoriality).

As with the OCPA, there is nothing in the language of the ODTPA to suggest the statute was meant to prohibit practices by non-Oklahoma businesses occurring outside the territorial boundaries of this state. In this case, Mag Machine does not state where (or when) KLX's alleged communications with Seneca occurred, but there is no suggestion that they took place in Oklahoma. As such, Mag Magnesium has pled no viable claims.

## II.     Amended Counterclaim No. 7 Fails to State a Claim for Injunctive Relief

Amended Counterclaim No. 7 is styled as a "Request for Injunctive Relief" and seeks to enjoin KLX from the allegedly deceptive trade practice of "distributing the Adair Plug as the 'KLX plug' or 'KLX Adair Plug.'" Am. Countercl. ¶¶ 66-69. As the name implies, injunctive relief is a remedy and not a standalone cause of action. "Such injunctive relief is dependent upon the plaintiff's underlying claims. It is inappropriate where, as here, the plaintiff has failed to state a viable underlying claim for relief." *Elliot Plaza Pharmacy, LLC v. Aetna U.S. Healthcare, Inc.*, 2009 WL 702837, at *5 (N.D. Okla. 2009) (dismissing claim for injunctive relief where plaintiff failed to state underlying statutory claim). Given Mag Machine's failure to state a claim for deceptive trade practices, its only

remaining causes of action are for breach of contract and declaratory relief—neither of which entitles Mag Machine to the injunction sought. This claim necessarily fails.[7]

### III. The Court Should Decline to Hear Counterclaim No. 4 for Declaratory Relief

Mag Machine's fourth counterclaim seeks a declaratory judgment and asks the Court "to review the [parties' Distribution] Agreement, the acts of the parties, and declare the Adair Plug, all modifications and all improvements 'belong to' Magnesium Machine." Am Countercl. ¶¶ 38-42 (internal quotation marks in original).

In federal court, requests for declaratory relief are governed by the Declaratory Judgment Act (28 U.S.C. § 2201-2202). *See Trant v. Oklahoma*, 874 F.Supp.2d 1294, 1299 n.2 (W.D. Okla. 2012). Courts have "substantial discretion in deciding whether to declare the rights of litigants." *Cleveland v. Talent Sport, Inc.*, No. CIV–12–789–D, 2013

---

[7] While KLX did not previously seek dismissal of Amended Counterclaims No. 7 and No. 4 pursuant to Rule 12(b)(6) in its First Motion to Dismiss, the Court may nonetheless properly grant that relief now. As the Tenth Circuit has noted, Rule 12(g)(2) precludes successive Rule 12 motions, but Rule 12(h)(2) "allows parties to raise certain defenses, including the failure to state a claim upon which relief may be granted . . . by a motion for judgment on the pleadings under Rule 12(c)." *Albers v. Bd. of Cty. Comm'rs of Jefferson Cty.*, Colo., 771, 701-07 F.3d 697, 701 (10th Cir. 2014) (declining to reverse "harmless" technical violation of Rule 12(g)(2)). For that reason, consideration of a successive Rule 12(b)(6) motion is "proper . . . because the court could have considered the motion as a motion for judgment on the pleadings under Rule 12(c)." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1102 (10th Cir. 2017); *see also Factory Direct, Inc. v. Anatomic Global, Inc.*, 2012 WL 13024061, at *4 (W.D. Okla. 2012) (Friot, J.) (Court considered issues raised in separate 12(b)(6) motion, because, among other reasons, "defendants could have filed their motion under Rule 12(c)."). In the alternative to Rule 12(b)(6), KLX seeks the same relief pursuant to Rule 12(c) as a judgment on the pleadings.

WL 2178272, at *2 (W.D. Okla. 2013) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In the Tenth Circuit, relevant considerations include, among others, whether a declaratory judgment: (1) would settle the controversy; or (2) would serve a useful purpose in clarifying the legal relations at issue. *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-983 (10th Cir. 1994).

Both factors weigh heavily against hearing Amended Counterclaim No. 4. First, the declaration requested by Mag Machine is hopelessly ambiguous. A judgment that the frac plug and its modifications "belong to" Mag Machine would do almost nothing to settle the controversy or clarify the legal relations at issue. Confusingly, the claim refers to Mag Machine's "trademarks" and "present or future patents" (Am. Countercl. ¶¶ 40-41), yet does not specifically identify what intellectual property rights these refer to or how they relate to the requested declaration. It is equally obscure whether Mag Machine seeks a declaration regarding the parties' contractual rights, extra-contractual rights, or some combination. Additionally, KLX cannot discern whether Mag Machine intends the ruling to extend to existing inventories of physical plugs. Simply put, granting the requested relief would only prompt more litigation.

Second, the requested declaration would serve no useful purpose for the additional reason that it is redundant to other claims in this action. *See Cleveland*, 2013 WL 2178272 at *3 (dismissing claim for declaratory relief when all relevant issues would be decided by adjudicating other affirmative claims). Specifically, resolution of KLX's affirmative trade secret claims, which seek to enjoin Mag Machine from "selling any products that incorporate design modifications based on KLX's Proprietary Information" (Compl. ¶ 82), will

11

necessarily resolve in a concrete sense the issue of which modifications and improvements, if any, "belong to" Mag Machine.

## CONCLUSION AND PRAYER

For the foregoing reasons, KLX respectfully requests that the Court dismiss Mag Machine's Amended Counterclaims No. 5, 6, 7, and 4 with prejudice under Rule 12(b)(6).

Date:  March 22, 2021

                                                Respectfully Submitted,

*/s/ David P. Whittlesey*
David P. Whittlesey*
Texas Bar No. 00791920
**admitted pro hac vice*
SHEARMAN & STERLING LLP
111 Congress Ave., Suite 1700
Austin, TX 78701
(512) 647-1900
david.whittlesey@shearman.com

–and–

Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
BRADFORD & WILSON PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
(405) 698-2770
(405) 234-5506 fax
reagan@bradwil.com
ryan@bradwil.com

**ATTORNEYS FOR
KLX ENERGY SERVICES LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2021 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

/s/ *David P. Whittlesey*

David P. Whittlesey