## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

KLX ENERGY SERVICES LLC,    )
    )
    Plaintiff,    )
    )
-vs-    )    Case No. CIV-20-1129-F
    )
MAGNESIUM MACHINE, LLC,    )
    )
    Defendant.    )

## <u>ORDER</u>

Plaintiff KLX Energy Services, LLC (KLX) moves to dismiss counterclaims five, six, seven and four.[1]  Doc. no. 22.  The motion is brought under Rule 12(b)(6), Fed. R. Civ. P., and partially under Rule 12(c), Fed. R. Civ. P.[2]  Defendant Magnesium Machine, LLC (Magnesium Machine) has responded, objecting to dismissal of any counterclaims.  Doc. no. 23.  KLX has filed a reply brief.  Doc. no. 24.  For the reasons stated below, the motion will, in the main, be denied; a narrow exception is noted with respect to the fifth counterclaim.

---

[1] This is the second motion by KLX seeking dismissal of counterclaims. The first was brought under Rule 12(b)(6) and the Oklahoma Citizens Participation Act (the anti-SLAPP statute). When the court ruled (doc. no. 20), it gave Magnesium Machine limited leave to amend.  Magnesium Machine did so, and KLX has now filed a second motion to dismiss.

[2] To the extent the motion challenges counterclaims seven and four, it is brought under Rule 12(b)(6) and alternatively under Rule 12(c), Fed. R. Civ. P.  Movant KLX concedes it did not challenge counterclaims seven and four in its first motion to dismiss.  KLX argues this does not prevent it from challenging counterclaims seven and four now, via a motion for judgment on the pleadings.

Standards

The inquiry under Rule 12(b)(6) is whether the complaint, or in this case the challenged counterclaims, contain enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a  motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009).  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.  at 679.

In considering a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the court uses the same standard it uses in considering a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *See*, <u>Horton v. National Union Fire Insurance Co.</u>, 2015 WL 7575909, *1 (E.D. Okla. 2015) (standards for a Rule 12(c) motion, with citations).

The Fifth Counterclaim

Deceptive Trade Practices—Statutory

The fifth counterclaim is brought under Section 53 of the Oklahoma Deceptive Trade Practices Act (ODTPA),  78 O.S. 2011 §§ 51, *et seq*.  Doc. no. 21, ¶ 44.  In support, the fifth counterclaim alleges as follows.

-- "In the months before KLX filed the current lawsuit against Magnesium Machine, KLX sold Adair Plugs to Seneca Resources."  *Id*. at ¶ 46.

-- Magnesium Machine has, in recent months, "discussed selling Adair Plugs to Seneca…."  *Id*. at ¶ 45.

-- In recent months, a meeting occurred between Magnesium Machine and Seneca, in which Seneca communicated its belief that KLX designed the Adair Plug. *Id*. at ¶ 47.

--   In recent months, Seneca, in a conference call, communicated to Magnesium Machine that it "only wanted to run the 'KLX' plug," and that it "had committed to the 'KLX' plug design."  *Id*. at ¶ 48.

-- The Adair Plug was "designed and owned by Magnesium Machine," not KLX.  *Id*. at ¶49.

-- "Based on the misinformation from KLX, that the Adair Plug was designed by KLX, Seneca does not believe Magnesium Machine is the designer and owner of the Adair Plug."  *Id*. at ¶ 50.

-- "Magnesium Machine has not been able to restart any conversation with Seneca in order to develop a business relationship in selling the Adair Plug." *Id*. at ¶ 51.

-- "KLX claims the Adair Plug as their own product as noted by the meeting conversations with Seneca and as shown on the KLX website – http://klxenergy-dev.azurewebsites.net." *Id*. at ¶ 52.

-- KLX "has knowingly made false representations about the designer…and source for the Adair Plug, any modifications, and any improvements." *Id*. at ¶ 53.

1.

KLX argues, first, that the fifth counterclaim does not plausibly allege a deceptive act.  KLX argues it is "pure speculation" to conclude, based on the allegations, that KLX knowingly made false representations about KLX's role in the Adair Plug's design.  Doc. no. 22, p. 5.  KLX argues that instead of specifics about any alleged false representation by KLX concerning the ownership, source or design of the plug, the fifth counterclaim relies on an inference that KLX is the origin of Seneca's incorrect information.  KLX argues this is not a plausible inference.  KLX argues it is equally if not more reasonable to infer that KLX has acted in conformity with the parties' distribution agreement, by which Magnesium Machine authorized KLX to rebrand the products using its own trademarks and trade names.

The fifth counterclaim relies on an inference that KLX is the source of Seneca's misinformation about the source of the plug and its design.  That inference is plausible given other allegations which provide context.  For example, the fifth counterclaim describes conversations Magnesium Machine had with Seneca in which Seneca revealed its understanding (Seneca's incorrect understanding, from Magnesium Machine's point of view) that KLX was the designer and is the owner

of the plug.  The fifth counterclaim also alleges that statements on KLX's website claim the plug as KLX's "own" product.  Doc. no. 21, ¶ 52.

The court rejects KLX's argument that the fifth counterclaim does not plausibly allege a deceptive act on the part of KLX.

2.

Next, KLX argues the fifth counterclaim should be dismissed because it does not identify which subsection of § 53(A) it relies on, and because it includes no allegations which otherwise identify the deceptive trade practice in question.[3]

Subsection (2) of 78 O.S. 2011 § 53(A) makes it a deceptive trade practice to, in the course of business, "Knowingly make[] a false representation as to the source, sponsorship, approval, or certification of goods or services[.]"  No other subsection of § 53(A) refers to the "source" of goods or services.   The fifth counterclaim alleges that "KLX has knowingly made false representations about the designer, creator, manufacturer, and source for the Adair Plug, any modifications, and any improvements."  Doc. no. 21, ¶ 53.  This allegation, which addresses false representations about the source of the plug and about the source of modifications or improvements to the plug, gives adequate notice that the fifth counterclaim alleges a deceptive trade practice as defined in subsection (2) of §53(A).

The fifth counterclaim will not be dismissed for failure to indicate which subsection of the statute it relies upon.[4]

_____

[3] Section 53(A) of the ODTPA lists deceptive trade practices in subsections (1) through (14).

[4] To the extent, if any, that the fifth counterclaim is intended to allege a deceptive trade practice under a subsection of § 53(A) *other than* subsection (2), any such claim fails for lack of adequate notice and will be dismissed.

3.

KLX argues the ODTPA only protects competing business interests, and that the fifth counterclaim fails to plausibly allege Magnesium Machine is in competition with KLX.  KLX also argues that the fifth counterclaim does not specify when the allegedly deceptive acts by KLX occurred so that the counterclaim necessarily fails to plead that KLX and Magnesium Machine were competitors at the time of the deceptive acts.

The fifth counterclaim alleges that "In recent months, Magnesium Machine had discussed selling Adair Plugs to Seneca Resources."  Doc. no. 21, ¶ 45.  The counterclaim also alleges that "In the months before KLX filed the current lawsuit against Magnesium Machine, KLX sold Adair Plugs to Seneca."  *Id*. at ¶46.  Thus, the counterclaim alleges facts indicating that Seneca is a potential customer of both Magnesium Machine and KLX, making Magnesium Machine and KLX competitors. In addition, assuming (without deciding) it is necessary for Magnesium Machine to establish that KLX and Magnesium Machine were competitors at the time of the deceptive acts, such an inference is plausible, reading Magnesium Machine's allegations as a whole.[5]

The fifth counterclaim will not be dismissed for failure to allege that KLX and Magnesium Machine are competitors.  Nor will it be dismissed for failure to allege that these entities were competitors at the time of the alleged deceptive acts.

4.

KLX's final challenge to the fifth counterclaim argues this counterclaim does not plausibly allege any in-state conduct by KLX.  KLX concedes it has found no

---

[5] In addition, the court notes that KLX's complaint alleges that Magnesium Machine is selling "the KLX-designed plugs to KLX's own customers."  Doc. no. 1, ¶ 6.

cases which hold that the ODTPA does not encompass activities occurring outside of Oklahoma.  Accordingly, KLX relies on cases involving the Oklahoma Consumer Protection Act.

Magnesium Machine notes the absence of authority with respect to this argument for dismissal.  In addition, Magnesium Machine argues that it is based in Oklahoma and that conversations KLX had with Seneca, and possibly others, impact Magnesium Machine's business.  Magnesium Machine also argues that discovery may uncover deceptive acts by KLX which occurred in Oklahoma.  Finally, Magnesium Machine argues that limiting the ODTPA in the manner KLX suggests would defeat the purpose the statute.

Issues regarding the reach of the ODTPA are best left to a later stage. Evidence may render this issue moot.  If the issue is not moot, evidence will help define the issue.  Accordingly, the fifth counterclaim will not be dismissed for failure to allege deceptive trade practices occurring in Oklahoma.[6]

The Sixth Counterclaim:

Deceptive Trade Practices—Common Law

KLX construes the sixth counterclaim as a common law claim for unfair competition (doc. no. 22, p.4, n.3), a characterization Magnesium Machine's response brief does not dispute.  As for the underlying facts, the sixth counterclaim reasserts the facts alleged in the fifth counterclaim.  Doc. no. 21, ¶ 60.  To the extent the sixth counterclaim sets out its own facts, those facts are similar to those alleged in support of the fifth counterclaim. Specifically, the sixth counterclaim alleges that "KLX has made false assertions to Seneca that any modifications or improvements

---

[6] Nothing stated in this order should be interpreted as suggesting how the court might rule if this issue is raised later.

of the Adair Plugs belong to it [KLX] and [h]as represented the same to the public on KLX's website…." Doc. no. 21, ¶ 61. The sixth counterclaim also alleges that "KLX is offering false information intended to harm Magnesium Machine." *Id*. at ¶ 64. Accordingly, the sixth counterclaim is construed as a common law claim for unfair competition based on KLX's allegedly false assertions regarding the plug.

KLX makes the same arguments for dismissal of the sixth counterclaim, so construed, that it makes for dismissal of the fifth counterclaim. For the same reasons that the court rejected KLX's arguments for dismissal of the fifth counterclaim, the court rejects KLX's arguments for dismissal of the sixth counterclaim.

The Seventh Counterclaim:

Request for Injunctive Relief

The seventh counterclaim seeks injunctive relief prohibiting KLX from distributing the Adair Plug as "the KLX plug" or as the "KLX Adair Plug." *Id*. at ¶ 69.

KLX argues that injunctive relief is a remedy and not a standalone cause of action. KLX also argues that injunctive relief depends on a viable underlying claim, that the fifth and sixth counterclaims should be dismissed for reasons already addressed (and rejected), and that the remaining counterclaims do not support the type of injunctive relief sought in the seventh counterclaim.

The court has determined that the fifth and sixth counterclaims will not be dismissed. Accordingly, the central premise of KLX's argument for dismissal or judgment on the pleadings with respect to the seventh counterclaim has been rejected. The motion will be denied with respect to this counterclaim.

The Fourth Counterclaim:

Declaratory Judgment—the Adair Plug "Belongs To" Magnesium Machine

The fourth counterclaim asks the court to review the agreement between Magnesium Machine and KLX,[7] along with the acts of the parties, and declare that "the Adair Plug, all modifications and all improvements 'belong to' Magnesium Machine." *Id*. at ¶ 42.

KLX contends the requested declaration is "hopelessly ambiguous" and "would do almost nothing to settle the controversy or clarify the legal relations at issue." Doc. no. 22, p. 11. KLX also argues that the requested declaration is redundant of relief potentially afforded under other counterclaims.

It is premature to decide what declarations in favor of Magnesium Machine might or might not be appropriate pursuant to the counterclaims. Accordingly, the motion for dismissal or for judgment on the pleadings will be denied with respect to the fourth counterclaim.

Conclusion

After careful consideration, KLX's motion is **DENIED** in all respects save one, which is the sole respect in which the motion is **GRANTED**.

The Fifth Counterclaim. Excluding the exception noted below, the motion is **DENIED** with respect to the fifth counterclaim, which alleges a deceptive trade practice under 78 O.S. 2011 §53(A)(2).

To the extent, if any,[8] that the fifth counterclaim is intended to allege a deceptive trade practice under any subsection of §53(A) other than subsection (2),

---

[7] The agreement is the Distributor Appointment Agreement which Magnesium Machine and KLX allegedly entered into on July 12, 2018. Doc. no. 21, ¶ 1.

[8] Based on Magnesium Machine's response brief, the court does not believe Magnesium Machine intended to allege a deceptive trade practice under any other subsection.

any such claim fails for lack of adequate notice and is **DISMISSED**, without prejudice, under Rule 12(b)(6), Fed. R. Civ. P.  The motion is **GRANTED** to this limited extent only.

The Sixth Counterclaim.  The motion is **DENIED** with respect to the sixth counterclaim, which is construed as a common law claim for unfair competition based on KLX's allegedly false assertions regarding the plug.

The Seventh and Fourth Counterclaims. The motion, which is brought under Rule 12(b)(6) and 12(c) insofar as the challenges to the seventh and fourth counterclaims are concerned, is **DENIED** with respect to these counterclaims.

IT IS SO ORDERED this 27th day of April, 2021.


STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


20-1129p004.docx