## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

KLX ENERGY SERVICES LLC,    )
            )
         Plaintiff,    )
            )
-vs-            )    Case No. CIV-20-1129-F
            )
MAGNESIUM MACHINE, LLC,    )
CORNERSTONE TOOLS, LLC,    )
            )
         Defendants.    )

## <u>ORDER</u>

In a second amended complaint, plaintiff KLX Energy Services LLC (KLX) has alleged various claims against defendants Magnesium Machine, LLC (Mag Machine) and Cornerstone Tools, LLC (Cornerstone). *See*, doc. no. 104. Mag Machine, in answer to that pleading, and denying all claims, has alleged various counterclaims against KLX. *See*, doc. no. 106. All alleged claims and counterclaims are described in the Factual Background section of this order.

After conducting discovery, KLX has moved for partial summary judgment under Rule 56(a), Fed. R. Civ. P., as to two claims alleged against Mag Machine and as to all but one of the counterclaims alleged against it. *See*, doc. no. 149. Mag Machine has also moved for partial summary judgment, under Rule 56(a), as to three of its counterclaims alleged against KLX and all claims alleged against it by KLX. *See*, doc. nos. 121, 147. Additionally, Cornerstone has moved for summary judgment, under Rule 56(a), as to all claims alleged against it by KLX. *See*, doc. no. 146.

Upon review of the parties' submissions with respect to all motions, the court makes its determinations.

## Factual Background

KLX is an oilfield service company based in Texas. It sells specialized tools and equipment to customers engaged in oil and gas exploration and production. One category of specialized products the company sells is dissolvable frac plugs. Drillers use the plugs during fracking operations to temporarily separate pressurized zones within the wellbore. The plugs are made of dissolving metal and rubber, which eliminates the need for conventional plug removal after fracking.

Mag Machine is a company based in Oklahoma that manufactures dissolvable frac plugs. Cornerstone is an Oklahoma company created by Mag Machine's owners to facilitate the sales of Mag Machine's dissolvable frac plugs.

In July of 2018, KLX and Mag Machine entered into a Distributor Appointment Agreement (DAA), in which Mag Machine appointed KLX as its "exclusive distributor" to market, promote, and sell "the dissolvable Adair frac plug product . . . as well as any and all improvements and derivatives related thereto (collectively, the 'Products')," in "the United States and Canada, and the territorial waters thereof (the 'Territory')[.]" Doc. no. 121-1, ECF p. 1, "WHEREAS" clauses of the DAA; and Article 1. One of the "WHEREAS" clauses of the DAA stated that Mag Machine "exclusively and solely owns" the Adair frac plug product (Adair plug).

The DAA provided in pertinent part:

> Distributor [KLX] agrees to maintain appropriate inventory levels of Products to support customers in the Territory and commits to the quarterly minimum order quantities set forth in Exhibit B . . . Should Distributor fail to order such minimum order quantities within 15 days of the end of any calendar quarter and following written notice from Manufacture[r] [Mag Machine] providing

> Distributor with a chance to place a corrective order, this Agreement shall become non-exclusive within the Territory for the duration of the Term . . ., but all other terms and conditions of this Agreement shall remain in effect, except as specifically noted.

Doc. no. 121-1, ECF pp. 1-2, Article 2(b) (emphasis omitted).

Exhibit B of the DAA established the quarterly minimum order quantities of Adair plugs, starting within 10 days of the execution of the contract. It specifically stated that the minimum order quantities for "[e]ach calendar quarter during the term of this Agreement beginning January 1, 2019" was "2,500 units." Doc. no. 121-1, ECF p. 13, subsection 2. Exhibit B also established the product price of "$1,590" per unit.[1] It further established the payment terms as "Initial Order: 50% down payment within 20 days of order. Balance of payment is due upon receipt of Products and Manufacturer's Invoice . . . Additional Payments are due upon receipt of the Products and the Manufacturer's invoice." *Id.*

The DAA additionally contained the following relevant provisions:

> Manufacturer shall refer any potential customer who inquires about the purchase of the Products in the Territory to the Distributor, unless this Agreement becomes non-exclusive as detailed in Article 2(b).

Doc. no. 121-1, ECF p. 2, Article 3(b), Obligations of Manufacturer.

> If Distributor is unable to distribute Products due to infringement of any patent, trademark, and/or intellectual property right in connection with any Product provided to Distributor by Manufacturer hereunder, Manufacturer agrees to repurchase effected [sic] Product at Distributor's cost.

*Id.*, ECF p. 5, Article 8(c), Patents and Patent Infringement.

---

[1] The product price was subject to automatic adjustments for changes in magnesium prices and inflation under procedures specified in Exhibit B.

> Except as set forth in Article 2(b) with regard to Distributor's commitment to purchase quarterly minimum order quantities which sets forth the sole consequence for Distributor's failure to meet such commitments, if at any time either Party shall be in material default hereunder and shall fail to remedy such material default to the reasonable satisfaction of the non-defaulting Party within thirty (30) days following notice from the non-defaulting Party specifying such default, the non-defaulting Party may terminate this Agreement by written notice of termination to the defaulting Party within ten (10) days following the said thirty (30) days.

*Id.*, ECF pp. 5-6, Article 11(b), Duration and Termination.

> Upon expiration or termination of this Agreement, whichever is earlier . . . Distributor may continue the sale of any Products remaining in Distributor's inventory.

*Id.*, ECF p. 6, Article 12, Rights and Obligations Upon Expiration or Termination.

> During the course of the Manufacturer providing Products to Distributor for Distributor's promotion and sale of such Products within and outside the Territory . . . , the Parties hereby recognize that each may be exposed to unpublished items of technical or non-technical information including, but not limited to, materials, equipment, designs, specification, know-how, product uses, processes, blueprints, formulae, costs, financial data, marketing plans and direct selling systems, customer lists and technical and commercial information relating to customers or business projections used by either Party in its business, and any other documents or information that either Party considers to be trade secrets or confidential information (collectively, "Proprietary Information"), whether or not the subject of any patent or patent application, constitute valuable trade secrets or confidential information and are the exclusive property of the Party disclosing such information. Consequently, during the Term of this Agreement . . . and for a period of five (5) years thereafter, neither Party shall disclose to any unauthorized person or

> use in any unauthorized manner the Proprietary
> Information . . . .

*Id.*, ECF p. 6, Article 13(a), Confidentiality.

> The following Articles survive termination or expiration
> of this Agreement: (8) Patents and Patent Infringement,
> (13) Confidentiality; (16) Limitation of Liability, and any
> other terms of this Agreement which by their nature ought
> to survive the expiration or termination of this Agreement.

*Id.*, ECF p. 10, Article 18(f), Miscellaneous Provisions.

In July of 2019, non-party Terves, LLC (Terves) filed a patent infringement lawsuit in the United States District Court for the Northern District of Ohio against Mag Machine's exclusive supplier of magnesium alloys for its dissolvable frac plugs, Ecometal, Inc. (Ecometal). *See*, <u>Terves, LLC v. Yueyang Aerospace New Materials Co. Ltd., et al.</u>, No. 19-CV-1611-DCN (N.D. Ohio). Terves claimed, among other things, that Ecometal's magnesium alloys infringed its patents. The Adair plugs manufactured by Mag Machine for distribution by KLX were made with Ecometal's magnesium alloys.

In October of 2019, KLX received a subpoena from Terves in connection with the litigation. KLX, through counsel, gave notice to Mag Machine of the subpoena and of the right to invoke Article 8(c) of the DAA to require Mag Machine to repurchase the affected Adair plugs. It stated that it expected Mag Machine to repurchase the plugs at KLX's cost, if KLX could not distribute the plugs due to Terves' patent infringement claims. It also requested that the DAA be suspended so that KLX would not be obligated to purchase the quarterly minimum order quantities of 2,500 units pending an investigation of Terves' allegations of patent infringement. Mag Machine did not agree to KLX's request.

During the second quarter of 2020, KLX did not order the minimum quantity of Adair plugs as required by the DAA to maintain the exclusive distributorship.

On July 2, 2020, non-party Jet Oil Tools, LLC (Jet) was formed for the purpose of selling dissolvable frac plugs.

On July 10, 2020, Mag Machine's owners officially formed Cornerstone to facilitate the sale of dissolvable frac plugs.

On July 16, 2020, Mag Machine emailed a "notice" to KLX asserting that KLX had failed to satisfy the minimum order quantities requirement for the second quarter and gave KLX until July 30, 2020 to place "a corrective order consistent with the minimum order quantity terms in the [DAA]," or otherwise "[the DAA] shall become non-exclusive within the Territory for the duration of the Term of [the DAA]." *See,* doc. no. 168, Ex. 2, ECF p. 56.  In the email, Mag Machine assured that KLX that it was "still keeping the Adair dissolving plug for KLX" and was "not marketing this plug to other customers."  Doc. no. 168, Ex. 2, ECF p. 55.

KLX did not place any additional Adair plug orders between July 16, 2020 and July 30, 2020 to maintain its exclusive distributorship.  The DAA became non-exclusive as of July 31, 2020, but as provided by the DAA, all other terms and conditions remained in effect.

During the exclusivity period of the DAA, Mag Machine did not sell the "GW" plug and the "Grip Slip" plug to KLX and did not refer potential customers for the purchase of the "GW" plug and the "Grip Slip" plug to KLX.

Throughout the course of KLX and Mag Machine's relationship, KLX imparted confidential information to Mag Machine including:  (1) recommendations by KLX engineers regarding modifications of the plug design; (2) identities of KLX customers and prospective customers, including confidential operations data; (3) KLX customer lists, sales forecasts and plug run history; (4) KLX in-house test data and engineering reports; (5) KLX pricing data and cost structure; (6) plug testing/operational procedures and literature; (7) KLX customer plug failure reports and technical feedback; (8) setting tool kit designs and information regarding

6

make-up/shear tolerance, and (9) technical specifications and information pertaining to required plug sizes and weight ranges.

Pursuant to the DAA, KLX continued to purchase the Adair plugs and components from Mag Machine until October 2020.  Between August 28, 2020 and October 26, 2020, KLX received from Mag Machine invoices seeking payment of Adair plugs, totaling $416,900.00.  KLX did not pay any of those invoices.

This action was commenced in November of 2020.  KLX alleged in its complaint that Mag Machine was secretly selling dissolvable frac plugs, which incorporated design enhancements by KLX's engineers, to KLX's own customers, at a substantial discount and driving business away from the company.  KLX claimed that Mag Machine's conduct not only violated the DAA but amounted to a misappropriation of its confidential information or trade secrets.

Subsequently, in October of 2021, KLX filed a first amended complaint, adding Cornerstone as a defendant.  KLX claimed it learned that Mag Machine was using Cornerstone to directly or indirectly sell dissolvable frac plugs, which incorporated design enhancements recommended by KLX's engineers, to KLX's own customers.  KLX specifically alleged that one of KLX's existing customers stopped purchasing plugs from KLX and instead purchased the plugs from Jet.  The customer reported that the plugs were shipped to the customer in a box indicating they were manufactured by Cornerstone and that the sales representative told the customer the plug was the same as that sold by KLX.

In April of 2022, the Ohio district court granted summary judgment in favor of Terves, finding that Ecometal's magnesium alloys infringed Terves' patents.  *See*, Terves, LLC v. Yueyang Aerospace New Materials Co. Ltd., et al., No. 19-CV-1611-DCN, 2022 WL 1092658, at *8 (N.D. Ohio Apr. 12, 2022).  Following a jury trial on the issues of damages and willfulness and a damages award, the court entered final judgment in favor of Terves.  *Id.*, 2022 WL 2990877 (N.D. Ohio

Apr. 28, 2022). Subsequently, in July of 2022, the court entered a permanent injunction barring Ecometal from selling the infringing materials. Because Mag Machine was Ecometal's sole customer, the court also enjoined Mag Machine from purchasing new infringing materials from Ecometal.

On July 29, 2022, KLX invoked Article 8(c) of the DAA and requested Mag Machine repurchase the plugs made with the infringing magnesium alloys.

On August 4, 2022, Mag Machine refused to repurchase the plugs on the ground that the Ohio district court's permanent injunction did not prevent the infringing materials already in the possession of Mag Machine or its distributor from being sold. It only prevented any future purchase of the infringing materials from Ecometal.

With leave of court, KLX filed a second amended complaint on September 27, 2022, including a breach of contract claim for Mag Machine's failure to repurchase the plugs.

In November of 2022, the Ohio district court entered an order denying a motion by Terves to enforce the permanent injunction to prevent Mag Machine from selling products it made using infringing materials purchased prior to the trial of the case. In so doing, the court stated in part: "The Order in this case does not enjoin [Mag Machine] from selling products made from infringing product it purchased prior to the trial in this case, therefore, even if it is selling such products it has not violated the injunction." Doc. no. 121-6, p. 2. On November 18, 2022, Mag Machine provided KLX a copy of the Ohio district court's order and requested KLX to dismiss its newly alleged breach of contract claim. KLX did not dismiss the claim.

On February 9, 2023, Terves filed suit against Mag Machine in this district for infringement of its patents, Terves, LLC v. Magnesium Machine, LLC, Case No. CIV-23-133-PRW. That action remains pending.

In the second amended complaint, which is the operative complaint, KLX has alleged the following claims:

- Breach of contract (the DAA) against Mag Machine by allegedly using KLX's confidential information, without consent, to market and sell dissolvable frac plugs to KLX's own customers, by allegedly conveying KLX's confidential information to Cornerstone, Jet, and other third parties to steal business from KLX, by allegedly representing that it exclusively and solely owned the Adair plug, and by allegedly selling the plug to third parties during the exclusivity period (Count One)

- Tortious inference with prospective economic advantage against Mag Machine and Cornerstone by allegedly soliciting, inducing, recruiting, facilitating, and encouraging the sale of dissolvable frac plugs to KLX's own customers, using KLX's confidential information, causing KLX's customers to cease doing business with KLX (Count Two)

- Misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, against Mag Machine and Cornerstone by allegedly misappropriating technical, financial, marketing, and strategic information related to KLX's business in connection with the development, manufacture, and sale of the plugs (Count Three)

- Misappropriation of confidential business information against Mag Machine and Cornerstone by allegedly misappropriating confidential business information for the purpose of wrongfully competing with KLX (Count Four)

- Violation of the Oklahoma Deceptive Trade Practices Act, 78 O.S. § 53, against Cornerstone by allegedly making false representations to KLX's own customers and other third parties that it was the manufacturer of the plugs and they were the same as the plugs sold by KLX (Count Five)

- Unjust enrichment against Mag Machine and Cornerstone by allegedly unjustly enriching themselves by using KLX's confidential information to sell products to KLX's own customers (Count Six)

- Breach of contract (the DAA) against Mag Machine by allegedly failing to repurchase the plugs made of materials infringing Terves' patents (Count Seven)

In answer to the second amended complaint denying KLX's claims, Mag Machine has alleged against KLX the following counterclaims:

- Breach of contract (the DAA) by allegedly failing to order the required quarterly minimum quantities of the Adair plugs in the second quarter of 2020 (Counterclaim No. 1)

- Breach of contract (the DAA) by allegedly failing to pay for the Adair plugs invoiced between August 28, 2020 and October 26, 2020, totaling $416,900.00 (Counterclaim No. 2)

- Declaratory judgment that the DAA became non-exclusive upon KLX's failure to cure its breach of the DAA by not complying with the quarterly minimum order, even after receiving written notice from Mag Machine (Counterclaim No. 3)

- Declaratory judgment that the Adair plug, all modifications and all improvements "belong to" Mag Machine (Counterclaim No. 4)

- Violation of the Oklahoma Deceptive Trade Practices Act (78 O.S. § 53) by allegedly making false and misleading statements about its role in the design, creation, manufacture, source, modification and improvement of the Adair plug (Counterclaim No. 5)

- Deceptive trade practices under Oklahoma common law by allegedly making false assertions that any modifications or improvements of the Adair plug "belong to" KLX (Counterclaim No. 6)

- Injunction prohibiting KLX from distributing the Adair plug as "KLX's Adair Plug" (Counterclaim No. 7)

<u>Legal Standard</u>

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. The court reviews the record and draws all reasonable inferences in the light most favorable to the non-moving party. <u>Rocky Mt. Wild, Inc. v. U.S. Forest Serv.</u>, 56 F.4th 913, 921 (10th Cir. 2002). When the parties file cross motions for summary judgment on a claim or counterclaim, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." <u>Atlantic Richfield Co. v. Farm Credit Bank of Wichita</u>, 226 F.3d 1138, 1148 (10th Cir. 2000); <i>see also</i>, <u>Buell Cabinet Co. v. Sudduth</u>, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

KLX alleges breach of contract claims (Count One and Count Seven) against Mag Machine, and Mag Machine alleges breach of contract counterclaims (Counterclaim No. 1 and Counterclaim No. 2) against KLX. The contract upon which the claims and counterclaims are predicated–the DAA–provides that it "shall be governed by the laws of the State of Oklahoma, without regard to choice of law provisions or to which Party drafted particular provisions of this Agreement." Doc. no. 121-1, ECF p. 10, Article 19. In addition, the parties do not dispute that Oklahoma law governs KLX's claims for tortious interference with prospective economic advantage (Count Two), misappropriation of confidential business information (Count Four) and unjust enrichment (Count Six) and Mag Machine's counterclaim for unfair competition (Counterclaim No. 6). The court sees no reason to apply any other law to those claims.

The remaining two claims of KLX are a deceptive trade practices claim alleged under Oklahoma statutory law, 78 O.S. § 53 (Count Five), and a misappropriation of trade secrets alleged under federal statutory law, 18 U.S.C. § 1836, *et seq*. (Count Three).  The remaining counterclaims of Mag Machine are claims for declaratory judgment under the federal Declaratory Judgment Act (Counterclaim No. 3 and Counterclaim No. 4), a deceptive trade practices claim under Oklahoma statutory law, 78 O.S. § 53 (Counterclaim No. 5), and a request for injunctive relief (Counterclaim No. 7).

Discussion

I.      KLX's Claims Against Mag Machine

  A.      Breach of Contract – Count One

KLX seeks summary judgment on its claim that Mag Machine breached the DAA by selling dissolvable frac plugs, specifically, the "GW" and the "Grip Slip" plugs, to third parties during the exclusivity period of the DAA.

Mag Machine seeks summary judgment on KLX's claim that Mag Machine breached the DAA by conveying KLX's confidential information to third parties.

*Selling the GW and Grip Slip plugs to third parties during exclusivity period*

KLX asserts that the DAA's exclusive distributorship provision applied not only to the Adair plug itself, but also to any "derivatives" of the Adair plug. According to KLX, Mag Machine's "GW" and "Grip Slip" plugs were derived directly from the Adair plug. Because Mag Machine admittedly sold those plugs to customers other than KLX during the exclusivity period, KLX claims that Mag Machine breached the DAA.

The DAA does not define the term "derivatives," which is used as a noun in the document.  *See*, 121-1, ECF p. 1, first Whereas clause and Article 1 (Mag Machine sells "the dissolvable Adair frac plug product . . . as well as any and all improvements and *derivatives* related thereto (collectively, the 'Products') . . . [and]

[Mag Machine] hereby appoints [KLX] as its exclusive distributor of the Products[.]") (emphasis added).   Language in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept.  *See*, Osprey L.L.C. v. Kelly-Moore Paint Co. Inc., 984 P.2d 194, 198 (Okla. 1999).  Although Mag Machine suggests in briefing that the "derivatives" term is a technical term, it provides no authority to support its suggestion.  The court concludes that the term should be given its plain and ordinary meaning.  The Oklahoma Supreme Court has relied upon dictionary definitions to provide common, ordinary usage of terms.  *See*, Cherokee Nation v. Lexington Insurance Company, 521 P.3d 1261, 1267 (Okla. 2022).  The court finds dictionary definitions are helpful here.  Black's Law Dictionary defines the noun "derivative" as "Something that has developed from or been produced from something else." Black's Law Dictionary (11th ed. 2019).  The Merriam-Webster Dictionary defines the noun "derivative" as "something derived" and defines "derive" as "to take, receive, or obtain especially from a specified source."  Merriam-Webster Dictionary, https://www.merriam-webster.com.   The Oxford English Dictionary defines the noun "derivative" as "Of derived character or nature; characterized by being derived, drawn, obtained, or deduced from another; coming or emanating from a source." Oxford English Dictionary, https://www.oed.com.

Synthesizing these definitions, the court concludes that the term "derivatives" in the DAA means something developed or produced from, obtained from, or which came or emanated from the Adair plug.  The court concludes that the "derivatives" term is not ambiguous.  Nevertheless, the court, viewing the record and drawing all reasonable inferences in a light most favorable to Mag Machine, the non-moving party, concludes that Mag Machine has proffered sufficient evidence to raise a genuine issue of material fact as to whether the "GW" and the "Grip Slip" plugs were developed or produced from, obtained from, or came or emanated from the

Adair plug.  The court therefore concludes that KLX is not entitled to summary judgment on its breach of contract claim in Count One that Mag Machine breached the DAA by selling the "GW" and "Grip Slip" plugs to third parties during the exclusivity period of the DAA.

*Conveying confidential information to third parties*

Mag Machine asserts that it is entitled to summary judgment on KLX's claim that it breached the DAA by conveying KLX's confidential information to third parties.  According to Mag Machine, KLX has alleged as part of its breach of contract claim that Mag Machine conveyed, disclosed, or transferred KLX's confidential information, without KLX's consent, to third-parties for the purpose of stealing business away from KLX.  Mag Machine contends that, during discovery, KLX has not articulated a single occurrence of any alleged conveyance, disclosure, or transfer by Mag Machine to any third party.  Therefore, Mag Machine argues that it is entitled to summary judgment on KLX's breach of contract claim to the extent it relies upon any alleged disclosures of KLX's confidential information to third parties.

Viewing the record and drawing all reasonable inferences in a light most favorable to KLX, the non-moving party, the court concludes that a genuine issue of material fact exists as to whether Mag Machine conveyed or disclosed confidential information to a third party, namely Jet, for its distribution of dissolvable frac plugs. Consequently, the court concludes that Mag Machine is not entitled to summary judgment on KLX's breach of contract claim in Count One to the extent it alleges that Mag Machine breached the DAA by conveying KLX's confidential information to third parties.[2]

---

[2] In briefing, KLX notes that its breach of contract claim alleges that in addition to conveying KLX's confidential information, Mag Machine used KLX's confidential information in violation

B.    Breach of Contract – Count Seven

KLX and Mag Machine both seek summary judgment on KLX's claim that Mag Machine breached the DAA, specifically Article 8(c), by failing to repurchase the Adair plugs that were manufactured with dissolvable magnesium alloys which infringe Terves' patents.  Mag Machine posits that it was not required to repurchase the plugs because the Ohio district court made clear that any product Mag Machine manufactured from infringing materials purchased prior to the trial of the case may be sold.  Mag Machine asserts that the Adair plugs at issue for KLX's claim had been sold by Mag Machine to KLX prior to the trial of the Ohio district court case.  As such, Mag Machine contends that KLX is free to sell all Adair plugs and related components in its inventory.  Because KLX is not "unable to distribute" the Adair plugs due to patent infringement, Mag Machine maintains it has no obligation to repurchase the plugs under Article 8(c) of the DAA.

KLX argues that its breach of contract claim is not based on whether the Ohio district court's permanent injunction applies to it.  Instead, the claim, KLX asserts, is premised on the fact that the Ohio district court specifically found that the dissolvable magnesium alloys used in the Adair plugs infringe Terves' patents.  Because the Adair plugs sold to KLX *infringe* Terves' patents (regardless of the coverage of the injunction), KLX maintains that it cannot legally distribute the plugs.  According to KLX, the sale of the plugs, knowing they infringe Terves' patents, would subject it to the risk of substantial patent damages, including treble damages and attorney's fees.   KLX contends that Mag Machine's refusal to repurchase the Adair plugs breached the DAA, specifically, Article 8(c), and it is entitled to summary judgment in favor on its breach of contract claim.

_____

of the DAA.  Mag Machine's motion does not address the breach of contract claim based on its alleged use of confidential information.

Upon review, the court concludes that summary judgment is not appropriate on KLX's breach of contract claim. While the Ohio district court has determined that its permanent injunction does not preclude Mag Machine from selling products that it purchased from Ecometal prior to the judgment in that case, the ruling does not preclude Terves from suing KLX for patent infringement if KLX sells the Adair plugs containing infringing materials. However, Article 8(c) of the DAA provides that if KLX "is unable to distribute" the Adair plugs "due to infringement of any patent," Mag Machine "agrees to repurchase effected Product at [KLX's] cost." Doc. no. 121-1, ECF p. 5. Although the record indicates that Terves issued a subpoena to KLX in relation to the Ohio district court case, it is not clear that Terves would sue KLX if it distributed any of the Adair plugs that have infringing materials. The record indicates that KLX has a business relationship with Terves. *See*, doc. no. 147-9, ECF p. 5, Response to Interrogatory No. 22 ("[T]he following entities manufactured dissolvable frac plugs distributed by KLX from July 2020 to the present: Magnesium Machine and Terves, Inc."). While KLX argues that a "'mere shadow of a cloud is enough to darken title sufficiently to demand a remedy by the party who warranted said title,'" *see*, doc. no. 167, ECF p. 7 (quoting Caitlin Aviation Co. v. Equilease Corp., 626 P.2d 857, 860 (Okla. 1981)), the court is not convinced that Article 8(c) is a warranty of title by Mag Machine. Further, the plain language of Article 8(c) requires that KLX be "unable to distribute" the Adair plugs to trigger Mag Machine's obligation to repurchase the Adair plugs at KLX's cost. The court notes that the DAA allows KLX to sell any Adair plugs remaining in its inventory even though the DAA has expired. And despite KLX's arguments, the court concludes that the record is not sufficient for the court to find as a matter of law that KLX is "unable to distribute" the Adair plugs in its inventory. Nor is it sufficient, in the court's view, to enable the court to conclude as a matter of law that KLX is, in fact, able to distribute the Adair plugs. Thus, the court concludes that

the motions for summary judgment of both KLX and Mag Machine, on the breach of contract claim alleged in Count Seven, must be denied.

      C.    <u>Tort and Statutory Claims – Counts Two, Three, Four, and Six</u>

Mag Machine seeks summary judgment on KLX's claims for tortious interference with prospective economic advantage, misappropriation of trade secrets under the Defend Trade Secrets Act, misappropriation of confidential business information and unjust enrichment on the ground that KLX cannot articulate a single occurrence where Mag Machine conveyed confidential information to third parties for the purpose of stealing business from KLX.

Viewing the record, with all reasonable inferences, in a light most favorable to KLX, the non-moving party, the court concludes that KLX has proffered evidence sufficient to raise a genuine issue of material fact as to whether Mag Machine conveyed KLX's confidential information to third parties, namely, Jet, for the purpose of stealing business from KLX.  The court therefore concludes that Mag Machine is not entitled to summary judgment with respect to the claims alleged in Counts Two, Three, Four, and Six.

II.    <u>Mag Machine's Counterclaims Against KLX</u>

      A.    <u>Breach of Contract – Counterclaims No. 1 and No. 2</u>

*Non-compliance with quarterly minimum order*

KLX and Mag Machine move for summary judgment on Mag Machine's counterclaim alleging that KLX breached the DAA by not fulfilling the minimum order quantity requirement for the second quarter of 2020.  Under the DAA, the quarterly minimum order quantity obligation, beginning January 1, 2019, was 2,500 units (plugs).  *See*, doc. no. 121-1, Article 2(b), and Exhibit B, ¶ 2.  According to Mag Machine, it has suffered damages in the amount of $2,032,320.00 due to KLX's failure to order, and pay for, the minimum quantity of plugs.

KLX does not dispute that it failed to order the minimum quantity of Adair plugs for the second quarter of 2020.  It contends, however, that Mag Machine cannot establish either a breach of the DAA or any damages due to KLX's failure. KLX asserts that the DAA does not actually require it to purchase a minimum quantity of plugs.  KLX asserts that Article 2(b) of the DAA only states that should KLX fail to purchase the specified minimum quantity, the DAA becomes non-exclusive.  And it contends that Article 11(b) of the DAA clarifies that the loss of exclusivity is the "sole consequence" of KLX's failure to purchase the quarterly minimum order of plugs.

Mag Machine argues that non-exclusivity is not the sole remedy for KLX's failure to meet its commitment to purchase the minimum quantity of plugs.  It points out that Article 11 only addresses the duration and termination of the DAA.  Mag Machine contends that Article 11(b)'s use of the term "sole consequence" is merely to clarify that KLX's failure to purchase the quarterly minimum quantity does not result in the termination of the DAA.  Mag Machine maintains that Article 11(b) does not bar other available remedies for KLX's breach of the DAA due to a failure to purchase the quarterly minimum quantity of plugs.  Further, Mag Machine argues that while it seeks lost profits as its remedy, those lost profits constitute direct damages rather than consequential damages which would be precluded by the limitation of liability provision of Article 16.

In May v. Mid-Century Ins. Co., 151 P.3d 132, 140 (Okla. 2006), the Oklahoma Supreme Court stated:

> The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made.  In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning.  Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect.  A

> contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.

*Id*. at 140 (footnotes omitted).

Giving the terms of Article 2(b) of the DAA, set forth in the Factual Background section, their plain and ordinary meaning, the court concludes that it was the parties' intent that KLX was to be "commit[ted]" to the quarterly minimum order quantities set forth in Exhibit B which, beginning in January 2019, was 2,500 units. However, the court also concludes that it was the parties' intent that should KLX fail to order such minimum order quantities within "15 days of the end of *any* calendar quarter and following written notice from [Mag Machine] providing [KLX] with a chance to place a corrective order," the DAA "shall become non-exclusive within the Territory *for the duration of the Term* . . . but all other terms and conditions of this [DAA] remain in effect, except as specifically noted." Doc. no. 121-1, Article 2(b) (emphasis added). Thus, if KLX failed to satisfy its minimum quantity commitment for any calendar quarter, it would lose the exclusivity of its distributorship for the duration of the "Term" of the DAA.[3] Neither Article 2(b) nor any other provision of the DAA indicate that the parties intended that Mag Machine would be entitled to recover damages in the form of lost profits against KLX should it fail to order less than the minimum quantity of plugs for any calendar quarter.[4] Article 11(b) confirms that the parties intended that the "sole consequence" for KLX's failure to meet its commitment to order the minimum quantity of plugs was

---

[3] The "Term" was a period of three years from the effective date of the DAA. See, doc. no. 121-1 Article 11(a).

[4] Exhibit B describes the payment terms for the plugs. Under those terms, KLX was only required to pay Mag Machine "upon receipt of the Products and [Mag Machine's] invoice." Doc. no. 121-1, Exhibit B, ¶ 3.

that set forth in Article 2(b), specifically, the DAA becomes non-exclusive for the duration of the DAA's Term.[5] *See,* <u>Public Service Co. of Oklahoma v. State ex rel. Oklahoma Corp. Com'n</u>, 115 P.3d 861, 875 (2005); <u>Pan Mut. Royalties, Inc. v. McElhiney</u>, 376 P.2d 232, 235 (Okla. 1962) (parties may agree to an exclusive remedy for breach, which if reasonable will be enforced and will exclude other remedies).   Based on the clear and unambiguous language of the DAA, the court concludes that Mag Machine cannot recover damages against KLX for its failure to order the minimum quantity of Adair plugs in the second quarter of 2020.[6]  The court therefore concludes that KLX is entitled to summary judgment on Mag Machine's counterclaim, specifically, Counterclaim No. 1.[7]

*Failure to Pay for Plugs*

As one of its counterclaims, Mag Machine additionally alleges that KLX breached the DAA by failing to pay for plug units that were ordered and that Mag Machine invoiced between August 25, 2020 and October 26, 2020.  The total amount invoiced, Mag Machine alleges, is $416,900.00.  Mag Machine contends that it is entitled to summary judgment on its counterclaim for failure to pay because KLX has admitted receiving the invoices and failing to pay them.

KLX, in response, asserts that Mag Machine has failed to demonstrate any breach of the DAA because it has not established that KLX ever received the plugs

---

[5] The court rejects Mag Machine's interpretation of the DAA.  The court notes that Article 11(b) does not use the term "solely" as argued by Mag Machine.  Rather, it uses the phrase "sole consequence."  Article 11(b) makes clear, in the court's view, that in the event KLX did not order the minimum quantity in any calendar quarter, the DAA became non-exclusive.

[6] As stated, the court relies here on the clear and unambiguous language of the DAA.  But the court also notes that the agreement on non-exclusivity as the "sole consequence" fits perfectly with what the parties had to offer each other and with the parties' respective motives and incentives for entering into the DAA in the first place.

[7] In light of the court's ruling, the court need not address KLX's argument that Mag Machine failed to establish any damages with respect to this counterclaim.

that were invoiced.  The DAA, KLX points out, requires payment upon receipt of plug units and Mag Machine's invoice.  In any event, KLX argues that it has asserted several affirmative defenses to Mag Machine's counterclaim for failure to pay and that Mag Machine has failed to establish the absence of a genuine issue of material fact as to those affirmative defenses.

Upon review, the court concludes that Mag Machine is not entitled to summary judgment on its counterclaim, specifically, Counterclaim No. 2.  The court concludes that Mag Machine has not established that it is entitled to judgment as a matter of law on the counterclaim as it has not proffered evidence of KLX's receipt of the plugs invoiced.  *See*, doc. no. 121-1, Ex. B, ECF p. 13 (payment is due "upon receipt of" the "Products" and "[Mag Machine's] invoice").  Further, it has not proffered evidence to establish an absence of a genuine issue of material fact as to KLX's alleged affirmative defenses to the counterclaim.  *See*, United Missouri Bank of Kansas City, N.A. v. Gagel, 815 F. Supp. 387, 391 (D. Kan. 1993) ("[T]he plaintiff must show the absence of a genuine issue of material fact as to those affirmative defenses which have been preserved for trial by defendant. . . .").

B.    Declaratory Judgment – Counterclaims No. 3 and No. 4

*DAA is non-exclusive*

Mag Machine and KLX seek summary judgment on Mag Machine's declaratory judgment counterclaim asserting that under Article 2(b) of the DAA, the DAA became non-exclusive when KLX failed to order the minimum quantities of plugs, 2,500 units, for the second quarter of 2020 and refused to submit a corrective order by July 30, 2020, upon Mag Machine's written notice.  In essence, Mag Machine's counterclaim seeks a declaratory judgment that the DAA was non-exclusive on July 31, 2020.

KLX argues that entry of the requested declaratory judgment is inappropriate because there is no justiciable controversy between the parties.  Specifically, KLX

asserts that it does not dispute that it failed to order the minimum quantity of plugs for the second quarter of 2020, that it did not submit any corrective order by July 30, 2020 and the DAA became non-exclusive as of July 31, 2020.

The federal Declaratory Judgment Act provides in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Tenth Circuit has explained that "this text presents two separate hurdles for parties seeking a declaratory judgment to overcome." Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1240 (10th Cir. 2008). "First, a declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement." Id. "Second, even where a constitutionally cognizable controversy exists, the Act stipulates only that district courts 'may'—not 'must'—make a declaration on the merits of that controversy" and "district courts are entitled to consider a number of case-specific factors in deciding whether or not to exercise their statutory declaratory judgment authority." Id.[8]

Here, the question is whether Mag Machine presents the court with an actual controversy as to Counterclaim No. 3, thereby overcoming the first hurdle. According to the Tenth Circuit, an actual controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the

_____

[8] The case-specific factors include (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata;" (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and whether there is an alternative remedy which is better and more effective. Surefoot LC, 531 F.3d at 1248.

parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372, 1376 (10th Cir. 2011) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)) (emphasis in original).

Based on the record, the court concludes an actual controversy does not exist with respect to Mag Machine's counterclaim. The counterclaim essentially requests the court's entry of a judgment declaring that the DAA was non-exclusive starting July 31, 2020. In its papers, KLX does not dispute that the DAA became non-exclusive as of July 31, 2020. The Tenth Circuit has determined that the presence of an actual controversy must be measured at the time the court acts. Columbian Fin. Corp., 650 F.3d at 1381. "It is not enough that there may have been a controversy when the action was commenced if subsequent events have put an end to the controversy, or if the opposing party disclaims the assertion of countervailing rights." *Id*. at 1381-1382 (quotation omitted). Here, in its papers, KLX agrees that the DAA became non-exclusive as of July 31, 2020. As a result, the court concludes that there is no actual controversy to be resolved with respect to Mag Machine's declaratory judgment counterclaim. The court therefore concludes that KLX is entitled to summary judgment as to the counterclaim, specifically, Counterclaim No. 3, and that counterclaim will be dismissed without prejudice for lack of jurisdiction, owing to mootness.

*Adair plug, all modifications, and all improvements "belong to" Mag Machine*

Additionally, as one of its counterclaims, Mag Machine seeks a declaratory judgment that the "Adair Plug, all modifications, and all improvements 'belong to' Magnesium Machine." *See*, doc. no. 106, ¶ 43. KLX moves for summary judgment on the counterclaim, arguing (1) Mag Machine has not satisfied the requirements for the requested declaratory relief; and (2) Mag Machine has not articulated any

protectible property or contractual interest in the Adair plug and there is no evidence to support any such interest.

Upon review, the court concludes that KLX is entitled to summary judgment with respect to Mag Machine's counterclaim.  The court again finds that Mag Machine has failed to establish an actual controversy requiring the requested declaration.  The counterclaim, as pled, requests the court "to review the [DAA], the acts of the parties, and declare that the Adair plug and all modifications and all improvements 'belong to' [Mag Machine]."  Doc. no. 106, ¶ 43.  In the alleged counterclaim, Mag Machine relies upon provisions of the DAA wherein KLX "agreed it had the right to use [Mag Machine's] trademarks during the terms of the [DAA]," and wherein KLX "agreed it did not have any right or license to use [Mag Machine's] present or future patents."  *See*, doc. no. 106, p. 18, ¶¶11, 12; p. 22, ¶42.  But there is no record evidence that Mag Machine had any patents or trademarks in connection with the Adair plug, any modifications, or any improvements.  Thus, there is no justiciable question concerning ownership of the Adair plug, modifications, and improvements based on any patent or trademark.  Mag Machine, in briefing, seeks to broaden the counterclaim by asserting that it owns the Adair plug and all modifications and all improvements based on trade secrets and confidential information recognized under the DAA as well as under the Mutual Nondisclosure Agreement (NDA) executed by the parties prior to the DAA.  The NDA, the court notes, is not mentioned in the facts common to Mag Machine's counterclaims or in the counterclaim itself.[9]  Mag Machine also relies on language in the first "WHEREAS" clause of the DAA stating that Mag Machine "exclusively

---

[9] Mag Machine previously filed a motion seeking leave to file its Second Amended Counterclaims to add a breach of contract counterclaim against KLX for reverse-engineering the Adair plug in violation of the DAA and the NDA.  The court denied the motion based upon failure to satisfy the requirements of Rule 16(b) and 15(a), Fed. R. Civ. P.  *See*, doc. no. 188.

and solely owns" the Products.  Doc. no. 121-1, ECF p. 1. The court, however, declines–in this three year-old case–to construe the counterclaim as including these new allegations and declines to allow Mag Machine through briefing to amend its counterclaim to seek a declaration of ownership of the Adair plug, all modifications, and all improvements based on the alleged trade secrets and confidential information belonging to Mag Machine or based on the language in the "WHEREAS" clause of the DAA.  Because Mag Machine has failed to establish an actual controversy based the counterclaim as pled, the court will dismiss Counterclaim No. 4 without prejudice for lack of jurisdiction.

      C.    <u>Deceptive Trade Practices – Counterclaims No. 5 and No. 6</u>

*Statutory Deceptive Trade Practices*

Mag Machine asserts as one of its counterclaims that KLX violated section 53 of the Oklahoma Deceptive Trade Practices Act (ODTPA), 78 O.S. § 51, *et seq*., by making false or misleading statements about its role in the design, creation, manufacture, source, modification, and improvement of the Adair plug.[10]   KLX seeks summary judgment on Mag Machine's counterclaim, arguing that it fails as a matter of law and fails for lack of proof.  With respect to the former, KLX asserts that the ODTPA protects "competing business interests," *see*, doc. no. 149, ECF p. 35, and Mag Machine's corporate representative admitted in deposition that KLX was not a direct competitor.  Instead, Mag Machine is a manufacturer and KLX is a distributor of dissolvable frac plugs.  In addition, KLX asserts that ODTPA does not reach extra-territorial conduct and Mag Machine has no evidence of any in-state deceptive conduct by KLX.  With respect to the latter, KLX contends that Mag

---

[10]  The court previously determined that Mag Machine's Counterclaim No. 5 was based on subsection 2 of 78 O.S. § 53(A).  *See*, doc. no. 25, ECF pp. 5 and 9.  Subsection (2) of § 53(A) makes it a deceptive trade practice to, in the course of business, "[k]nowingly make[] a false representation as to the source . . . of goods or services."

Machine's counterclaim fails for lack of proof because there is no admissible evidence of deceptive statements by KLX regarding being the designer or owner of any frac plug design.  KLX points out that there is no admissible evidence that it ever attempted to market any frac plug using the "Adair" or "Magnesium Machine" names.  Further, KLX asserts that Mag Machine's counterclaim fails for lack of proof because there is no competent evidence of damages.

Mag Machine, in response, argues that KLX has previously posited in this litigation that it is a direct competitor of Mag Machine.  The company also asserts that its corporate representative clarified in deposition that Jet, Mag Machine's plug distributor, and KLX are direct competitors.  Mag Machine asserts that it clearly has a competing business interest with KLX since KLX is in direct competition with its distributor.   As to in-state conduct, Mag Machine asserts that KLX has five Oklahoma locations, has a website that promotes products to Oklahoma consumers or those conducting operations in Oklahoma, and has harmed an Oklahoma business with its conduct.  With respect to proof of deceptive statements, Mag Machine argues that KLX, through its website, has "portray[ed] Mag Machine's Adair plug as the KLX plug." Doc. no. 165, ECF p. 29.  According to Mag Machine, the evidence reveals that KLX "hired a new manufacturer to make a plug that 'look[s] the same' as Mag Machine's Adair plug." *Id*.  On the issue of proof of damages, Mag Machine asserts that it is not required to prove actual damages since it also seeks equitable relief in the form of an injunction.  However, it argues that it has suffered actual damages in the form of lost sales to customers due to KLX's conduct.

In reply, KLX suggests that Mag Machine's assertion that KLX's plug looks the same as the Adair plug "seems to be in the vein of a *reverse passing off* theory." *See*, doc. no. 180, ECF p. 7.  Thus, KLX states that Mag Machine's theory seems to be that "by designing a plug that looks similar to the Adair plug's unpatented physical properties, KLX is implicitly representing to customers that KLX created

the *concepts* underlying those physical properties." *Id*.  However, KLX contends that this theory fails as a matter of law because there is no reverse passing off claim of "*ideas"* since the "origin" of goods refers only to the manufacturer or producer of the physical goods made available to the public.

Upon review, the court concludes that KLX is entitled to summary judgment on the ODTPA counterclaim.  The court concludes that Mag Machine has failed to proffer evidence sufficient to demonstrate an act by KLX constituting a deceptive trade practice under § 53(A)(2).  The court agrees with KLX that Mag Machine's deceptive trade practice counterclaim appears to be in the vein of a reverse passing off claim.  As stated by the Supreme Court in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 27, n. 1 (2003):  "Passing off (or palming off as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's.  'Reverse passing off,' as its name implies, is the opposite:  The producer misrepresents someone else's goods or services as his own.") (citation omitted).  Here, Mag Machine posits that by marketing and selling the KLX plug on its website that "look[s] the same" as the Adair plug, KLX is making a false or misleading representation as to the origin or source of the plug (i.e., that the KLX plug originated with KLX when in fact it originated with Mag Machine's Adair plug).

The court concludes that Mag Machine's reverse passing off theory turns on the same analysis as a claim under section 43(a) of the Lanham Act based on a reverse passing off theory.[11]  *See*, Kimray, Inc. v. Norriseal-Wellmark, Inc., No. 16-cv-1167-D, 2017 WL 1906941, at *4 (W.D. Okla. May 8, 2017) ("A claim under

---

[11] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) prohibits, among other things the use of any false designation of origin in connection with goods or services which is likely to cause confusion as to the origin of a person's goods or services.  One type of conduct constituting a false designation of origin is reverse passing off.

§ 53(A) is treated analogously to Kimray's Lanham Act claims and governed by the same standard.") (citing <u>Brunswick Corp. v. Spinit Reel Co.</u>, 832 F.2d 513, 527 (10th Cir. 1987)).  And in light of the Supreme Court's opinion in <u>Dastar</u>, the court concludes that Mag Machine's reverse passing theory fails.  "In <u>Dastar</u>, the Supreme Court explained that the term 'origin' in section 43 'refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.'"  <u>OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.</u>, 897 F.3d 1008, 1016 (9th Cir. 2018) (quoting <u>Dastar</u>, 539 U.S. at 37[12]).  As a result, "a reverse passing off claim cannot be brought to prevent the copying of intellectual property." <u>Id</u>.; *see also*, <u>Kehoe Component Sales Inc. v. Best Lighting Products, Inc.</u>, 796 F.3d 576, 589 (6th Cir. 2015) ("Because 'the person or entity that originated the ideas' embodied in a good or service is not the 'origin' of the good or service for purposes of § 43(a), a manufacturer does not falsely designate a product's origin under the Lanham Act if it makes an exact replica of someone else's item and labels the item as its own.") (quoting <u>Dastar</u>, 539 U.S. at 32); <u>National Business Development Services, Inc. v. American Credit Educ. and Consulting Inc.</u>, 299 Fed. Appx. 509, 511 (6th Cir. 2008) ("[T]aking tangible goods and reselling them as your own constitutes a Lanham Act violation; taking the intellectual property contained in those goods and incorporating it into your own goods does not.").

Mag Machine does not proffer evidence that KLX has passed off its plug as the Adair plug or Mag Machine's plug.  Instead, it proffers evidence that KLX, through reverse engineering of Mag Machine's plug's design, made a plug which looks the same as the Adair plug and has promoted that plug on the website as the

---

[12] Although "the most natural understanding of the 'origin' of 'goods'–the source of wares–is the producer of the tangible product," origin may also encompass "the trademark owner who commissioned or assumed responsibility for ('stood behind') production of the physical product."

KLX plug.  In essence, Mag Machine posits that KLX has copied the unpatented ideas and concepts embodied in the Adair plug to make the KLX plug.  The court, however, concludes that KLX's conduct does not constitute "a false representation as to the source" of goods or services to support Mag Machine's ODTPA counterclaim.  Under <u>Dastar</u>, the source of the KLX plug, the physical good, is KLX.[13]  Therefore, the court concludes that KLX is entitled to summary judgment on Counterclaim No. 5.

*Unfair Competition*

In addition to a counterclaim under the ODTPA, Mag Machine alleges KLX engaged in deceptive trade practices in violation of Oklahoma common law.  This claim has been construed by the parties as a counterclaim for unfair competition under Oklahoma law.  *See*, doc. no. 25, ECF p. 7.  KLX seeks summary judgment on the unfair competition counterclaim for the same reasons as argued on the ODTPA claim.

The court concludes that KLX is entitled to summary judgment on the unfair competition claim.  In its response, Mag Machine indicates that its claim is predicated on the same factual basis as the ODTPA claim—"Mag Machine representatives have alleged KLX's website, viewed by the public at large, portrayed Mag Machine's plug as KLX's plug."  Doc. no. 165, ECF p. 31.  In essence, Mag Machine asserts an unfair competition claim based upon a reverse passing off theory.

A common-law unfair competition claim may include a manufacturer or vendor passing off "[its] merchandise as that of another" or "vending the products of another as [its] own."  <u>Reynolds & Reynolds Co. v. Norick</u>, 114 F.2d 278, 281 (10th Cir. 1940); *see also*, <u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>, 489 U.S.

---

[13] In light of the court's conclusion, the court need not address KLX's other arguments in support of summary judgment on the ODTPA counterclaim.

141, 157 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting *consumers* from confusion as to source.") (emphasis in original).  Therefore, an unfair competition claim may be premised on a passing off theory or reverse passing off theory.  The court, however, concludes that resolution of Mag Machine's reverse passing off claim turns on the same considerations as a reverse passing off claim under section 43(a) of the Lanham Act.  And the court concludes that the unfair competition claim is foreclosed under Dastar.  *See*, Strumolo v. Alternate Family Care, Inc., 2007 WL 9698313, at *5 (S.D. Fla. Nov. 14, 2007) (state law unfair competition claim based on misattribution and false attribution in defendants' use of plaintiff's work barred by Dastar).  Therefore, for the reasons stated, the court concludes that KLX is entitled to summary judgment on the unfair competition claim.

      D.    Request for Injunctive Relief – Counterclaim No. 7

KLX seeks summary judgment as to Mag Machine's request for injunctive relief counterclaim because a request for injunctive relief is not an independent cause of action and the request is not based on coherent legal theory.  It also asserts that the counterclaim requests an injunction "prohibiting KLX from distributing the Adair Plug as the 'KLX Adair Plug,'" *see*, doc. no. 106, ¶ 63, and there is no evidence that KLX ever distributed the Adair plug as the "KLX Adair Plug."

Mag Machine argues that KLX is not entitled to summary judgment because KLX has not proven the futility of Counterclaims No. 5 and No. 6.

Upon review, the court finds that KLX is entitled to summary judgment with respect to Counterclaim No. 7.  The court has previously determined that KLX is entitled to summary judgment as to Counterclaim No. 5 and Counterclaim No. 6, both of which Mag Machine relies upon in support of its request for injunctive relief.  Further, the counterclaim, as pled, requests an injunction prohibiting KLX from

distributing the Adair Plug as the "KLX Adair Plug," and there is no record evidence that KLX is distributing the Adair Plug as the "KLX Adair Plug."

    E.    <u>KLX's Claims Against Cornerstone – Counts Two, Three, Four, Five, and Six</u>

Lastly, Cornerstone seeks summary judgment on KLX's claims for tortious interference with prospective economic advantage, misappropriation of trade secrets under the Defend Trade Secrets Act, misappropriation of confidential business information, violation of the Oklahoma Deceptive Trade Practices Act, and unjust enrichment. Cornerstone contends that KLX cannot establish every essential element of these claims against it.

Specifically, with respect to the tortious inference claim, Cornerstone asserts that KLX has no evidence of an improper or unjustified act that it committed and that KLX has no evidence of any harm sustained from any such act. Cornerstone points out that the undisputed evidence shows it had no customers and took no actions to secure customers other than via a passive website. With respect to the federal misappropriation of trade secrets claim, Cornerstone asserts that KLX has not alleged any specific "trade secret" that it misappropriated and has provided no evidence that it used improper means to obtain that information or knew it was obtained by improper means. It also asserts that KLX has not put forth any evidence of damages that Cornerstone caused.

As to the misappropriation of confidential information claim, Cornerstone contends that KLX cannot show that it took any product or used any product belonging to KLX to compete against it as Cornerstone had no customers, and, moreover, that KLX cannot show damages stemming from Cornerstone's actions. As to the Oklahoma Deceptive Trade Practices Act claim, Cornerstone contends that KLX has no evidence of any acts by Cornerstone that violated the Act. Although KLX has alleged in the second amended complaint that Cornerstone made false

representations, it has no evidence of any such representations and does not point to any customer confused by such representations.  Again, Cornerstone contends that it had no customers, and it maintains that it had no marketing materials representing any affiliation with KLX.  Finally, Cornerstone asserts that KLX cannot provide any evidence that it was enriched by any alleged acts because it had no customers, no assets, and no money and KLX cannot provide any evidence of any injustice suffered because of its actions.

However, viewing the record and drawing all reasonable inferences in a light most favorable to KLX, the non-moving party, the court concludes that KLX has proffered sufficient evidence to raise a genuine issue of material fact as to the challenged elements of KLX's claims against Cornerstone.  The court concludes that genuine issues of material fact exist as to whether Cornerstone was involved— together with Mag Machine and Jet—in using KLX's confidential technical information to market dissolvable frac plugs and in using KLX's confidential business information to target KLX's customers.  The court also concludes that genuine issues of material fact exist as to whether Cornerstone made false statements.  Further, the court concludes that genuine issues of material fact exist as to whether KLX was harmed by Cornerstone's actions and whether Cornerstone is responsible for the harm to KLX.  The court therefore concludes that Cornerstone is not entitled to summary judgment with respect to KLX's claims against it.

<u>Conclusion</u>

For the reasons stated, Defendant Magnesium Machine, LLC's Motion for Partial Summary Judgment (doc. no. 121) is **DENIED**; Defendant Magnesium Machine, LLC's Second Motion for Partial Summary Judgment (doc. no. 147) is **DENIED** and Defendant Cornerstone Tools, LLC's Motion for Summary Judgment (doc. no. 146) is **DENIED**.

KLX Energy Services LLC's Motion for Partial Summary Judgment (doc. no. 149) is **GRANTED** as to Defendant Magnesium Machine, LLC's Counterclaim No. 1, Counterclaim No. 3, Counterclaim No. 4, Counterclaim No. 5, Counterclaim No. 6, and Counterclaim No. 7, and is **DENIED** in all other respects.

In accordance with the court's ruling, defendant Magnesium Machine, LLC's Counterclaim No. 3 and Counterclaim No. 4 are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

DATED this 28th day of September, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-1129p049 rev  .docx